Daniel J. McLoon (State Bar No. 109598)
Michael G. Morgan (State Bar No. 170611)
Sarah G. Conway (State Bar No. 261414)
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071-2300
Telephone: (213) 489-3939
Facsimile: (213) 243-2539
Email: djmcloon@JonesDay.com
mgmorgan@JonesDay.com
sgconway@JonesDay.com

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

Andrew J. Ogilvie (State Bar No. 57932)
Mark F. Anderson (State Bar No. 44787)
Anderson, Ogilvie & Brewer LLP
600 California St., 18th Floor
San Francisco, CA 94108
Telephone: 415/651-1952
Fax: 415/956-3233
Email: andy@aoblawyers.com
mark@aoblawyers.com

Attorneys for Plaintiffs Holman, Navarro and Alvarez

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

ROANE HOLMAN, NARCISCO NAVARRO HERNANDEZ, MIGUEL A. ALVAREZ, and all others similarly situated,

Plaintiffs,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendants.

Case No. CV-11-00180-CW

Assigned to the Honorable Howard R. Lloyd

**DISCOVERY DISPUTE JOINT REPORT #1**

Discovery Dispute Joint Report #1 (Joint Report) addresses the parties' disagreement over Experian's confidentiality designation of certain documents it produced in discovery. In addition to meet and confer letters and teleconferences in September and October, the parties' counsel met in person on October 13 at Jones Day's office in San Francisco for nearly an hour. The parties' lead counsel have complied in good faith with the Court's Standing Order.

**1. DISCOVERY DISPUTE AT ISSUE**

Experian's Statement: Experian's prominence and success in the credit reporting industry has been built upon its unique and proprietary system for serving its clients while complying with the FCRA and all applicable laws. Plaintiffs challenge Experian's designations of four categories of documents as confidential, each of which is integral to Experian's proprietary system: (i) internal reports and memoranda concerning Experian's FCRA compliance protocols; (ii) agreements between Experian and Finex Group, LLC (Finex); (iii) Experian's confidential customer file for Finex, which details Experian's vetting of Finex as a prospective subscriber, the products offered to Finex and on what terms, and Experian's placement of Finex's account on inactive status; and (iv) confidential communications between Experian and its subscribers. Experian does not object to the production of these documents and, in fact, has already produced them to plaintiffs. Experian seeks only to prevent the significant and irreparable damage that would be inflicted on its business through public disclosure of the documents.

Plaintiffs' Statement: Some background is helpful. In September 2007, the Ninth Circuit decided that a collection agency does not have a permissible purpose under the Fair Credit Reporting Act to use a consumer report to collect a non-consensual towing debt, i.e. a debt that arises out of towing that the consumer did not voluntarily initiate. *Pintos v. Pacific Creditors Ass'n*, 504 F.3d 792, 799 (9th Cir. 2007). The *Holman* case arises because after *Pintos* was decided, Experian accepted a new collection agency, Finex, as a new subscriber and furnished it with more than 40,000 consumer reports to use in collecting on non-consensual towing claims. Plaintiffs contend that Experian willfully violated the FCRA by furnishing Finex with those 40,000 credit reports.

Experian has a statutory duty maintain reasonable procedures avoid furnishing consumer reports for impermissible purposes. 15 USC § 1681e(a). Section 1681e(a) requires Experian to maintain and follow reasonable procedures to limit the furnishing of consumer reports to permissible purposes. It further requires Experian to make a reasonable effort to "verify" the prospective subscriber's uses of consumer reports. And § 1681e(a) also requires Experian to "determine that no reasonable grounds exist for suspecting impermissible use" before it furnishes

reports to a new subscriber. *Id*. at 800. While the Ninth Circuit revised its opinion in subsequent opinions in *Pintos*, these holdings remain the law of the case.

From 2007 until late 2010, Experian's sole response to *Pintos* was to email its sales force a "Talk Track" to use if they were asked about the *Pintos* case. These scripts are EIS 004-007. When the Ninth Circuit denied rehearing en banc in 2010, Experian emailed numerous Experian groups about *Pintos* and Experian's plan to "recertify" certain Subscribers. The email is EIS 008-9. At the same time Experian circulated a form letter for sales representatives to send 2,500 Subscribers who needed to be recertified. That letter is EIS 10-11 and EIS 12-13. The Subscribers were supposed to complete and return the "Recertification" certificate, which is EIS 228.

