Andrew J. Ogilvie      (SBN 57932)
Mark F. Anderson      (SBN 44787)
Carol M. Brewer      (SBN 214035)
Anderson, Ogilvie & Brewer LLP
600 California Street, 18th Floor
San Francisco, California 94108-2711
        Telephone:    (415) 651-1950
        Facsimile:    (415) 956-3233
        andy@aoblawyers.com
        carol@aoblawyers.com

Balám O. Letona      (SBN 229642)
Law Office of Balám O. Letona, Inc.
55 River Street, Ste. 220
Santa Cruz, CA 95060
        Telephone:    (831) 421-0200
        Facsimile:    (831) 515-3114
        letonalaw@gmail.com

Attorneys for Plaintiffs Roane Holman, Narciso Navarro Hernandez
and Miguel A. Alvarez

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROANE HOLMAN, NARCISO NAVARRO HERNANDEZ and MIGUEL A. ALVAREZ on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.<br><br>Defendant. | Case No. 11- cv-0180-CW<br><br>PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL<br><br>Date:    January 26, 2011<br>Time:    2:00 pm<br>Judge:    Hon. Claudia Wilken<br>Courtroom 2, 4th Floor<br><br>**Public Filing Version** |

i

## TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................1

II.  FACTS ................................................................................................................3

    A.   Experian Approved Finex as A Subscriber in January 2008................................3

    B.   Finex Asked Again About *Pintos* in June and October 2008................................5

    C.   Experian Did Not Try To Comply With *Pintos* until Late 2010 ...........................6

        1.   Experian's October 2007 and May 2009 Talk-Tracks ............................6

        2.   Experian's 2010 Talk-Track ....................................................................7

        3.   Experian's 2010 "Important Notice" ........................................................7

        4.   Experian's January 2011 Talk-Track and "Important Notice"..................8

        5.   Experian's "Re-Certification" Procedure for Collections Clients.............8

    D.   Experian Did Nothing To *Verify* The Uses Certified by Finex ..............................8

    E.   Experian Furnished Consumer Reports Despite Having Reasonable
        Grounds for Believing They Would Be Used For Impermissible Purposes ..........9

III. PROCEDURAL HISTORY ................................................................................9

IV.  LEGAL STANDARD ......................................................................................10

V.   ARGUMENT ...................................................................................................12

    A.   The Class Is Ascertainable ................................................................................12

    B.   The Case Meets the Requirements of Rule 23(a)................................................13

        1.   The class is sufficiently numerous ........................................................13

        2.   There are questions of law and fact that are common to the class ...........13

        3.   Plaintiffs are typical of the proposed class ............................................14

        4.   Plaintiffs and their counsel will adequately represent the class ..............15

    C.   The Case Meets the Requirements of Rule 23(b)(3) ..........................................15

        1.   Common questions of law and fact predominate .....................................16

        2.   A class action is superior to other available means of adjudication..........17

VI.  CONCLUSION ................................................................................................18

i

TABLE OF AUTHORITIES

Cases

*Berrien v. New Raintree Resorts Int'l*
    276 F.R.D. 355 (N.D. Cal. 2011) ........................................................11

*Blackie v. Barrack*
    524 F.2d 891 (9th Cir.1975) ...............................................................11

*Campbell v. PricewaterhouseCoopers, LLP*
    253 F.R.D. 586 (E.D.Cal. 2008) .........................................................12

*Doninger v. Pac. Nw. Bell, Inc.*
    564 F.2d 1304 (9th Cir.1977) .............................................................11

*Gen. Tel. Co. of Sw. v. Falcon*
    457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) ......................11

*Greenway v Information Dynamics, Ltd*
    399 F. Supp. 1092 (D. Ariz 1974)
    *aff'd on other grounds*, 524 F.2d 1145 (9th Cir. 1975) ....................11

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ....................................................12, 13

