Daniel J. McLoon (State Bar No. 109598)
Michael G. Morgan (State Bar No. 170611)
Sarah G. Conway (State Bar No. 261414)
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071-2300
Telephone:   (213) 489-3939
Facsimile:   (213) 243-2539
Email: djmcloon@JonesDay.com
       mgmorgan@JonesDay.com
       sgconway@JonesDay.com

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| ROANE HOLMAN, NARCISCO NAVARRO HERNANDEZ, MIGUEL A. ALVAREZ,<br><br>Plaintiffs,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.<br><br>Defendant. | Case No. CV-11-00180-CW<br><br>Assigned to the Honorable Claudia Wilken<br><br>**DECLARATION OF JESSE A. ENRIQUEZ IN SUPPORT OF EXPERIAN INFORMATION SOLUTIONS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Hearing: January 26, 2012<br>Time: 2:00 p.m.<br>Courtroom 2 |

I, Jesse Enriquez, declare as follows:

1. I am currently the Vice President of Operations for the towing company Girard & Peterson, Inc., in Burbank, California. I have held this position since 1982. I make this declaration in support of Experian's Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Class Certification. I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would testify competently to them.

2. I have worked in the towing industry for forty years, and for the past ten years I have been an elected member of the Board of Directors of the California Tow Truck Association ("Association"). The Association is a state-wide association of professional towing operators that was formed to improve the quality of towing and other related services provided to the motoring public and to otherwise represent the interests of its members. I regularly attend board meetings of the Association and vote on issues pending before the Association on behalf of the Los Angeles chapter. The board votes on matters such as (i) what standards the Association should propound regarding best practices and procedures in the towing industry, and (ii) whether the Association should support certain legislative matters involving the towing industry. I also have published numerous articles regarding the towing industry and provided training to members of the Association regarding best practices and procedures in the industry.

3. I have testified and been qualified as an expert witness regarding the towing industry in various proceedings, including civil court actions and California Highway Patrol hearings. In court actions, I have testified on behalf of both plaintiffs and defendants regarding the standard of care in the towing industry. In California Highway Patrol hearings, I have testified regarding best practices and procedures in the towing industry on behalf of tow truck companies and operators who have been suspended or reprimanded by the California Highway Patrol. Attached as Exhibit 1 hereto is a true and correct copy of my CV.

4. Through my work as Vice President of Operations of Girard & Peterson, Inc., and Director of the Los Angeles Chapter of the Association, I have interacted with many owners and operators of towing companies from around the state and am familiar with their practices and procedures, including their practices related to the collection of unpaid towing and storage costs.

5. When a towing company has towed a vehicle but is unable to recover the towing and storage costs from the vehicle's owner, that towing company has the right under certain circumstances to sell the vehicle at a lien sale and apply the proceeds to the unpaid towing and storage costs. When the proceeds of the lien sale are insufficient to cover the towing and storage costs, the towing company sometimes will retain a collection agency, such as Finex Group LLC ("Finex"), to attempt to recover the deficiency from the vehicle's owner.

6. The towing debts that are sent to collection agencies such as Finex can arise in a number of different situations. Some of these debts result from towings made at the direction of law enforcement, such as police impoundments of vehicles that have been illegally parked or abandoned by their owners. However, there are at least seven different types of towing debts that are expressly requested and initiated by the consumer:

(a) Where the owner has requested that the vehicle be towed (*e.g.*, to a mechanic) but is unable to provide proper payment when the tow truck reaches the destination, the vehicle would be towed to the tow yard, towing and storage charges would accrue. If the charges remain unpaid after 72 hours, the vehicle would then be subject to the lien sale process, and sold at a later date if not redeemed. I understand Finex is claiming that towing companies always require payment in advance, but that is not true. In fact, many towing companies, including my own, do not require payment in advance because they recognize that possession of the vehicle typically ensures payment.

(b) Where the owner has requested a tow through an automobile club membership (*e.g.*, a AAA membership) and received towing, storage, or other services not covered under the agreement, and later is unable or unwilling to pay the uncovered costs.

(c) Where the owner has authorized the vehicle be towed to the tow yard, assuming that their insurance or another party's insurance will cover towing, storage, and/or lien fees, and later discovers that there is no insurance coverage available to pay for the services.

(d) Where the owner has requested and paid for a tow with a personal check but the check later bounces.

(e)   Where the owner has requested and paid for a tow with a credit card but the payment is later reversed or rejected.

(f)   Where the owner of a vehicle that has been involved in an accident has left the scene (*e.g.*, to go home or to work or to seek medical treatment) but has authorized the police to have the vehicle towed. In this scenario, the actual towing of the vehicle is made at the direction of the police, but was requested and initiated by the owner.

(g)   Where the owner has been placed under arrest but has authorized the police to have the vehicle towed. This scenario can arise where the police do not have any lawful grounds for impounding the vehicle; in these situations, the police sometimes will give the owner the option of having the vehicle towed under an owner's request (as opposed to simply leaving the vehicle unattended, or having a friend or relative come pick it up).

7.   The towing debts sent to collection agencies such as Finex include debts arising from all six of these different types of consumer-initiated towings. My own company, Girard & Petersen, is a customer of Finex. In my position as Vice President of Operations, I personally have sent to Finex debts that were the result of consumer-initiated towings.

8.   Based on my knowledge of the types of debts regularly sent to collection agencies, both by my company and by other towing companies, I would estimate that between 25 and 30 percent of the towing debts sent to Finex are the result of consumer-initiated towings.

9.   When a towing company sends debts to a collection agency such as Finex, the towing company normally does not provide detailed information concerning the circumstances of the towings that gave rise to those debts. For any particular debt, a towing company typically provides the collection agency only with information about the underlying lien sale and the registered ownership of the vehicle. In most cases, therefore, the information provided to the collection agency will not be sufficient to allow a determination of whether the towing that gave rise to the debt was consumer initiated or not.

10.   Before a towing company can sell a towed vehicle in a lien sale, it must provide notice to the owner. If the owner objects to the lien sale, towing companies will sometimes file suit, typically in small claims court, and seek a court judgment for the amount owed. In some

cases, towing companies will send debts that have been confirmed in court judgments to collection agencies rather than pursue payment themselves.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on December 28, 2011 at BURBANK, CA.

_____
Jesse A. Enriquez

LAI-3155903

DECLARATION OF J. ENRIQUEZ ISO
OPPOSITION TO CLASS CERTIFICATION
- 4 -
CV-11-00180-CW