Daniel J. McLoon (State Bar No. 109598)
Michael G. Morgan (State Bar No. 170611)
Sarah G. Conway (State Bar No. 261414)
JONES DAY
555 South Flower Street, Fiftieth Floor
Los Angeles, CA 90071-2300
Telephone:  (213) 489-3939
Facsimile:  (213) 243-2539
Email: djmcloon@JonesDay.com
       mgmorgan@JonesDay.com
       sgconway@JonesDay.com

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| ROANE HOLMAN, NARCISCO NAVARRO HERNANDEZ, MIGUEL A. ALVAREZ,<br><br>Plaintiffs,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.<br><br>Defendant. | Case No. CV-11-00180-CW<br><br>Assigned to the Honorable Claudia Wilken<br><br>**DECLARATION OF PETER HENKE IN SUPPORT OF EXPERIAN INFORMATION SOLUTIONS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Hearing: January 26, 2012<br>Time: 2:00 p.m.<br>Courtroom 2 |

I, Peter Henke, declare as follows:

1. I am the Director of Membership for defendant Experian Information Solutions, Inc. ("Experian"), a position I have held since October 2010. Before I became Director, I was the Manager of the Membership Department from 2007 to 2010 and Associate Manager from 2003 to 2007. I make this declaration in support of Experian's Opposition to Plaintiffs' Motion for Class Certification. I have personal knowledge of the facts stated in this declaration and if called as a witness I could and would testify competently to them.

2. My responsibilities as Experian's Director of Membership include managing the resource allocation of employees and ensuring that membership responsibilities, such as making eligibility determinations with respect to potential subscribers are addressed in an appropriate timeframe. I also work with the legal and compliance departments when establishing new policies and procedures relating to Membership Department activities. Because of my role in these discussions I am familiar with Experian's protocols and procedures with regard to ensuring subscriber compliance with the Federal Credit Reporting Act ("FCRA").

3. Before the first *Pintos* decision and continuing to this day, Experian has required its subscribers to be familiar with the FCRA limitations on the use of consumer credit information and to certify that they will request and use such information only for a permissible purpose under the FCRA. When Finex initiated its relationship with Experian, it signed Experian documents affirming that it was familiar with the FCRA and certifying that it would request and use FCRA data only for a permissible purpose.

4. Although the *Pintos* decision was in flux for years, Experian began adjusting its practices in response to the case immediately after the issuance of the Ninth Circuit's initial September 2007 opinion. Specifically, Experian distributed a "Talk Track" memorandum about *Pintos* to its employees in October 2007, to ensure that its employees could advise Experian's subscribers about the decision. In May 2009, after the Ninth Circuit had issued its second *Pintos* opinion, Experian distributed a second "Talk Track" memorandum, revised to reflect the case's latest developments. In June 2010, after the issuance of the final *Pintos* opinion and the Ninth Circuit's mandate, Experian distributed a third, again-revised "Talk Track" memorandum to its

employees. Experian instructed its employees to use these "Talk Track" memoranda as a resource when discussing changes in the law with collections customers.

5. In or about September or October 2010, Experian mailed a notice about the *Pintos* decision to all of its subscribers. This notice detailed *Pintos* and its implications, and urged all collection agencies using Experian's services to review the *Pintos* ruling with their attorneys or compliance advisors. The notice further explained that Experian expected its subscribers to comply with *Pintos* (as already required by their contracts with Experian). Attached as Exhibit A is a true and correct copy of the notice.

6. In January 2011, after the Supreme Court had denied certiorari in *Pintos*, Experian distributed a fourth "Talk Track" memorandum to its employees about the case. Once again, Experian's employees were instructed to use this memorandum when discussing the *Pintos* decision with Experian's collections customers.

7. In or about January 2011, Experian sent its subscribers a second notice about the *Pintos* decision, which reiterated the first notice's substance and urgency, and also explained the latest and final developments in the case. Attached as Exhibit B is a true and correct copy of that second notice. In addition, Experian required all collection agencies and debt resellers subscribed to its services to provide written, signed recertifications of their compliance with the FCRA and specifically with *Pintos*. Experian discontinued the subscription services for any client who did not submit a recertification.

8. Finex never received a recertification request from Experian because its account previously had been deactivated due to unpaid bills.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on December 29, 2011 at Schaumburg, Illinios.

