United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROANNE HOLMAN; NARCISCO NAVARRO HERNANDEZ; MIGUEL A. ALVAREZ; and all others similarly situated,

Plaintiffs,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

Defendant.

________________________________/

No. C 11-0180 CW

ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (Docket No. 68)

Plaintiffs Roane Holman, Narcisco Navarro Hernandez and Miguel A. Alvarez move for class certification, to be appointed as class representatives and for their counsel to be appointed as class counsel. Defendant Experian Information Solutions, Inc. opposes Plaintiffs' motion. Having considered the papers filed by the parties and their oral arguments at the hearing, the Court GRANTS Plaintiffs' motion.

BACKGROUND

This action arises from Experian's purported disclosure of the credit reports of putative class members to Finex Group, LLC in violation of the Fair Credit Reporting Act (FCRA). Plaintiffs seek statutory damages under the FCRA for Experian's alleged willful violation of the statute by furnishing consumer reports to Finex and failing to verify that Finex was using those reports for a permissible purpose, even though Experian had reason to believe that Finex was not doing so.

I. Experiences of the named Plaintiffs

A. Roane Holman

On August 8, 2009, Holman was driving his Toyota car and was stopped and arrested on suspicion of drunk driving. Holman Decl. ¶ 2. The police had a towing company tow Holman's car from the scene. Id. They did not ask him if he wanted the car towed. Id. Holman was unable to pay the towing company for towing and storage fees for his car. Id. at ¶ 3. The towing company subsequently sold his car in a lien sale. Id. Holman later received bills from Finex seeking to collect the balance owed for towing and storage. Id.

Plaintiffs allege that Experian provided Finex with a consumer report regarding Holman, including his credit information, on September 14, 2009. First Am. Compl. (1AC) ¶ 15. Experian admits that it did. Answer ¶ 15.

B. Narcisco Navarro Hernandez

Navarro formerly owned a LeBaron car. He traded it for a truck, and subsequently completed a form at the DMV to record the transfer of the car. Navarro Depo. Tr. 22:18-23:19, 25:1-5.[1]

Plaintiffs allege that later on, in August 2009, a law enforcement officer directed a towing company to tow the car. 1AC ¶ 8. The towing company sent him a bill, which he did not pay. Id. The company subsequently sold the car at an auction and claimed he was liable for the deficiency. Id. When Navarro failed to pay the deficiency, the towing company retained Finex to

[1] Although Experian suggests that Navarro in fact did not trade away the car, Experian offers no evidence to contradict Navarro's testimony.

United States District Court
For the Northern District of California

collect it. Id. On September 1, 2010, Experian furnished a consumer information report with his credit information to Finex for use in collecting the debt. Id. at ¶ 17.

C. Miguel A. Alvarez

Alvarez formerly owned a 1985 VW Jetta. Alvarez Decl. ¶ 2. He sold the car on September 11, 2009 and subsequently filed a Notice of Transfer and Release of Liability with the California Department of Motor Vehicles. Id.[2]

Alvarez subsequently received a bill from a towing company for towing and storage of the Jetta, which had taken place after he sold the car. Id. at ¶ 3. Alvarez did not initiate the towing. Id. He alleges that a law enforcement officer directed the towing company to tow the car. 1AC ¶ 7.

After Alvarez refused to pay the bill, the towing company sent him a notice, stating that the car had been sold at a lien sale and asking him to pay the towing deficiency. Alvarez Decl. ¶ 4. Finex subsequently sent Alvarez bills for towing and storage. Id.

Plaintiffs allege that Experian furnished Finex with a consumer report regarding Alvarez, including his credit information, on June 29, 2010. 1AC ¶ 16.

II. Appeal in Pintos v. Pacific Creditors Association and Experian's related actions

In Pintos v. Pacific Creditors Association, Case No. C 03 5471 CW (N.D. Cal.), this Court granted summary judgment in favor of the defendants, Pacific Creditors Association (PCA) and

---

[2] Although Experian suggests that Alvarez did not sell his car, Experian has not produced any evidence to contradict Alvarez's sworn declaration.

Experian, concluding that the law permitted Experian to furnish Maria Pintos's credit report to PCA for the purpose of collecting her towing related debt. Experian had maintained that this purpose fell within the scope of 15 U.S.C. § 1681b(a)(3)(A), which authorizes a consumer reporting agency to furnish a consumer credit report to a person it has reason to believe "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." Pintos appealed. While the alleged events in the current case occurred, proceedings on Pintos's appeal were ongoing.

The Pintos appeal generated two opinions by the Ninth Circuit. In the first, issued September 21, 2007, the Ninth Circuit concluded that the Fair and Accurate Credit Transactions Act of 2003 (FACTA), Pub. L. No. 108-159, 117 Stat. 1952, amended the FCRA to define "credit" as a "'right . . . to defer payment,'" and, as a result, a "'credit transaction' is a transaction in which the consumer directly participates and voluntarily seeks credit." Pintos v. Pac. Creditors Ass'n, 504 F.3d 792, 798 (9th Cir. 2007) (citing Stergiopoulos v. First Midwest Bancorp, Inc., 427 F.3d 1043, 1047 (7th Cir. 2005)). It also held that PCA's blanket certification to Experian that it would use the credit reports for permissible purposes did not absolve Experian of responsibility, because "the reporting agency must make 'a reasonable effort' to verify the certifications and may not furnish reports if 'reasonable grounds' exist to believe that

reports will be used impermissibly." Id. at 800 (citing 15 U.S.C. § 1681e(a)).