Another group of disputed documents consists of Experian's form contract documents. These are EIS 14-17 (Standard Terms & Conditions), EIS 127-128 (Data Release Agreement), and EIS 129 (Head Security Designate Authorization form).

A third group of documents in dispute consists of the documents that show what Experian did (and failed to do) when it accepted Finex as a new subscriber in 2008. Experian has now conceded Finex's application form and initial questionnaire are not "confidential", but it still claims that the Site Inspection form (EIS 44-45), the Customer Profile checklist (EIS 132-133) and its log of communications with Finex (EIS 148-153) should be protected from disclosure.

Lastly, there is a Summary of FCRA Obligations that Experian sends to its subscribers (EIS 154) that Experian wants kept secret from the public record.

## 2. LEGAL STANDARD

Experian's Statement: Federal Rule of Civil Procedure 26(c)(g) authorizes this Court, upon a showing of good cause, to issue an order "requiring that trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." This Court has broad latitude to grant protective orders "to prevent the disclosure of materials for many types of information, including but not limited to, trade secrets or other confidential research, development, or commercial information." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (emphasis omitted). If challenged, confidentiality requires a showing of good cause, which is present when "specific prejudice or

harm will result if no protective order is granted" as to the designated documents. *Id.* at 1210-11. "A 'good cause' showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions." *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1180 (9th Cir. 2006). Moreover, where "none of the [documents] in dispute have been relevant to the Court's findings in the underlying case, to this point, the policy underlying the presumption of access is of little to no weight in the face of [the designating party's] concerns." *Navarro v. Eskanos & Adler*, No. C-06-02231 WHA (EDL), 2007 U.S. Dist. LEXIS 24864, at *31-32 (N.D. Cal. Mar. 22, 2007) (citation omitted).

Plaintiffs' Statement: *In re Roman Catholic Archbishop of Portland in Oregon*, 10-35206, 2011 WL 4375678 (9th Cir. Sept. 21, 2011) sets out the procedure for this motion. The general rule is that the public is permitted access to litigation documents and information produced during discovery. Pretrial discovery materials are "presumptively public." The Court may enter an order limiting public access only if a party shows "good cause." Rule 26(c) authorizes the Court to limit public access if it is necessary to protect the party from "annoyance, embarrassment, oppression, or undue burden or expense." Experian has the burden of proving "good cause" for a protective order, which requires it to show "that specific prejudice or harm will result" if the protective order is not granted. *Id* at *4.

To decide this motion, the Court first determines whether "particularized harm will result from disclosure of information to the public." *In re Roman Catholic Archbishop* at *4. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. *Id*. Experian must "allege specific prejudice or harm." *Id.* If Experian can show that such harm will result from disclosure of its documents, then the Court balances "the public and private interests to decide whether maintaining a protective order is necessary." *Id*. In conducting this balancing, the Court considers:

1. Whether disclosure will violate any privacy interests;
2. Whether the information is being sought for a legitimate purpose;
3. Whether disclosure of the information will cause a party embarrassment;
4. Whether the information is important to public health and safety;
5. Whether the sharing of information among litigants will promote fairness and efficiency;
6. Whether the party seeking confidentiality is a public entity or official; and

7. Whether the case involves issues important to the public.

*Id. citing Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

If these factors weigh in favor of protecting the documents from public disclosure, then the Court considers whether the sensitive parts can be redacted. *Id.*

In light of *Roman Catholic Archbishop*, Experians' quote from *Navarro* is questionable authority. In its discussion of a protective order under Rule 26(c), the Ninth Circuit reiterated the well-established rule that the fruits of discovery are "presumptively public," without limiting its statement to when a court has made findings. *In re Roman Catholic Archbishop, supra* at *4.

**3. DOCUMENTS AT ISSUE**

**A. Internal Reports And Memoranda Regarding Compliance Protocols**

Experian's Statement: Plaintiffs challenge the confidentiality of certain internal reports and memoranda sent by Experian's Sales and Sales Operations departments to Experian's sales and marketing employees. The documents are talking points distributed to Experian's sales force regarding the permissible purposes for obtaining credit reports for debt collection services (EIS4-7), internal bulletins posted for Experian's sales force regarding actions necessary in light of the Ninth Circuit's decisions in the *Pintos* cases (EIS8-9), and form letter templates regarding *Pintos* and its effect on the debt collection industry (EIS10-13). Collectively, these documents communicate Experian's compliance procedures, including its response to *Pintos*.