*In re Countrywide Fin. Corp. Customer Data Security Breach Litigation*
    2009 WL 5184352 (W.D. Ky. 2009) and 2010 WL 3341200 (W.D. Ky. 2010) ..................11

*Lerwill v. Inflight Motion Pictures, Inc.*
    582 F.2d 507 (9th Cir. 1978) ..............................................................12

*O'Connor v. Boeing N. Am. Inc.*
    184 F.R.D. 311 (C.D.Cal. 1998) ........................................................12

*Pintos v. Pacific Creditors Ass'n*
    504 F.3d 792 (9th Cir. 2007)
    *opinion withdrawn and superseded*, 565 F.3d 1106 (9th Cir. 2009)
    *opinion amended and superseded on denial of reh'g*, 605 F.3d 665 (9th Cir. 2010) ......*passim*

*Sullivan v. Kelly Services, Inc.*
    268 F.R.D. 356 (N.D. Cal. 2010) .......................................................12

*Wal–Mart Stores, Inc. v. Dukes*
    __U.S. __, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) .....................3, 11

*White v E-Loan, Inc.*
    2006 WL 2411420 (N.D. Calif. 2006) ............................................................... 11

Statutes

15 U.S.C. § 1681 ............................................................................................................. 1

15 U.S.C. § 1681e(a) .................................................................................................... 2, 8

15 U.S.C. § 1681n .......................................................................................................... 16

28 U.S.C. § 1331 ............................................................................................................. 1

Federal Rules of Civil Procedure

Rule 23 .................................................................................................................*passim*

Treatises

5 James W. Moore, *Moore's Federal Practice,* § 23.21A [1] (2001) ............................. 12

**To defendant and its counsel of record**:

Please take notice that on January 26, 2012, at 2 pm or as soon thereafter as the matter can be heard in Courtroom 2, 4th floor of the U.S. District Court, Northern District of California, 1301 Clay Street, Oakland, California 94612, the Hon. Claudia Wilken presiding, plaintiffs Roane Holman, Narciso Navarro Hernandez and Miguel A. Alvarez will move for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.

**Meet and Confer Certification**:  Pursuant to the Court's standing order, the parties met and conferred before plaintiffs filed this motion.

This motion is based on this notice of motion and motion, the accompanying memorandum, and the declarations of Paul Price, Antonia Sainz-Blas, Roane Holman, Miguel A. Alvarez, Mark F. Anderson and Andrew J. Ogilvie and the interrogatory response, deposition excerpts and exhibits attached to Mark Anderson's declaration, the papers and pleadings on file and such other papers as may be submitted prior to or at the hearing on this motion or argument at the hearing.

Dated December 1, 2011

Anderson, Ogilvie & Brewer LLP

By:_____/s/_____
        Andrew J Ogilvie
Attorney for plaintiffs

1

## I.      INTRODUCTION

Plaintiffs, Roane Holman, Narcisco Navarro Hernandez and Miguel A. Alvarez, move for an order certifying the class and appointing them as the class representatives and their counsel as class counsel pursuant Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs contend that Experian Information Solutions, Inc. willfully violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*., by furnishing their consumer reports to a collection agency to use for an impermissible purpose, *i.e.*, collecting involuntary towing deficiency claims. The Court has jurisdiction under 28 U.S.C. § 1331.

Experian was a party to the *Pintos* case in which the Ninth Circuit held that a collection agency does not have a permissible purpose to obtain a credit report to collect a debt if the consumer did not voluntarily initiate the underlying transaction by seeking credit. *Pintos v. Pacific Creditors Ass'n*, 504 F.3d 792 (9th Cir. 2007) *opinion withdrawn and superseded*, 565 F.3d 1106 (9th Cir. 2009) *opinion amended and superseded on denial of reh'g*, 605 F.3d 665 (9th Cir. 2010). The alleged debt in *Pintos* was a towing deficiency claim, just like the ones involved in this case. Maria Pintos's car was towed at the direction of the police and sold at a lien sale when she failed to paying the charges for towing and storage. The towing company sent the alleged debt to a collection agency, Pacific Creditors Association, which pulled her consumer report from Experian's database. The Ninth Circuit held that PCA lacked a permissible purpose because:

> Pintos never sought to have her vehicle towed, and she incurred the resulting debt involuntarily. Consequently, no one granted her "credit" as defined by § 1681a(r)(5), and there was no "credit transaction" within the meaning of § 1681b(a)(3)(A). PCA, therefore, had no purpose specified as permissible under the statute to obtain Pintos's credit report.

*Pintos v. Pac. Creditors Ass'n*, 504 F.3d 792, 799 (9th Cir. 2007).

The Ninth Circuit further explained that § 1681e(a) requires Experian to *verify* its customers' uses of credit reports before furnishing any reports and *not to furnish any reports* if there are reasonable grounds to believe they may be used for impermissible purposes.

> Section 1681e requires more from a credit reporting agency than merely obtaining a subscriber's general promise to obey the law. After prospective subscribers "certify the purposes for which [credit] information is sought, and certify that the information will be used for no other purpose," the reporting agency must make "a reasonable effort" to verify the certifications and may not furnish reports if "reasonable grounds" exist to believe that reports will be used impermissibly. 15 U.S.C. § 1681e(a).

*Pintos v. Pac. Creditors Ass'n*, 504 F.3d 792, 800 (9th Cir. 2007).

In 2009, the panel revised its explanation as to why collecting on involuntary towing claims does not constitute a permissible purpose to obtain a consumer report, but left the holding and its discussion of the other issues unchanged. *Pintos v. Pac. Creditors Ass'n*, 565 F.3d 1106, 1113 (9th Cir. 2009). The Ninth Circuit denied *en banc* review in May 2010 and the Supreme Court denied *certiorari* in January 2011.

This case results from Experian's failure to take *any* action to comply with *Pintos* until late 2010. It did not notify its collection agency customers about *Pintos* until then.  It did not alter its screening procedures for collection agency subscribers. It did not tell its Membership Department not to approve any subscriber that appeared to be collecting towing claims.

Experian's sole response to *Pintos* until late 2010

[redacted]

Having failed to implement any procedures to comply with the FCRA as clarified by *Pintos*, Experian approved Finex as a subscriber and furnished it with more than 40,000 consumer reports for collections on towing deficiency claims.

Plaintiffs are class members whose consumer reports were furnished by Experian to Finex for an impermissible purpose. Plaintiffs and the class seek statutory and punitive damages for Experian's willful violation of the FCRA.

2

## II.   FACTS

In certifying a class, the Court must conduct a rigorous analysis that frequently will entail overlap with the merits of the plaintiff's underlying claim. *Wal–Mart Stores, Inc. v. Dukes,* __U.S. __, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011) (*Dukes*). Accordingly, plaintiffs summarize the evidence they have discovered to date that supports their case.

**A.   Experian Approved Finex as A Subscriber In January 2008**

Finex is a San Jose, California collection agency.  It was organized by Paul Price and Antonia Sainz-Blas in late 2007, just a few months after the first *Pintos* decision. Declaration of Paul Price (Price dec.) ¶ 1; Declaration of Antonia Sainz-Blas (Blas dec.) ¶ 1.[1] Price and Blas decided that Finex would specialize in collecting towing deficiency claims because Blas had considerable experience with that specialized segment of the collections business. Price dec. ¶ 3, Blas dec. ¶ 3. Price had managerial experience. *Id.* They solicited towing companies throughout California for their business of collecting towing deficiency claims. Price dec. ¶ 4.