_____
Peter Henke

LAI-3154960

DECLARATION OF P. HENKE ISO
OPPOSITION TO CLASS CERTIFICATION
- 2 -
CV-11-00180-CW

# EXHIBIT A



# ***IMPORTANT NOTICE***

**The use of credit reports for the collection of debts not voluntarily incurred by the consumer may not be permitted unless those debts are judicially established by a court order or judgment**

The Ninth Circuit Court of Appeals has recently issued a ruling about the use of consumer reports for the collection of an account under the Fair Credit Reporting Act (FCRA). *See Pintos v. Pacific Creditors Ass'n*, No. 04-17485, 2010 WL 2011550 (9th Cir. May 21, 2010).

The court declined to revisit its April 2009 decision in the *Pintos* case, which held that a collection agency did not have a permissible purpose under the FCRA to access a consumer report to collect a statutory debt resulting from the towing and impounding of an illegally parked vehicle because the debt did not result from a *transaction voluntarily initiated by the consumer*. The court noted that a consumer report may only be used to collect an involuntarily incurred debt if that debt has been judicially established by a court order or judgment. For consumer-initiated debts, however, debt collection remains a permissible purpose.

**If you use Experian consumer report services in connection with the collection of an account, we advise you to promptly review the new ruling with your regular attorney or compliance advisor.**

Experian will be contacting all pertinent customers to discuss this issue. We expect to confirm with you that you are in compliance with this interpretation of the FCRA. Until then, unless you advise otherwise, we are relying upon you to comply with your contract with Experian and this interpretation of the law. **This means that you may obtain Experian reports for collection purposes only when collecting an obligation arising from a transaction voluntarily initiated by the consumer or patient or an obligation that has been judicially established by a court order or judgment.**

For example, under this interpretation, a consumer report may not be accessed to collect:

- Municipal fees or fines, such as parking tickets
- Fees for towing or impounding of illegally parked vehicles
- IRS or other tax liens

unless those obligations have been judicially established.

A consumer report may, however, still be used to collect traditional credit obligations, debts incurred in consumer-initiated transactions (*i.e.*, healthcare, financial services, bankcard, education, utilities, rentals, etc.), court-ordered obligations like child support, and judgment debts.

# EXHIBIT B

# ***IMPORTANT NOTICE***

**The use of credit reports for the collection of debts not voluntarily incurred by the consumer may not be permitted unless those debts are judicially established by a court order or judgment**

The U.S. Supreme Court recently denied Experian's petition for certiorari in *Experian Information Solutions, Inc. v. Pintos*, No. 10-251, a case about the use of consumer reports for the collection of an account under the Fair Credit Reporting Act (FCRA).

Thus the Ninth Circuit's prior decision in *Pintos v. Pacific Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010) continues to stand. In that decision, the court held that a collection agency did not have a permissible purpose under the FCRA to access a consumer report to collect a statutory debt resulting from the towing and impounding of an illegally parked vehicle because the debt did not result from a *transaction voluntarily initiated by the consumer*. The court noted that a consumer report may only be used to collect an involuntarily incurred debt if that debt has been judicially established by a court order or judgment. For consumer-initiated debts, however, debt collection remains a permissible purpose.

**If you use Experian consumer report services in connection with the collection of an account, we advise you to promptly review the ruling with your regular attorney or compliance advisor.**

Experian has previously notified all pertinent customers of this issue and to confirm with you that you are in compliance with this interpretation of the FCRA. Unless you advise otherwise, we are relying upon you to comply with your contract with Experian and this interpretation of the law. **This means that you may obtain Experian reports for collection purposes only when collecting an obligation arising from a transaction voluntarily initiated by the consumer or patient or an obligation that has been judicially established by a court order or judgment.**

For example, under this interpretation, a consumer report may not be accessed to collect:

- Municipal fees or fines, such as parking tickets
- Fees for towing or impounding of illegally parked vehicles
- IRS or other tax liens

unless those obligations have been judicially established.

A consumer report may, however, still be used to collect traditional credit obligations, debts incurred in consumer-initiated transactions (*i.e.*, healthcare, financial services, bankcard, education, utilities, rentals, etc.), court-ordered obligations like child support, and judgment debts.

CONFIDENTIAL                                                                                                    EIS000002