In response to this decision, in October 2007, Experian distributed a "Talk Track" memorandum to its employees outlining the Ninth Circuit's holding and the company's position regarding the case, and instructing its employees to use the information in the memorandum when speaking with collections customers. Henke Decl. ¶ 4; Anderson Decl., Ex. 7, at 1. In the memorandum, Experian stated that it was "seeking court review and rehearing of [the] decision" and would "notify its clients regarding compliance procedures after the final outcome of the court's review." Anderson Decl., Ex. 7, at 1. Experian directed its employees to tell "clients to consult with their company's legal counsel for guidance in this matter" if the clients asked a question regarding the Pintos decision. Id.; Henke Depo. Tr. 105:13 106:4.

On April 30, 2009, the Ninth Circuit withdrew its first opinion and issued a superseding decision. The second Pintos opinion excised the previous references to the FACTA, but reached the same conclusion: collection of a towing-related debt did not provide a permissible purpose to obtain or furnish a credit report where it did not constitute "a transaction initiated by [the consumer]" and was not a judicially-established debt. Pintos v. Pac. Creditors Ass'n, 565 F.3d 1106, 1114 (9th Cir. 2009). The Ninth Circuit did not alter its holding or analysis regarding Experian's liability for PCA's FCRA violations. Id. at 1114-15.

In response to the second decision, Experian distributed a second Talk Track memorandum to its employees in May 2009. Henke Decl. ¶ 4; Anderson Decl., Ex. 7, at 2. The memorandum provided

staff with an update regarding the more recent decision, and included the same description of the company's position as that contained in the previous memorandum. Anderson Decl., Ex. 7, at 2. Experian again stated that it was "seeking court review and rehearing of [the] decision" and would "notify its clients regarding compliance procedures after the final outcome of the court's review." Id. Experian again directed its employees to tell "clients to consult with their company's legal counsel for guidance in this matter." Id.

Experian petitioned for rehearing en banc, which was denied; seven circuit judges dissented from the denial. See Pintos v. Pac. Creditors Ass'n, 605 F.3d 665, 670-72 (9th Cir. 2010). Following the denial of the petition, on May 21, 2010, the Ninth Circuit panel amended the second Pintos opinion to clarify what arguments Experian and Pacific Creditors Association could raise on remand to this Court. Id. at 670. This amendment did not alter the analysis or holding of the April 2009 opinion. Id.

In June 2010, Experian issued a third Talk Track memorandum to its sales employees describing the recent denial of the motion for rehearing en banc and the holding of the earlier decisions. Henke Decl. ¶ 4; Anderson Decl., Ex. 7, at 3. In the memorandum, Experian stated that it would "notify its clients in the coming weeks regarding new compliance policies, possibly including re-certification, updated membership documents, and audits." Anderson Decl., Ex. 7, at 3. It again stated that it "urges all clients to consult with their companies' legal counsel for guidance in this matter." Id.

United States District Court
For the Northern District of California

In September or October 2010, Experian mailed a document titled "Important Notice" to all of its subscribers. Henke Decl. ¶ 5, Ex. A; Anderson Decl., Ex. 5. In the notice, Experian described the Pintos case and the Ninth Circuit's holding. Experian also stated that

> Experian will be contacting all pertinent customers to discuss this issue. We expect to confirm with you that you are in compliance with this interpretation of the FCRA. Until then, unless you advise otherwise, we are relying upon you to comply with your contract with Experian and this interpretation of the law. This means that you may obtain Experian reports for collection purposes only when collecting an obligation arising from a transaction voluntarily initiated by the consumer or patient or an obligation that has been judicially established by a court order or judgment.

Anderson Decl., Ex. 5.

Experian began a process to have its collections clients "re-certify their permissible purpose of collections." Anderson Decl., Ex. 8, at 1. On December 15, 2010, Experian held a training for its staff, in which it reviewed the impacted client accounts and taught staff about an online process that it created for the re-certification process, and had a webinar for staff who could not attend. Id. at 2. Experian set July 1, 2011 as the deadline for re-certification of clients. Id. at 1.

On January 10, 2011, the United States Supreme Court denied Experian's petition for a writ of certiorari. Subsequently, in January 2011, Experian issued a fourth and final Talk Tracks memorandum to its staff, describing the case. Henke Decl. ¶ 6; Anderson Decl., Ex. 7, at 4. Experian also sent a second notice to its clients, which was largely identical to the first mailed notice. Henke Decl. ¶ 7, Ex. B.

United States District Court
For the Northern District of California

III. Experian's relationship with Finex

Paul Price and Antonia Sainz-Blas founded Finex, a collection agency specializing in collecting towing deficiency claims for towing companies, in late 2007. Price Decl. ¶ 1. Finex began its collection activities in late 2007 or early 2008. Id. at ¶ 3.

Finex began discussing Experian's services with Experian in late 2007. Blas Decl. ¶ 5. Finex's primary contact at Experian for the duration of its relationship with Experian was Scot Levine, an Account Executive. Levine Decl. ¶ 3. On Finex's applications for services with Experian in December 2007 and January 2008, Finex described itself as a collection agency and call center, and listed its permissible purpose for obtaining credit information as follows: "We are a consumer & commercial 3rd party collection agency." Anderson Decl. ¶¶ 8-9, Exs. 2 and 3. During its process of approving Finex to report and receive credit information, an Experian employee noted that Finex's permissible purpose was "collections." Anderson Decl., Ex. 11. Experian employees printed pages from Finex's website that indicated that Finex provided collections for towing companies and placed these documents in Experian's file on Finex. Henke Depo. Tr. 49-50, 64:22-66:10, 71-77; Anderson Decl., Ex. 9.