Courts routinely recognize the confidentiality of such documents. For example, documents containing information tailored to a party's policies, procedures, and legal interpretations have been treated as confidential. *Navarro v. Eskanos & Adler*, No. C-06-02231 WHA (EDL), 2007 U.S. Dist. LEXIS 24864, at *17-18 (N.D. Cal. Mar. 22, 2007) (holding training manual that outlined defendant's policies and procedures, as well interpretations of the law, was confidential). Courts similarly protect documents that reveal a party's business strategies, recognizing that these documents "would be useful to a competitor and, if freely available, would undercut [a party's] competitive advantage." *Id.* at *22; *see also Metavante Corp. v. Emigrant Sav. Bank*, No. 05-CV-1221, 2008 U.S. Dist. LEXIS 89584 (E.D. Wis. Oct. 24, 2008) (finding documents that revealed business plans and strategies to be confidential).

Experian's understanding of and response to *Pintos* accordingly warrants protection from public disclosure.

Experian closely guards its compliance protocols. Those protocols are proprietary, resulted from significant investments of time, money, and research, and provide current business advantages to Experian. And the public disclosure of Experian's internal compliance procedures would harm Experian by giving its competitors a business advantage. For example, Experian's competitors could use the *Pintos* talking points for Experian's sales force, developed and circulated by Experian between 2007 and 2011, to discover the methods by which Experian developed and communicated its response to *Pintos* and its compliance procedures more generally. Disclosure would allow Experian's competitors to adopt Experian's protocols for compliance without any of their own monetary investment.

Public disclosure also would harm Experian's ability to derive a business advantage from its compliance procedures. Experian's procedures lower its overhead, particularly in terms of legal costs, by reducing instances of FCRA non-compliance. The public disclosure of these documents would eliminate these advantages by giving Experian's competitors insight into both Experian's compliance procedures for *Pintos*, as well as Experian's method for developing and communicating its compliance protocols more generally. This insight would allow Experian's competitors to adopt similar procedures, thereby reducing Experian's business advantage.

<u>Plaintiffs' Statement:</u> Experian fails to show that a "particularized harm will result from disclosure" of these documents. All of these documents have been superseded by two letters that Experian sent to its subscribers in 2010 and 2011 informing them about *Pintos*. Experian has undesignated those letters. The Sale Force Talk Tracks from years before, the email to sales representatives, the form letter and the recertification certificate are old history. These documents are unlike the collection manual in *Navarro*, which were current documents. They do not reveal any "business strategy" or plans. And no thoughtful competitor is going to use these documents for they show a complete disregard for the Ninth Circuit's *Pintos* decision that has resulted in this lawsuit against Experian.

The *Glenmede* factors, which Experian ignores, weigh in favor of public disclosure. *First*,

disclosure will not violate any privacy interests. *Second*, plaintiffs have a legitimate reason for using these documents; they tell the story of Experian's response to *Pintos*. If they are designated "confidential," they have to be filed under seal, which is a burden on the parties and the Court. *Third*, their disclosure will not cause embarrassment. Experian says they reflect good procedures. *Fourth*, while the case does not involve health or safety, it does involve consumer privacy which is also in the public interest. Congress and government agencies should be able to see how Experian has violated these statutory duties. *Fifth,* other consumer lawyers are interested in knowing what Experian has done. Sharing such documents is encouraged. The Ninth Circuit "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation." *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1131 (9th Cir.2003). *Sixth*, Experian is not a public official or agency. *Seventh*, this case involves issues that are important to the public. Congress recognizes a "need to insure that consumer reporting agencies exercise their grave responsibilities with…a respect for the consumer's right to privacy." 15 USC § 1681(a)(4).

If the Court finds the balance tipping in favor of non-disclosure, it should require Experian to redact the sensitive portions rather than foreclose all disclosure of these documents.