Price and Blas contacted Experian in late 2007 because they wanted reliable contact information for the debtors on these towing claims. They were referred to Experian's sales representative, Scot Levine. Having heard about *Pintos* from towing companies, Price and Blas told Levine that Finex specialized in collecting towing deficiency claims and that they wanted to avoid obtaining consumer reports improperly. Price dec. ¶¶ 12 & 13. Levine said "Collection

---

[1]     Plaintiffs' motion for class certification is supported by the declarations of Paul Price, Antonia Sainz-Blas, Roane Holman, Miguel Alvarez, Andrew Ogilvie and Mark Anderson, Experian's response to Interrogatory No. 8, deposition excerpts of Price, Holman, Scot Levine and Peter Henke, and exhibits from the depositions.  The interrogatory response, deposition excerpts and exhibits are attached to Mark Anderson's declaration.

Plaintiffs are required to file their moving papers under seal because Experian designated most of its documents and witnesses' testimony "confidential." Plaintiffs have disputed those designations, but there has been no ruling on the dispute. Plaintiffs contend that none of the materials involved in this motion are truly "confidential" and that the motion and all supporting documents should be filed in the public record.  *Pintos v. Pacific Creditors Ass'n*, 504 F.3d 792 (9th Cir. 2007).

Advantage" reports would be perfect for Finex. *Id*. Those reports, Levine explained, would provide Finex with 33 attributes of information about each consumer as well as Experian's "Recovery Score," which he described as a proprietary product that ranks accounts based on the likelihood that debtors will pay the debt. *Id*. Levine assured them that Collection Advantage reports are not credit reports, that they do not contain FCRA data, and that the Recovery Score was "clean." *Id*.

Price completed Experian's application forms, describing Finex as a "collection call center." Anderson Dec. Exhs 1 & 2. Experian's application form did not require more specific information. *Id*.

[redacted]

One of those website pages said Finex had a "Special for Towing Companies" involving a low contingency fee rate on "All Lien Sold Vehicle Collection Accounts." EIS0000037.  The website described Finex as "Towing Collections Specialists." *Id*.

[redacted]

Finex began receiving Collection Advantage reports to collect towing deficiency claims in February 2008 and continued to receive them until late 2010. Anderson dec. ¶ 18. In

4

total Experian furnished more than 40,000 consumer reports for Finex's use in collecting

towing claims, including consumer reports on each named plaintiff.  Anderson dec. ¶ 18,

Holman depo. 209:11-25.

[redacted]

**B.      Finex Asked Again About *Pintos* In June And October 2008.**

Finex's concern about *Pintos* and obtaining FCRA information improperly did not end

in January 2008.  On June 30, 2008, Price and Blas had a conference call with Levine and one

other Experian employee. Price and Blas said they wanted to be sure they were not getting

FCRA information that they should not be getting in light of *Pintos* because 99% of Finex's

collections were for towing. Experian's representatives assured them that Finex was not

receiving any information it should not be getting for those collections. Blas dec. ¶ 9.

5

In October 2008, Blas received a trade association's notice warning tow bill collectors not to obtain debtors' credit information in light of *Pintos*. She called and spoke with Scot Levine, who again assured her that they were not in violation of *Pintos* in using the Collection Advantage reports, including the Recovery Scores. Blas dec. ¶ 10. Finex continued to receive Experian's Collection Advantage reports for use in collecting on towing claims until late 2010 when Finex stopped using Experian because of a billing dispute. Anderson Dec. Exh E, Price depo, 156:3-7.

**C.      Experian Did Not Try To Comply With *Pintos* Until Late 2010.**

[redacted]

**1.      Experian's October 2007 and May 2009 Talk-Tracks**

[redacted]

This was *all* that Experian did after *Pintos* was decided in 2007 and after the revised decision was issued in 2009. Experian failed to give any instruction

[redacted]

Levine, the sales representative who sold Collection Advantage reports to Finex, does not recall seeing either of these Talk-Tracks. He does not recall hearing about *Pintos* until 2011.  Levine depo. 25-28.

**2.    Experian's 2010 Talk-Track**

Experian issued its June 2010 Talk Track shortly after the Ninth Circuit denied *en banc* review.