Finex entered into a Subscriber Agreement with Experian in January 2008, under which Finex received Collection Advantage reports from Experian, which contain credit information taken from Experian's consumer credit database. Blas Decl. ¶ 5; Levine Decl. ¶ 3. Finex began receiving these reports in early 2008. Price Decl. ¶ 20. The Collection Advantage reports contain a "Recovery Score," which Levine "described as a score that ranks accounts

United States District Court
For the Northern District of California

based on the likelihood the debtors will pay the debt." Price Decl. ¶ 12.

Price and Blas state that they discussed the Pintos decisions with Levine on multiple occasions and that they told Levine repeatedly, including in their early conversations with him, that "Finex specialized in collecting on towing deficiency claims." Price Decl. ¶¶ 12-13; Blas Decl. ¶¶ 6, 9, 10. During their initial conversation with him, Price and Blas asked him whether in light of Pintos "there was any problem with Finex receiving the Recovery Scores for use in its towing claims collections," to which Levine responded that "there was no problem." Price Decl. ¶ 6. In June 2008, Price and Blas told Levine that "99% of our collections were for towing" and said they "wanted to be sure we were not getting FRCA information we should not be getting in light of Pintos." Id. at ¶ 9. Levine assured them that "Finex was not getting any information it should not be getting for those collections." Id. Also in June 2008, Price sent Levine an email stating that one type of debt that Finex collected was for towing. Anderson Reply Decl. ¶ 2, Ex. 18. Again in October 2008, Levine "assured" Blas that they "were not in violation of the Pintos decision in using the Collection Advantage reports, including the Recovery Scores." Blas Decl. ¶ 10.[3]

---

[3] While Experian argues that "Plaintiffs' claim that . . . Levine suggested to Finex's management that they need not worry about Pintos is simply false," Opp. at 5, n.1, the only evidence to which Experian points in support of this assertion is Levine's declaration that he does not "recall having conversations regarding the Pintos case," Levine Decl. ¶ 4. This does not contradict the statements of Price and Blas or raise a factual dispute.

Finex's account with Experian was discontinued in late 2010, and Finex last obtained a Recovery Score from Experian on November 19, 2010. Levine Decl. ¶ 2; Price Decl. ¶ 25; Anderson Decl. ¶ 18. At that time, Experian had not yet sent Finex a re-certification request for compliance with the Pintos decision. Henke Decl. ¶¶ 7-8. During the course of their relationship from 2008 to 2010, Experian furnished Finex with Collection Advantage reports on more than 40,000 consumers. Price Decl. ¶ 22.

IV. Background of this action

Holman initiated this action on January 12, 2011 as the sole Plaintiff, naming as Defendants Experian and Finex. See Docket No. 1. On May 25, 2011, this Court denied Experian's motion to dismiss the complaint. Docket No. 32.

On June 7, 2011, Finex sent Holman a settlement proposal, offering to cancel the debt he owed to Finex's client, the towing company, in full and not to pursue a separate legal action against him if he agreed to "cancel" his lawsuit against Finex by June 15, 2011. Morgan Decl., Ex. 9. It appears that Finex did later initiate a lawsuit against Holman in state court seeking recovery of the outstanding debt.

Holman and Finex drafted a settlement agreement dated August 15, 2011. Anderson Reply Decl., Ex. 72. Under the draft agreement, Holman would dismiss his claims against Finex with prejudice after Finex provided him with certain information and documents, including regarding Finex's relationship and communications with Experian. Id. The draft agreement did not contain any provision for resolving the towing claim against Holman. Id.

On September 2, 2011, Holman's counsel sent Finex's attorney an email stating that he had "sent the Finex settlement agreement to Roane Holman," and that Holman "want[s] an agreement that Finex will void the tow bill account." Anderson Reply Decl., Ex. 74. Holman's counsel asked if that could be arranged. Id. On September 8, 2011, Holman and Finex signed a settlement agreement, in which Holman agreed to dismiss his individual claims against Finex with prejudice and those of the class without prejudice. Anderson Reply Decl., Ex. 78. In return, Finex agreed to cooperate with Holman in the prosecution of Holman's case against Experian. Id. They also agreed that "Holman shall pay the sum of $200, . . . which sum shall be treated as full satisfaction of the debt that is allegedly owed by Holman to Finex's client." Id.

On September 15, 2011, Finex and Holman filed a stipulation dismissing Holman's claims against Finex with prejudice, and Holman filed a motion for leave to file an amended complaint removing the claims against Finex and adding Navarro and Alvarez as named Plaintiffs. Docket Nos. 40, 42. This Court granted the stipulation on September 16, 2011, dismissing the claims against Finex. Docket No. 44.

On October 4, 2011, Holman and Experian stipulated to allow the filing of the amended complaint. Docket No. 56. The Court granted the parties' stipulation on October 5, 2011. Docket No. 57. Plaintiffs filed their first amended complaint, omitting the claims against Finex and adding Navarro and Alvarez as named Plaintiffs, on that day. Docket No. 59.

United States District Court
For the Northern District of California

On December 1, 2011, Plaintiffs filed their motion for class certification. To prosecute their single claim for statutory damages for Experian's willful violation of the FCRA, Plaintiffs seek certification of a class consisting of "all consumers whose consumer reports were furnished by Experian to Finex in connection with Finex's efforts to collect on a towing deficiency claim from January 1, 2008 to the present." Mot. at 12.

LEGAL STANDARD

Plaintiffs seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). Rule 23(a) provides that a case is appropriate for certification as a class action if

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b) further provides that a case may be certified as a class action only if one of the following is true:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or

> would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b). Plaintiffs assert that the class qualifies for certification under subdivision (b)(3).