**B. Agreements Between Experian and Finex**

<u>Experian's Statement:</u> Plaintiffs challenge the confidentiality of Experian's agreements with Finex. Specifically, Experian designated as confidential Experian's Standard Terms and Conditions with Finex (EIS14-17), and Experian's Data Release Agreement with Finex (EIS127-128). Experian enters into these agreements with every subscriber to its services, and is contractually obligated to not publicly disclose the agreements' provisions or contents to third parties. The confidential portions of these agreements strike at the heart of Experian's business, as they detail the terms and conditions to which Experian requires its subscribers to agree. Courts frequently protect such documents' confidentiality, on the basis that disclosure "would enable a competitor to target the producing party's customers and potential customers, undercut the producing party's pricing, and mimic the producing party's successful business plan." *Directory Concepts, Inc. v. Fox*, No. 1:08-CV-225, 2008 U.S. Dist. LEXIS 102192, at *19-20 (N.D. Ind. Dec. 16, 2008); *see also Harris v. Sears Holding Corp.*, No. C10-1339 MJP, 2011 U.S. Dist.

LEXIS 41998 (W.D. Wash. Apr. 17, 2011) (granting protective order for party's contracts).

The public disclosure of the agreements at issue would harm Experian's business interests in several ways. First, public disclosure of Experian's agreement with Finex would provide Experian's competitors an advantage at Experian's expense, by enabling them to learn the terms offered by Experian, the products offered by Experian, and the commitments Experian expects from its subscribers. Experian's competitors then could use this information to poach Experian's customers or develop similar products. Either result would erode the advantages Experian has derived from the development of its own set of terms, conditions, and products. Second, Experian's Terms and Conditions reflect Experian's proprietary compliance procedures, the public disclosure of which, as discussed above, would harm Experian. *See supra* Part 3(A).

Plaintiffs' Statement: Experian distributes these contract documents to Subscribers without marking them "confidential." That has been added for this litigation. The contract does not require Subscribers to keep these documents secret. The Standard Terms and Conditions provide that the Subscriber will not disclose "the Services or data that Experian delivers." Contract documents are not "Services or data." See paragraphs 1 and 5 of EIS 014. The written agreement is the complete agreement and supersedes any other agreements. See ¶ 18.

Experian has failed to show that any "particularized harm will result from [public] disclosure" of these boilerplate documents. There is nothing in form contract documents that would enable a competitor to "target [Experian's] customers" or to "undercut its pricing" or to "mimic [Experian's] business plan." Experian worries that disclosure of these documents will enable competitors to learn about the products it offers. Nonsense. The contract does not disclose Experian's products, but competitors can learn about them from Experian's website.

Experian is relying on broad allegations of harm that are not supported by any examples and do not withstand careful analysis. Again, Experian ignores the *Glenmede* factors entirely, none of which favor protecting these documents from public disclosure.

**C. Experian's Customer File For Finex**

Experian's Statement: Plaintiffs challenge the confidentiality of Experian's customer files for Finex. Experian closely guards its customer files. These documents include (i) spreadsheets

from Experian's customer relations management system, which details all customer leads, sales, contracts, and customer history (EIS148-153); (ii) documents created when Finex first applied as an Experian subscriber, reflecting Experian's process for investigating a potential subscriber before allowing it to receive credit reports (EIS132-133); and (iii) a report documenting a physical inspection of Finex's premises as part of Experian's investigation into Finex (EIS44-45).

These forms reveal the process by which Experian approves its subscribers, which includes Experian becoming comfortable that its subscribers will comply with the FCRA when obtaining consumer credit information. This subscriber vetting process is a valuable asset to Experian's business and is part of the compliance protocols in which Experian has invested significant time, money, and resources. A subscriber not complying with the FCRA can result in litigation expenses for Experian, which means that Experian lowers its costs by successfully identifying which potential subscribers will reliably follow the FCRA's mandates.

Experian would lose this competitive advantage, and some of the value of its investment in vetting procedures, if its competitors could copy its processes through documents outlining the procedures. As a result, the confidentiality designation of these documents is warranted. *See, e.g.*, *Navarro*, 2007 U.S. Dist. LEXIS 24864, at *22 (protecting documents revealing a party's business strategies "would be useful to a competitor and, if freely available, would undercut [a party's] competitive advantage"). Additionally, public disclosure of these documents would compromise Experian's compliance process by giving unscrupulous potential subscribers insight into how to circumvent Experian's comprehensive procedures. By impeding Experian's efforts to weed out non-compliant subscribers, this would increase Experian's vetting and litigation costs.