[redacted]

**3.    Experian's 2010 "Important Notice"**

Around September/October 2010, after the Ninth Circuit denied *en banc* review, Experian finally sent its customers a notice informing them about the *Pintos* case. In its document entitled "Important Notice" Experian explained *Pintos's* holding and then stated:

> Experian *will be contacting* all pertinent customers to discuss this issue. We expect to confirm with you that you are in compliance with this interpretation of the FCRA.  Until then, unless you advise otherwise, we are relying on you to comply with your contract with Experian and this interpretation of the law.

7

Anderson Dec. Exh 5, italics added.

**4.      Experian's January 2011 Talk-Track and "Important Notice"**

In its fourth and final Talk-Track, Experian

[redacted]

**5.      Experian's "Re-Certification" Procedure for Collections Clients**

After the Ninth Circuit's denial of *en banc* review on May 21, 2010, Experian began a process of asking its collections customers to re-certify their permissible purpose of collections as defined by the Ninth Circuit.

[redacted]

**D.      Experian's Did Nothing to Verify the Uses Certified by Finex**

As noted above, when Experian's Membership Department approved Finex as a subscriber it did nothing to "verify" the purposes for which Finex was seeking consumer reports.

[redacted]

**E.**   **Experian Furnished Consumer Reports Despite Having Reasonable Grounds For Believing They Would Be Used For Impermissible Purposes**

Experian was not allowed to furnish consumer reports to Finex if it had reasonable grounds to believe that Finex would use the reports for impermissible purposes. 15 U.S.C. § 1681e(a); *Pintos,* 504 F.3d at 800, 565 F.3d at 1114 and 605 F.3d at 667.  Experian violated this because it knew that Finex was going to use the reports to collect towing claims: Price and Blas repeatedly told Levine that Finex was collecting towing claims and

[redacted]

**III.   PROCEDURAL HISTORY**

Holman sued Experian and Finex in January 2011 for violating the FCRA.  In May 2011, the Court denied Experian's motion to dismiss. It explained that under Ninth Circuit precedent, Experian was not allowed to ignore the *Pintos* decision after it was issued because it was " 'final for such purposes as stare decisis, and full faith and credit' " even though it was "subject to Experian's petitions for rehearing *en banc* and for a writ of certiorari in the United States Supreme Court…."  Dkt. 32, quoting from *Wedbush, Noble, Cook, Inc. v. SEC*, 714 F.2d 923, 924 (9th Cir.1983).

After formal discovery and the voluntary exchange of information with Finex, Holman dismissed Finex from the lawsuit in return for:

- Declarations by Price and Blas, Finex's founders, describing Finex's business and its communications with Experian that led to its receipt of consumer reports;
- Finex's agreement to compile and provide to plaintiffs' counsel a complete list of the class members, including names, addresses and Recovery Scores; and

9

- Finex's agreement to make Price, Blas and other employees available as needed in the case.

Holman decided to dismiss the claims against Finex for willfully violating the FCRA because the evidence shows the claim against Finex for *willfully* violating the FCRA is unsupportable.  Price and Blas told Levine that Finex intended to use Experian's reports to collect towing deficiency claims and Levine assured them there was no problem with *Pintos*. Levine does not recall any conversations specifically. Furthermore, Finex's website confirms that Finex was open and candid about specializing on towing claims. Experian's Membership Department had actual knowledge of Finex's uses.  Another reason for dismissing the claim against Finex is because it does not have enough money to pay a judgment or settlement that would provide any meaningful relief to the class. According to Price, Finex would be bankrupted by a judgment of $100,000. Price depo 123. Additionally, Finex's agreement to cooperate with plaintiffs benefits the class by allowing them to focus the case on Experian, which is responsible for the violations that occurred here.