As the parties seeking class certification, the plaintiffs bear the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines that the plaintiffs have borne their burden. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158-61 (1982); Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977). In general, the court takes the substantive allegations of the complaint as true. Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975). However, the court must conduct a "'rigorous analysis,'" which may require it "'to probe behind the pleadings before coming to rest on the certification question.'" Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting

Falcon, 457 U.S. at 160-61). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." Dukes, 131 S. Ct. at 2551. To satisfy itself that class certification is proper, the court may consider material beyond the pleadings and require supplemental evidentiary submissions by the parties. Blackie, 524 F.2d at 901 n.17. "When resolving such factual disputes in the context of a motion for class certification, district courts must consider 'the persuasiveness of the evidence presented.'" Aburto v. Verizon Cal., Inc., 2012 U.S. Dist. LEXIS 329, at *6 (C.D. Cal.) (quoting Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011)). Ultimately, it is in the district court's discretion whether a class should be certified. Molski v. Gleich, 318 F.3d 937, 946 (9th Cir. 2003); Burkhalter Travel Agency v. MacFarms Int'l, Inc., 141 F.R.D. 144, 152 (N.D. Cal. 1991).

DISCUSSION

I. Class Definition

"[I]n order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." DeBremaeker v. Short, 433 F.2d 733, 734 (5th Cir. 1970) (citing Weisman v. MCA Inc., 45 F.R.D. 258 (D. Del. 1968)). "A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." Hanni v. Am. Airlines, Inc., 2010 U.S. Dist. LEXIS 3410, at *24 (N.D. Cal.) (quoting Moreno v. Autozone, Inc., 251 F.R.D. 417, 421 (N.D. Cal. 2008)). "The identity of class members must be

United States District Court
For the Northern District of California

ascertainable by reference to objective criteria." 5 James W. Moore, Moore's Federal Practice § 23.21[1] (2001). Thus, a class definition is sufficient if the description of the class is "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998).

Experian argues that Plaintiffs' proposed class definition is overly broad, because it encompasses consumers who cannot state a valid claim against Experian under Pintos. See Wolph v. Acer Am. Corp., 272 F.R.D. 477, 482-83 (N.D. Cal. 2011) (finding a class definition overbroad where the proposed class included persons who had already received a remedy and were not damaged); Mazur v. eBay, 257 F.R.D. 563, 567 (N.D. Cal. 2009) (rejecting a class definition as imprecise and overbroad where it included person who were not harmed).

In Pintos, the Ninth Circuit stated that "the FCRA permits [consumer reporting] agencies to furnish credit reports only for 'certain statutorily enumerated purposes.'" 605 F.3d at 674. One such permissible purpose allows an agency to furnish a consumer report

> [t]o a person which it had reason to believe . . . intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer.

15 U.S.C. § 1681b(a)(3)(A). "To qualify under § 1681b(a), the 'credit transaction' must both (1) be 'a credit transaction involving the consumer on whom the information is to be furnished' and (2) involve 'the extension of credit to, or review or

collection of an account of, the consumer.'" Pintos, 605 F.3d at 674. This section "can be relied upon by the party requesting a credit report 'only if the consumer initiates the transaction.'" Id. at 675 (quoting Stergiopoulos v. First Midwest Bancorp, Inc., 427 F.3d 1043, 1047 (7th Cir. 2005)). It does not apply where a consumer "is 'oblige[d] to become associated' with the transaction." Id. (quoting Andrews v. TRW, Inc., 225 F.3d 1063, 1067 (9th Cir. 2000)). However, "[i]f a debt has been judicially established, there is a 'credit transaction involving the consumer' no matter how it arose." Id. at 676.

Experian argues that the proposed class definition, which encompasses "all consumers whose consumer reports were furnished by Experian to Finex in connection with Finex's efforts to collect on a towing deficiency claim," is overbroad, because it includes consumers whose debts were either consumer-initiated or whose debts have been judicially established. Plaintiffs seem to argue that a "towing deficiency claim" is defined as containing only those that arise "when a vehicle is towed involuntarily." Reply, at 3. However, the law governing such deficiency claims does not support this definition.

California Civil Code § 3068.1 provides for liens "dependent upon possession for the compensation to which [a] person is legally entitled for towing, storage, or labor associated with recovery or load salvage of any vehicle subject to registration that has been authorized to be removed by a public agency, a private property owner . . ., or a lessee, operator, or registered owner of the vehicle." Cal. Civil Code § 3068.1(a). It "also allows for lien sales with varying procedures dependent on the

value of the vehicle towed and stored." Pintos, 605 F.3d at 673, n.1 (citing Cal. Civil Code §§ 3068.1(b)-3068.1(c)). California Civil Code § 3068.2 specifically provides that a tow truck operator with a lien on a vehicle pursuant to the previous code section "has a deficiency claim against the registered owner of the vehicle if the vehicle is not leased or leased with a driver for an amount equal to the towing and storage charges, not to exceed 120 days of storage, . . . less the amount received from the sale of the vehicle." Cal. Civil Code § 3068.2(a). Thus, a towing deficiency claim may arise under California law when the tow has been authorized by the registered owner of the vehicle and was thus consumer-initiated.

Furthermore, though Price and Blas stated in their declarations that "[v]irtually all of the towing claims that Finex has been retained to collect resulted from involuntary tows," Price Decl. ¶ 5, Blas Decl. ¶ 13, Price acknowledges that Finex did in fact pursue at least some claims involving "consensual" tows and claims that were reduced to a judgment during the class period. Price Reply Decl. ¶¶ 5-7 (describing how he removed these individuals from the class list he provided to Plaintiffs' counsel).