<u>Plaintiffs' Statement:</u> Experian's Site Inspection checklist (EIS 44-45), its form Customer Profile document (EIS 132-133) and its log of communications with Finex (EIS 148-153) should not be under the protective order. There is no particularized harm that will result from public disclosure. Experian's claims of harm are nothing more than implausible speculation. Almost all businesses keep logs of their communications with customers, so the concept is not secret. Its communications with Finex three years ago are neither special or sensitive. Finex stopped subscribing to Experian's services two years ago. The Site Inspection checklist is a logical

collection of items that a credit reporting agency might be expected to consider during a site inspection. Experian has not shown that it will be harmed by allowing plaintiffs to use this document without having to seal it at every deposition and motion. The same is true for the Customer Profile document. Plaintiffs need these documents to tell the story of how Experian violated the FCRA by selling 40,000 credit reports for impermissible purposes. The public's interest in having these documents available outweighs any possible harm to Experian.

**D. Communications Between Experian and Subscribers**

Experian's Statement: Plaintiffs challenge the confidentiality of Experian's communications with its subscribers about FCRA compliance procedures and obligations. These documents include (i) a document listing FCRA requirements provided to every new Experian subscriber (EIS154, 208), and (ii) a FCRA permissible purpose certification form required under Experian's compliance procedures (EIS228). Communications between Experian and its subscribers are confidential; pursuant to Experian's Standard Terms and Conditions, Experian cannot disclose its communications with its customers to third parties. Experian's ability to communicate effectively —and confidentially—with its clients is a key aspect of its business. The success of Experian's compliance efforts depends in part upon the subscribers' knowledge of their obligations, and their promise to comply with those obligations. Therefore, Experian has developed language that it provides to every new subscriber to ensure that the subscriber knows and follows Experian's compliance requirements.

Public disclosure of these communications will harm Experian by allowing its competitors to copy this language for communications with their clients. The advantage Experian derives from more clearly expressing what subscribers may not do under the FCRA would be lost. Public disclosure also would allow Experian's competitors to learn how Experian interprets its FCRA requirements and how and to what extent Experian requires its subscribers to certify that they will comply. The harms associated with knowledge of Experian's interpretation of FCRA compliance requirements are discussed above. *See supra* Part 3(A). Good cause accordingly warrants protecting these documents from public disclosure. *See, e.g., Navarro*, 2007 U.S. Dist. LEXIS 24864, at *17-18 (holding that document revealing defendant's policies and procedures was

confidential); *Metavante*, 2008 U.S. Dist. LEXIS 89584 (finding confidential documents that revealed business plans and strategies); *Directory Concepts*, 2008 U.S. Dist. LEXIS 102192, at *19-20 (protecting documents that "would enable a competitor to . . . mimic the producing party's successful business plan").

Plaintiffs' Statement: The "Recertification form" (EIS 228) is discussed in plaintiffs' first section. It is part of the story of how Experian responded to the *Pintos* case. The other documents Experian discusses in this section are copies of a summary of a subscriber's obligations under the FCRA. EIS 154 and 208. The document is not marked confidential. It is circulated to thousands of subscribers. They not required to keep secret everything Experian sends. Experian fails to show how disclosure of this summary of FCRA law will cause it specific harm. It is all conjecture. The public interest in disclosure outweighs Experian's interests. If the Court concludes that any part of EIS 154 or 208 should be withheld from public disclosure, those portions should be redacted and the remainder should be un-designated.

**E. CONCLUSION**

Experian's Statement: Based on the foregoing, Experian respectfully requests that the Court order that the documents at issue retain their confidentiality, or, in the alternative, allow additional briefing on the issue to allow Experian to present sworn declarations in support of confidentiality.

Plaintiffs' Statement: Experian's motion to retain its "confidential" designation for these documents should be denied and it should be ordered to produce copies of each of the documents without the "Confidential" stamp.

Dated: October 20, 2011

JONES DAY
By: /s/ Michael G. Morgan
Michael G. Morgan
Attorneys for Defendant, Experian Information Solutions, Inc.

Dated: October 20, 2011

ANDERSON, OGILVIE & BREWER LLP
By: /s/ Andrew J. Ogilvie
Andrew Ogilvie
Attorneys For Plaintiffs, Roane Holman, Narcisco Navarro Hernandez, Miguel A. Alvarez

LAI-3151900