Plaintiffs then filed a motion for leave to file a First Amended Complaint against Experian, the operative facts of which relied in part on information provided by Price and Blas. The First Amended complaint added Alvarez and Navarro as named plaintiffs. Experian consented to the filing of the First Amended Complaint.

Discovery with Experian has consisted of exchanges of written discovery and depositions. Experian has deposed the named plaintiffs and Holman's mother. Plaintiffs have deposed Scot Levine and Peter Henke, the head of Experian's membership department.

### IV.   LEGAL STANDARD

Plaintiffs seeking to represent a class must satisfy the threshold requirements of Rule 23(a), as well as the requirements of one subsection of Rule 23(b). Rule 23(a) provides that a case is appropriate for certification as a class action if: "(1) the class is so numerous that joinder

of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

Plaintiffs are seeking class certification pursuant to Rule 23(b)(3), which provides that a case may be certified as a class action if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>
>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>
>> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>>
>> (D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b).

Plaintiffs bear the burden of demonstrating that each element of Rule 23 is satisfied. A district court may certify a class only if it determines that the plaintiffs have borne their burden. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158–61, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Doninger v. Pac. Nw. Bell, Inc.,* 564 F.2d 1304, 1308 (9th Cir.1977). The court must conduct a " 'rigorous analysis,' " which may require it " 'to probe behind the pleadings before coming to rest on the certification question.' " *Dukes, supra*, 131 S.Ct. at 2551. "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Id*. To satisfy itself that class certification is proper, the Court may consider material beyond the pleadings and require supplemental evidentiary submissions by the parties. *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975). *Berrien v. New Raintree Resorts Int'l,* 276 F.R.D. 355 (N.D. Cal. 2011).

Other courts have certified classes in similar FCRA cases. In *White v E-Loan, Inc*., 2006 WL 2411420 (N.D. Calif. 2006) the court certified a statutory damage class with 100,000 members. In *In re Countrywide Fin. Corp. Customer Data Security Breach Litigation*, 2009 WL 5184352 (W.D. Ky. 2009) and 2010 WL 3341200 (W.D. Ky. 2010) the court certified a settlement class in a case involving a credit reporting agency's failure to maintain reasonable procedures to limit the furnishing of consumer reports for permissible purposes. *Greenway v Information Dynamics, Ltd*, 399 F. Supp. 1092 (D. Ariz 1974), *aff'd on other grounds*, 524 F.2d 1145 (9th Cir. 1975) involved a certified class that claimed a consumer reporting agency had furnished their consumer reports without any permissible purpose.

## V.    ARGUMENT

## A.    THE CLASS IS ASCERTAINABLE

"An adequate class definition specifies 'a distinct group of plaintiffs whose numbers [can] be identified with particularity.'" *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 593 (E.D.Cal. 2008) (quoting *Lerwill v. Inflight Motion Pictures, Inc*., 582 F.2d 507, 512 (9th Cir. 1978). "The identity of class members must be ascertainable by reference to objective criteria." 5 James W. Moore, *Moore's Federal Practice,* § 23.21A [1] (2001). A class definition is sufficient if the description of the class is "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am. Inc.*, 184 F.R.D. 311, 319 (C.D.Cal. 1998); *see also Sullivan v. Kelly Services, Inc*., 268 F.R.D. 356 (N.D. Cal. 2010).

The proposed class consists of:

All consumers whose consumer reports were furnished by Experian to Finex in connection with Finex's efforts to collect on a towing deficiency claim from January 1, 2008 to the present.

This definition is not subjective or imprecise. Finex collects towing deficiency claims on lien sold vehicles.  Finex has already compiled a class list and provided it to plaintiffs' counsel subject to the Protective Order in this case. In short, the class has already been ascertained.

## B.    THE CASE MEETS THE REQUIREMENTS OF RULE 23(a)

### 1.    The class is sufficiently numerous.

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998), quoting Fed.R.Civ.P. 23(a)(1). Here, the class consists of more than 40,000 consumers. The numerosity requirement is clearly met.