Accordingly, the Court agrees that the proposed class definition is facially overbroad. "District courts are permitted to limit or modify class definitions to provide the necessary precision." In re Monumental Life Ins. Co., 365 F.3d 408, 414 (5th Cir. 2004). See also Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class definition proposed . . ."); Gonzales v. Comcast Corp., 2012 U.S. Dist. LEXIS

196, at *63 (E.D. Cal.) ("the court has the power to modify the proposed class definitions to make them sufficiently definite"). The Court thus modifies the proposed class definition to encompass only "consumers whose consumer reports were furnished by Experian to Finex . . . in connection with Finex's efforts to collect on a towing deficiency claim that was not reduced to a judgment and was not the result of a transaction that the consumer initiated."

The parties also dispute whether it will be administratively feasible to exclude individuals with consumer-initiated tows or judicially-established debts. These are objective criteria, and class members can easily discern whether or not they were involved in the initiation of the towing, and whether a court has confirmed the debt against them, and submit related evidence or declarations. See In re TFT-LCD Antitrust Litig., 267 F.R.D. 583, 592 (N.D. Cal. 2010) ("The fact that class members will be required to submit some information in order to determine whether they are members of the class does not render the class definition unascertainable."). Even if the fact-finder must engage in individual determinations regarding these factors, these are both limited and discrete inquiries.

Accordingly, the Court rejects Experian's argument that the class cannot be certified because it is unascertainable.

II. Numerosity

Plaintiffs represent that Experian furnished Finex with Collection Advantage reports on 4,427 consumers in 2008, on 14,785 consumers in 2009, and on 21,236 consumers in 2010. Price Decl. ¶ 22. Experian does not dispute that Plaintiffs have satisfied the numerosity requirement. Accordingly, the Court finds that

Plaintiffs have fulfilled their burden to establish that this requirement is satisfied.

III. Commonality

Rule 23 contains two related commonality provisions. Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(b)(3), in turn, requires that such common questions predominate over individual ones.

The Ninth Circuit has explained that Rule 23(a)(2) does not preclude class certification if fewer than all questions of law or fact are common to the class:

> The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion requirements of Rule 23(b)(3). Indeed, Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

Experian contends that commonality cannot be found throughout the class period. Experian argues that its actions during this period, including issuing the Talk Tracks and sending letters to some customers, affect the determination of "the reasonableness of Experian's procedures for ensuring § 1681b compliance, or of Experian's belief that Finex was complying with § 1681b." Thus, Experian contends that the reasonableness of its procedures and beliefs may not be determined for the class period as a whole. At the hearing, Experian conceded that, if the class were divided into subclasses by time period, the reasonableness of its procedures would be a common question within each subclass.



United States District Court
For the Northern District of California

Under Pintos, to hold a credit reporting agency liable for its subscriber's FCRA violation, after a potential subscriber certifies the purpose for which it is seeking credit information and certifies that it will use the information for no other purpose, "the reporting agency must make 'a reasonable effort' to verify the certification and may not furnish reports if 'reasonable grounds' exist to believe that reports will be used impermissibly." Pintos, 605 F.3d at 677. Plaintiffs argue that Experian should have made a reasonable effort to verify Finex's certification, especially because Finex had repeatedly informed Experian that it collected towing deficiencies since the beginning of the relationship between Finex and Experian. While Experian says that "the reasonableness . . . of Experian's belief that Finex was complying with" the FCRA is "an issue for which the proposed class cannot be treated as unitary whole," Opp. at 13, Experian does not explain this argument. This determination does not depend on the facts surrounding the claim of any particular class members; instead, it turns on the interactions between Experian and Finex. As previously noted, there is evidence in the record that, prior to approving Finex to receive the Collection Advantage reports, Experian had information that Finex provided collections for towing companies, and that Experian continued to receive more information to this effect through October 2008. Thus, the reasonableness of Experian's belief that Finex was using the reports impermissibly is a question common to the class, especially because, as will be discussed below in connection with predominance, the Court will limit the class those consumers whose reports Experian furnished to Finex on or after January 12, 2009.

While "commonality only requires a single significant question of law or fact" that is common to the class, Mazza v. Amer. Honda Motor Co., 666 F.3d 581, 589 (9th Cir. 2012), the Court also finds the reasonableness of Experian's procedures for ensuring compliance with the FCRA after the Pintos decisions constitutes another such common question. Experian argues that the facts that it issued Talk Tracks to its employees in October 2007, May 2009, June 2010 and January 2011, and that it sent "Important Notices" to clients like Finex in September or October 2010 and January 2011 explaining the requirements of Pintos, will affect the determination of the reasonableness of its procedures for ensuring compliance with the FCRA, precluding a common determination for the whole class.

First, Finex stopped receiving credit information from Experian in November 2010, and thus the January 2011 Talk Tracks and Important Notice are irrelevant to whether Experian acted reasonably regarding disclosure of the putative class members' credit information. Similarly, Experian acknowledges that Finex was never contacted for re-certification or auditing, because it was no longer a customer by the time Experian began conducting these processes in January 2011; thus, the re-certification and audit process is not pertinent to the class's claims.

Nor do the Talk Track memoranda defeat the commonality of the determination. The first Talk Tracks memorandum went to employees in October 2007, before Finex began receiving credit information from Experian. The second and third Talk Tracks memoranda issued during the class period were largely identical to the first one and included almost the same directions to employees. More

United States District Court
For the Northern District of California

importantly, none of these memoranda is relevant to whether Experian took reasonable efforts to verify Finex's certification; instead, they contain an explanation of the Pintos decision and its holding and directions to employees to tell clients who inquire about the case to consult with their own attorneys. While the memoranda note that Experian would eventually notify its clients about new compliance policies and that it would audit and re-certify clients in the future, they do not instruct employees to make any inquiries or take any steps to verify certifications.