### 2.    There are questions of law and fact that are common to the class.

Rule 23 contains two related commonality provisions: Rule 23(a)(2) and Rule 23(b)(3). Rule 23(a)(2) requires that there be "questions of law or fact common to the class," but class certification is not precluded if fewer than all questions of law or fact are common to the class:

> The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998).

Rule 23(b)(3), in contrast, requires not just that some common questions exist, but that those common questions *predominate.* In *Hanlon,* the Ninth Circuit discussed the relationship between Rule 23(a)(2) and Rule 23(b)(3):

> The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. This analysis presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2); thus, the presence of commonality alone is not sufficient to fulfill Rule 23(b)(3). In contrast to Rule 23(a)(2), Rule 23(b)(3) focuses on the relationship between the common and individual issues. When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative

13

rather than on an individual basis.

*Id.* at 1022 (citations and internal quotation marks omitted).

The class members' claims clearly have a great deal in common: each class member is a person about whom Experian furnished a Collection Advantage report to Finex to use in collecting on a towing deficiency claim. The class claims are based on a single legal theory of liability: Experian willfully violated the FCRA by furnishing class members' consumer reports to Finex for an impermissible purpose. Another legal issue is whether Experian's "Collection Advantage" reports are consumer reports within the definition of that term as used in the FCRA.  If Collection Advantage reports are subject to FCRA's permissible purpose restrictions, each class member's claim turns on the procedures and steps that Experian took to limit the furnishing of consumer reports to permissible purposes, its efforts (if any) to *verify* Finex's uses of consumer reports and whether it furnished Finex with their reports even though it knew or had reasonable grounds to know that they would be used for impermissible purposes. 504 F.3d at 800-801, 565 F.3d at 1114-1115; 605 F.3d at 676-677.

### 3.   Plaintiffs are typical of the proposed class.

The typicality requirement focuses on the similarity between the named plaintiffs' legal theory and those of the people they purport to represent. *Lightbourn v. County of El Paso*, 118 F.3d 421,426 (5th Cir. 1998).  Typicality is fulfilled if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The typicality test is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992), citation omitted.

Plaintiffs are typical of the class members. Each named plaintiff had a vehicle towed involuntarily and sold at a lien sale; the towing company asserted a towing deficiency claim; and Finex tried to collect the towing claim by pulling plaintiff's Collection Advantage report.

14

Plaintiffs' common injury is Experian's furnishing of a Collection Advantage report for Finex to use for an impermissible purpose. Plaintiffs seek the same relief for themselves as they seek for the class: statutory damages of $100 to $1,000, plus any punitive damages that the Court deems appropriate. Plaintiffs' legal theories and the nature of their claims are exactly the same as those of the proposed class members they seeks to represent.

### 4.      Plaintiffs and their counsel will adequately represent the class.

Rule 23(a)(4) requires that class representatives—the named plaintiffs and their counsel—must "fairly and adequately protect the interests of the class." Legal adequacy turns on two questions: (1) whether the class representative's interests are common with, and not antagonistic to, the class's interests; and (2) whether the class representative is "able to prosecute the action vigorously through qualified counsel." *Whiteway v. FedEx Kinko's Office and Print Services, Inc*. 2006 WL 2642528 at *7 (N.D.Cal. 2006), citing *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978). Plaintiffs are aware of their duties as class representatives and agree to them. Holman dec. ¶¶ 5-7, Alvarez dec. ¶ 6-8, Anderson dec. ¶ 10; Holman depo 137-141.  Plaintiffs' lawyers handled *Pintos* throughout the entire appellate process. They are experienced in class action litigation.  Ogilvie declaration ¶¶ 3 & 4.

Because class representatives serve as guardian of the interests of the class, they should have some minimal familiarity with the litigation, although a detailed understanding of the theories and facts is not required. *In re Tableware Antitrust Litigation*, *supra,* 241 F.R.D. at 649.  Plaintiffs understand the underlying theory of this case, that Experian furnished their credit reports to a collection agency that had no right to obtain those reports. Holman depo 137-141.