Finally, the Important Notice sent to clients, including Finex, in September or October 2010 also does not defeat the commonality of this determination for those whose reports were disclosed before and after it was sent. In the Important Notice, Experian told its clients that it would contact the affected clients directly for re-certification and that, until then, it would be "relying upon you to comply," which meant that the customer would "obtain Experian reports for collection purposes only when collecting an obligation arising from a transaction voluntarily initiated by the consumer" or when the obligation "has been judicially established by a court order or judgment." Anderson Decl., Ex. 5. However, under the holding of Pintos, reliance upon the clients' certification of compliance "cannot absolve the reporting agency of its independent obligation to verify the certification and determine that no reasonable grounds exist for suspecting impermissible use," especially where, as here, there was reason for Experian to suspect that a particular client was not complying with the certification. 605 F.3d at 677 and n.3.

Experian also argues that there is no commonality throughout the entire class period, because the currently operative decision in Pintos was not issued until April 30, 2009, changing whether debt collection in certain circumstances was a permissible purpose under the FCRA and thus altering whether it could be held liable for "willfully" violating the statute. Experian argues that, until that time, it could have reasonably read the FCRA to allow it to make these disclosures by relying upon the Ninth Court's decision in Hasbun v. County of L.A., 323 F.3d 801, 802 (9th Cir. 2003).

However, on September 21, 2007, prior to the start of Experian's relationship with Finex and prior to the disclosures at issue here, the Ninth Circuit issued its first decision and entered judgment in Pintos. This decision indicated that the collection of a towing-related debt did not constitute a permissible purpose for furnishing a credit report under FCRA, where the towing was not consumer-initiated and the debt had not been reduced to a judgment. Parties must obey "an order issued by a court with jurisdiction over the subject matter and person . . . until it is reversed by orderly and proper proceedings." United States v. United Mine Workers, 330 U.S. 258, 293 (1947). The "pendency of a petition for rehearing does not, in itself, destroy the finality of an appellate court's judgment." Wedbush, Noble, Cooke, Inc. v. SEC, 714 F.2d 923, 924 (9th Cir. 1983). Although the decision was subject to Experian's petitions for panel rehearing and rehearing en banc and for a writ of certiorari in the United States Supreme Court, the 2007 decision was "nevertheless final for such purposes as stare decisis, and full

faith and credit." Id. Thus, when Experian furnished the class members' reports to Finex, there was already binding Ninth Circuit authority that this type of debt collection did not constitute a permissible purpose. Further, while the 2009 decision changed the Ninth Circuit's reasoning, Experian does not dispute that the holding remained the same.

Accordingly, the Court finds that Plaintiffs have satisfied the commonality requirement.

IV. Typicality

Rule 23(a)(3)'s typicality requirement provides that a "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Falcon, 457 U.S. at 156 (quoting E. Tex. Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977)) (internal quotation marks omitted). The purpose of the requirement is "to assure that the interest of the named representative aligns with the interests of the class." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992). Rule 23(a)(3) is satisfied where the named plaintiffs have the same or similar injury as the unnamed class members, the action is based on conduct which is not unique to the named plaintiffs, and other class members have been injured by the same course of conduct. Id. Class certification is inappropriate, however, "where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." Id. (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990)).

Plaintiffs state that their claims are typical of the class, because each named Plaintiff had a vehicle towed involuntarily, which was sold at a lien sale, the towing company asserted a towing deficiency claim against each, and Finex tried to collect the claim by obtaining a Collection Advantage report from Experian.

Experian argues that the class representatives' claims are not typical of those of the class, because of the specific circumstances that led to the towing of the cars related to the class representatives. Experian contends that Navarro and Alvarez do not "have documents to prove that" they "did not own their cars when each was towed." Opp. at 15. However, the evidence in the record supports a finding that they sold their cars before their cars were towed and they were not liable for the towing deficiency. See Cal. Civil Code § 3068.2(d) ("A registered owner who has sold or transferred his or her vehicle prior to the vehicle's removal and who was not responsible for creating the circumstances leading to the removal of the vehicle is not liable for any deficiency . . . if that registered owner executes a notice . . . and submits the notice to the Department of Motor Vehicles.").

Experian also maintains that Holman initiated his tow by running from the police. However, in Pintos, the Ninth Circuit stated, "The requirement that the consumer initiate the transaction is not satisfied simply because the consumer did something that arguably led to the creditor's claim." 605 F.3d at 675. The dissent argued that the plaintiff had initiated the transaction, because "refusing to pay required vehicle

registration fees and parking one's car on a public street is asking to have one's car towed." Id. at 680 (Bea, J., dissenting) (emphasis in original). The majority rejected this view and stated that the plaintiff "did not initiate the transaction that resulted in PCA requesting her credit report," because she "never asked to have the vehicle towed; P&S simply towed the car by direction of the police then tried to collect the charges." Id. at 675. Similarly, while Holman did something that arguably led to the creditor's claim against him, he did not ask for his car to be towed. Instead, the police had it towed without his permission or consent.

Experian also argues that Holman, Alvarez and Navarro do not have claims arising before the Pintos decision in 2009 or after Experian contacted Finex about the case in fall of 2010 by sending the Important Notice, and that this makes them atypical of the class members who do have claims in those time periods. However, this argument is unavailing for the reasons discussed previously.

Accordingly, the Court finds that Plaintiffs have met the typicality requirement.

V. Adequacy

Rule 23(a)(4) establishes as a prerequisite for class certification that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

Experian argues that Holman cannot adequately represent the class, because Holman abandoned the claims against Finex to the detriment of the class in order to have his outstanding debt to Finex released. Experian similarly argues that both Alavarez and

United States District Court
For the Northern District of California

Navarro are inadequate, because they did not even pursue claims against Finex.