## C.      THE CASE MEETS THE REQUIREMENTS OF RULE 23(b)(3)

After satisfying the requirements of Rule 23(a), plaintiffs must also show that at least one of the three requirements of Rule 23(b) is satisfied before the Court can certify the class.

15

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614-15 (1997). Pursuant to Rule 23(b)(3), the Court must find that the questions of law or fact common to the class predominate over any questions affecting only individual class members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to a finding under Rule 23(b)(3) include: (a) the interest of class members in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (d) the difficulties likely to be encountered in the management of a class action.

The objective behind the two requirements of Rule 23(b)(3) is the promotion of economy and efficiency. *In re Tableware, supra*, at 651, citing Fed.R.Civ. P. advisory committee notes. When common issues predominate, class actions achieve these objectives by minimizing costs and avoiding the confusion that would result from inconsistent outcomes. *Id.* Because no precise test can determine whether common issues predominate, the Court must pragmatically assess the entire action and the issues involved. *Romero v. Producers Dairy Foods, Inc*. 235 F.R.D. 474, 489 (E.D.Cal. 2006).

**1.       Common questions of law and fact predominate.**

The central issue for each class member's claim is whether Experian willfully violated the Fair Credit Reporting Act when it furnished their consumer report to Finex for its use in collecting a towing deficiency claim. The entire focus of the case is on Experian and what it did or did not do in light of *Pintos* and what it knew about Finex. The actions of individual class members are immaterial. Finex has testified that all of its collections for towing companies are for the unpaid balance of towing and storage charges after a towed vehicle has been sold at a lien sale. There are no voluntary tows in this area of collections. If a consumer wants a towing company to tow his/her car and asks for that to happen, the towing company demands payment

or guarantee of payment in advance.

There are no individual damages issues either.  Plaintiffs are seeking statutory damages for each member of the class, not actual damages. Statutory damages of $100 to $1,000 per plaintiff are available for willful violations of the FCRA. 15 U.S.C. § 1681n. Statutory damages compensate the class members for the invasion of their privacy, their loss of control over their private information and increased risk of identity theft or other misuse of confidential information that they have suffered.

> **2.     A class action is superior to other available means of adjudication.**

The individual class members do not have an interest to control the prosecution of this case. Most of them do not know that Experian furnished their consumer report to Finex; there is no mechanism for telling consumers when someone has looked at their credit report. Even if they knew that Finex pulled their reports, it is highly unlikely that any class member knew that was a violation of their privacy rights under the FCRA.  Unless this case is certified as a class action, the class members will not be compensated for defendants' FCRA violations and, more importantly, Experian will be able to continue to sell Collection Advantage reports to agencies collecting on involuntary towing claims with impunity, in blatant disregard of *Pintos*.

There is no other pending litigation that involves these claims.

It is desirable to concentrate this litigation in one forum.  The economic value of the class members' individual claims is small, $100-$1,000 per individual claim, plus punitive damages. These amounts are insufficient to ensure that class members will bring their claims in individual cases.

There are no problems with managing the case as a class action. Finex has identified the class members from its records. Experian also has addresses and contact information for each class member in its database. The disputed issues are narrow. *Pintos* provides the Court with specific guidance.

## VI.    CONCLUSION

For the foregoing reasons, plaintiffs respectfully request this Court to certify the class

and to appoint them as class representatives and their attorneys as class counsel.

Dated: December 1, 2010                     Anderson, Ogilvie & Brewer LLP
                                            Law Offices of Balám O. Letona

                                            By  /s/       Andrew J. Ogilvie
                                                   Andrew J. Ogilvie
                                            Attorneys for Plaintiffs Roane Holman, Narcisco Navarro
                                            Hernandez and Miguel A. Alvarez