Plaintiffs respond that the decision not to pursue Finex was strategic and did not evidence any inadequacy in their ability to represent the class. Plaintiffs state that they evaluated the claims against Finex and determined that they would have a difficult time proving that Finex had "willfully" violated FCRA. Given the difficult case and the fact that Finex was virtually judgment proof, Plaintiffs decided to gain Finex's cooperation in their case against Experian.

The decision to pursue only Experian does not demonstrate Plaintiffs' inadequacy. While Experian argues that "[a]ny plaintiff with a claim against Experian will . . . also have a claim against Finex," Opp. at 18, this is incorrect, because a plaintiff must prove that a defendant "willfully" failed to comply with the FCRA in order to recover against that defendant. See 15 U.S.C. § 1681n. Further, Finex's cooperation with Plaintiffs has significantly improved their case against Experian; the testimony by Blas and Price regarding their communications with Experian strengthens Plaintiffs' evidence in support of a finding that Experian had "reasonable grounds" to know that Finex was not using the reports for a permissible purpose, making Experian liable for Finex's improper conduct under Pintos.

Although Holman did receive a financial benefit in the form of the settlement of the individual claim against him, this does not make him an inadequate class representative. Experian primarily relies on remarks made by Holman's mother to present Holman's settlement with Finex in a questionable light, but it

provides no evidence that she has any authority to speak or act on behalf of her adult son, and her statements are not relevant to the suitability of her son to serve as a class representative. Further, Experian presents many of her statements in a misleading manner. While Experian makes much of the fact that Holman did not obtain a release of all debts that putative class members owed to Finex, Holman could not have done so. He had no ability to promise on their behalf that they would make a partial payment, as he did for his debt. Further, the claims in this case center on the wrongful disclosure of class members' credit reports, and do not seek discharge of towing debts. Experian presents no evidence that Holman acted in bad faith or compromised the class claim against Finex for any reason other than to obtain a benefit for the class in the form of Finex's cooperation.

Experian also argues that Navarro cannot adequately represent the class, because Navarro does not know enough about the case or his duties toward the putative class.

"While class representatives must be familiar with the basics of, and 'understand the gravamen' of, their claims, it is not necessary that they be 'intimately familiar with every factual and legal issue in the case.'" In re Static Random Access Memory Antitrust Litig., 264 F.R.D. 603, 610 (N.D. Cal. 2009) (quoting Moeller v. Taco Bell Corp., 220 F.R.D. 604, 611 (N.D. Cal. 2004)). "A class representative will be deemed inadequate only if she is startlingly unfamiliar with the case." Id. (quoting Moeller, 220 F.R.D. at 611) (internal quotation marks omitted).

While Navarro's deposition testimony shows some lack of familiarity with the case, it does not demonstrate that he is so

United States District Court
For the Northern District of California

"startlingly unfamiliar" with it as to render him an inadequate class representative. The deposition transcript shows that much of Navarro's unfamiliarity was the result of confusion and his lower level of education and sophistication than the other proposed class representatives. See, e.g., Navarro Depo. Tr. 112:10-113:4 (Navarro's testimony that he "did not go to school," that he did not "understand many of the words" that were being used at the deposition and that, "at times, [he] didn't" understand the papers that he was being shown during the deposition). Navarro clearly expressed knowledge of the gravamen of the claim and of his duties as class representative, including that he was "representing others," "that it is important for all members of the class to benefit equally from this case" and that all class members should be treated fairly. Id. at 74:1-74:22.

Accordingly, the Court finds Plaintiffs have met their burden on this prong.

VI. Predominance

"The predominance inquiry of Rule 23(b)(3) asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation. The focus is on the relationship between the common and individual issues." In re Wells Fargo Home Mortgage Overtime Pay Litig., 571 F.3d 953, 957 (9th Cir. 2009) (internal quotation marks and citations omitted). "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" Hanlon, 150 F.3d at 1022 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,

Federal Practice & Procedure § 1777 (2d ed. 1986)). A court must make "some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate . . . ." In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 20 (1st Cir. 2008) (citation and internal quotation marks omitted).

Plaintiffs argue that common questions of law and fact will predominate, because the central issues in the case revolve around Experian's actions following the Pintos decisions and what it knew about Finex, not about the actions of individual class members. In addition to the arguments already addressed when discussing commonality, Experian makes one additional argument against a finding of predominance, that some class members' claims may be barred by the statute of limitations.

Claims made under the FCRA must be brought, "not later than the earlier of--(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p. Experian argues that the proposed class period starts on January 1, 2008, more than three years before the complaint in this case was originally filed on January 12, 2011, and that some of the class members may have discovered the violation more than two years before that date. Experian points out that federal law permits everyone free, annual access to their own Experian credit report, and that this report would have shown Finex's inquiry. See, e.g., Anderson Reply Decl., Ex. A (Holman's Experian credit report, showing a credit inquiry by Finex). Further, Price stated in his

declaration that Finex employees routinely called debtors and told them that they could see their credit score, in order to ask them to pay their debt to maintain their score. Price Decl. ¶ 19. Thus, a substantial proportion of the class members may have been put on notice by Finex itself of the violation.

Experian is correct that, to assess its liability to those more than 4,000 putative class members whose credit reports were disclosed more than two years before January 12, 2011, would require a determination of whether the class member had accessed their credit report or otherwise learned of Experian's disclosure. For that time period, the Court finds that individual issues will predominate over the common issues. See also Molina v. Roskam Baking Co., 2011 U.S. Dist. LEXIS 136460, at *13-15 (W.D. Mich.) (denying class certification in a FCRA case "because the question of Defendant's liability to a substantial portion of the class turns on the individual question of when certain class members 'discovered' or 'should have discovered' Defendant's alleged misconduct").

Accordingly, the Court limits the class period to encompass only those consumers whose reports Experian furnished to Finex on or after January 12, 2009. Under this more limited class definition, the Court finds that the predominance requirement is satisfied.

VII. Superiority

Plaintiffs argue that the superiority requirement has been met, because the economic value of each individual claim is small, between $100 and $1,000 each, plus punitive damages, and because

United States District Court
For the Northern District of California

many class members will not have any way to know that Experian has produced their information to Finex.

Experian responds that Plaintiffs have not met their burden because they have not proposed a workable trial plan. In support of their argument that this should preclude certification, Experian cites only to opinions in nation-wide class action suits in diversity cases in which the court found the trial plan unworkable because it would have to apply different substantive state law. See In re Paxil Litig., 212 F.R.D. 539, 546-548 (C.D. Cal. 2003) (mass tort case where the court would have to apply state law for claims of plaintiffs from fifty different states and would have to consider a number of individual issues, including causation and reliance); Lee v. ITT Corp., 275 F.R.D. 318, 324 (W.D. Wash. 2011) (holding that, "until Plaintiffs establish what law should apply and provide the court with a manageable trial plan to adequately deal with the variances in state law, the Court cannot find that common issues predominate"). In the case at hand, the claims of all class members are based on the FCRA, not on differing state laws, and they do not involve the same level of individual issues as the cases cited by Experian.

Accordingly, the Court finds that Plaintiffs have satisfied the superiority requirement.

VIII. Appointment of Class Counsel

Rule 23(g)(1) of the Federal Rules of Civil Procedure provides in relevant part:

> Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:
>
> (A) must consider:

United States District Court
For the Northern District of California

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class;

(B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

(D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

(E) may make further orders in connection with the appointment.

Fed. R. Civ. P. 23(g)(1).

Plaintiffs' counsel have offered evidence that they are experienced in class action litigation and appeals. Further, counsel have substantial knowledge of the relevant law, having successfully litigated the Pintos case through the entire appellate process.

Experian argues that Plaintiffs' counsel have failed to act in the best interests of the class thus far in the litigation, because they ignored their fiduciary duties to the class in dismissing Finex. "'[P]re-certification class counsel owe a fiduciary duty not to prejudice the interests that putative class members have in their class action litigation' because 'class counsel acquires certain limited abilities to prejudice the substantive legal interests of putative class members even prior to class certification.'" Harris v. Vector Marketing Corp., 2010

WL 3743532, at *4 (N.D. Cal.) (quoting Schick v. Berg, 2004 U.S. Dist. LEXIS 6842, at *18 (S.D.N.Y.). See also Staton v. Boeing Co., 327 F.3d 938, 960 (9th Cir. 2003) (indicating that class attorneys purporting to represent a putative class owe the entire class a fiduciary duty once the class complaint is filed). As explained above, Plaintiffs' counsel did not violate their fiduciary obligations to the class by dismissing Finex in order to secure its cooperation in prosecuting the claim against Experian, a strategic decision made to benefit the class.

Experian also contends that Plaintiffs' counsel committed a tort against the putative class members by invading their privacy in obtaining a list of class members, including their names, contact information and Experian Recovery Score from Finex, without first obtaining permission from the class members, and that Plaintiffs' counsel have a conflict of interest precluding them from properly representing the class.

Experian argues that, under Pioneer Electronics, Inc. v. Superior Court, 40 Cal. 4th 360 (2007), Plaintiffs' counsel were required to approach the Court for permission to obtain the class list and that class members should have been notified prior to disclosure of the list. However, Pioneer Electronics guides a state court's analysis of a motion to compel when a defendant, who is the custodian of confidential customer information, asserts a right to privacy on behalf of the putative class members, when asked to disclose that information prior to class certification, and objects to disclosure. 40 Cal. 4th at 364-69. It does not state that Plaintiffs' counsel, as the recipient of the disclosure, must affirmatively approach the Court for permission

to receive records, where, as here, the records' custodian has not objected to disclosure and has provided the list voluntarily. Experian provides no case law that supports the proposition that a recipient of confidential information can be held liable for the supplier's improper disclosure. Further, this is a federal case, with jurisdiction in this Court based on a federal question, and discovery and privilege matters are governed by federal laws and rules. Numerous courts in the Northern District of California have allowed pre-certification discovery of putative class members' confidential information subject to a protective order, without requiring prior notice to the putative class members. See, e.g., Currie-White v. Blockbuster, Inc., 2010 U.S. Dist. LEXIS 47071, at *4 (N.D. Cal.) (requiring disclosure of putative class members' contact information subject to a protective order); Babbit v. Albertson's Inc., 1992 U.S. Dist. LEXIS 19091, at *6 (N.D. Cal.) (defendant employer ordered to disclose names, addresses, telephone numbers and social security numbers of current and past employees, subject to a protective order); see also Putnam v. Eli Lilly & Co., 508 F. Supp. 2d 812, 814 (C.D. Cal. 2007)(recognizing that, in such a situation, "a protective order can strike the appropriate balance between the need for the information and the privacy concerns"). Here, the list was produced pursuant to a protective order that maintains the confidentiality of the list and restricts its use to the instant litigation. See Docket No. 29.

CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiffs' motion for class certification (Docket No. 68). The Court

certifies a class, defined as “all consumers whose consumer reports were furnished by Experian to Finex in connection with Finex’s efforts to collect on a towing deficiency claim from January 12, 2009 to the present.” The Court appoints Plaintiffs Roane Holman, Narcisco Navarro Hernandez and Miguel A. Alvarez to serve as class representatives, and appoints Plaintiffs’ counsel to serve as class counsel.

IT IS SO ORDERED.

Dated: 4/27/2012

CLAUDIA WILKEN
United States District Judge

United States District Court
For the Northern District of California