1  ANDREW J. OGILVIE            57932
2  CAROL M. BREWER               214035
   MARK F. ANDERSON              44787
3  ANDERSON, OGILVIE & BREWER, LLP
   600 California Street, 18th Floor
4  San Francisco, California 94108-2711
        Telephone:    (415) 651-1950
5       andy@aoblawyers.com
        carol@aoblawyers.com
6
7  Attorneys for Plaintiffs, Roane Holman, Narcisco Navarro Hernandez,
   Miguel A. Alvarez and all others similarly situated
8
9                    UNITED STATES DISTRICT COURT
10        NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION
11
12  ROANE HOLMAN, NARCISCO              Case No. 4:11-cv-00180-CW (DMR)
13  NAVARRO HERNANDEZ, MIGUEL A.
    ALVAREZ, and all others similarly situated,
14                                      **UPDATED JOINT REPORT ON**
              Plaintiffs,               **DISCOVERY DISPUTES 2 & 3**
15
              v.
16
    EXPERIAN INFORMATION SOLUTIONS,
17  INC.,
18            Defendant.
19
20
21
22
23
24
25
26
27
28
                                        UPDATED JOINT REPORT ON
                                        DISCOVERY DISPUTES 2 & 3
                                        No. CV-11-00180 CW (DMR)

1

**<u>INTRODUCTION</u>**

2      <u>Plaintiffs' Statement:</u>  These are multi-faceted discovery disputes that concern Experian's

3  claim of attorney-client privilege and work product doctrine and relevance objections for

4  communications that relate to its response to the *Pintos* decisions[1], the reasons why it responded

5  as it did, and the timing of its response to *Pintos*. The background is set out in the Court's order

6  certifying the class and is not repeated here.

7      Most of the dispute stems from Experian's intention to argue that, if it violated the law by

8  failing to comply with the *Pintos* decision immediately, then its violation was *negligent*, but not

9  willful, so plaintiffs cannot recover anything. To respond to this argument, plaintiffs want to

10  show that Experian understood and intentionally ignored its obligation to comply *immediately*

11  with *Pintos* in 2007.  Instead of taking action in 2007 to notify existing subscribers about *Pintos*

12  and to prevent new subscribers from using its reports for impermissible collection purposes,

13  Experian waited until 2010 to make any procedural changes.  If Experian argues that it was at

14  most *negligent* in thinking it could wait until the *Pintos* decision was final, plaintiffs must be

15  allowed discovery to refute that argument.  Plaintiffs should be allowed to discover what

16  Experian's lawyers researched and concluded about Experian's legal obligation to comply with

17  *Pintos* when issued in 2007. Either Experian researched the law and knew it had to comply with

18  *Pintos* immediately, in which case it *intentionally* violated the law, or Experian failed to do

       proper legal research, in which case it *recklessly* violated the law.

19      Experian has tried to confuse the chronology of compliance steps. After the 2007 *Pintos*

20  opinion, Experian circulated a "Talk Track" instructing its sales force to say that Experian would

21  notify subscribers about compliance policies "after the outcome of the court's final review" and

22  that subscribers should "consult their company's legal counsel." After the *Pintos* decisions in

23  2009 and 2010, it issued similar internal Talk Tracks.  Class Certification Order, Dkt138, pages

24  5-7. From 2007 through 2010, it did not screen prospective new subscribers more carefully in

25  light of *Pintos*, it did not institute procedures to *verify* prospective subscribers' uses of credit

26  reports before approving them as new subscribers, and it did not train its employees to look for

---

[1]  *Pintos v. Pac. Creditors Ass'n*, 504 F.3d 792 (9th Cir. 2007) *opinion withdrawn and*
27  *superseded,* 565 F.3d 1106 (9th Cir. 2009) *opinion amended and superseded on denial of reh'g,*
    605 F.3d 665 (9th Cir. 2010).

28

1   red-flags warning of impermissible usage. As a result, it approved Finex as a subscriber in 2008.

2       Plaintiffs have requested documents relating to the Talk Tracks and the research and

3   discussions that led to the Talk Tracks and the related decisions. Ogilvie dec. ¶ 1 & Ex 1.

4   Plaintiffs' interrogatories ask whether Experian believed at the time of each Talk Track that the

5   law allowed it to wait for the final outcome of the *Pintos* case before it was required to

6   implement procedures to comply with *Pintos*, and if so, the factual and legal basis for that belief

7   and the identity of the witnesses and documents. Ogilvie dec. ¶ 2 & Exh 2. Another asks

8   Experian to explain the factual and legal basis for its contention that its violation of the FCRA

9   was not "willful" and to identify all witnesses and documents. *Id.* Plaintiffs noticed a 30(b)(6)

10  deposition of Experian and designated topics that cover these areas. Ogilvie dec. ¶ 3 & Exh 3.

11  And plaintiffs have asked to depose Ms Sterling, the in-house lawyer who decided how it would

    respond to *Pintos*. Ogilvie dec. ¶ 4 & Exh 4.

12      Experian has refused to produce these documents, to answer these interrogatories, or to

13  permit Ms Sterling to answer questions concerning her legal research or legal knowledge

14  concerning Experian's obligations to comply with *Pintos* as soon as the decision was rendered.

15  Experian says it will produce a 30(b)(6) witness, but it wants to severely limit the scope of the

16  examination. Experian claims it is permitted to do this because of the attorney-client privilege

17  the attorney work product rule, and its objections on grounds of relevance.

18      After the lengthy "meet and confer" session on May 7, plaintiffs offered to give up on the

19  attorney-client privilege issue if Experian agreed (i) not to rely on advice of counsel as a defense

20  (a defense which it affirmatively withdrew months ago), (ii) not to call lawyers as witnesses,

21  other than the expert it has already designated, and (iii) "not…to argue that if it failed to comply

22  with the law, that was the result of negligent misunderstanding of the law." In response, Experian

23  announced that it intends to call as a rebuttal expert an attorney who will testify that its action,

24  including its delayed response to *Pintos*, may have been negligent, but certainly not willful. *Id.*

25  While plaintiffs have not yet received that rebuttal expert's report, they expect the expert will

26  opine that Experian reasonably could have thought it did not have to comply with *Pintos* until

27  after the final outcome of the court's review.

28      Plaintiffs think Experian should not be permitted to call this so-called expert to offer such

testimony, but there is no procedure for getting a decision on that now. Motions in limine are a long way off. Plaintiffs must prepare to meet this testimony, so they need this discovery. Below plaintiffs explain why, under the circumstances of this case, the discovery they seek is not protected by the attorney-client privilege or the work product rule, and it is relevant.

There is one additional issue – Experian's unilateral decision to redact documents for "non-responsive information" – that is discussed at the end.  Plaintiffs contend the Rules require Experian to produce its responsive documents in the form in which they are kept and not to redact whatever it deems "non-responsive."

Experian's Statement:  In Plaintiffs' view, Experian cannot deny that it willfully violated the FCRA without also giving Plaintiffs unfettered access to its legal advice about the FCRA. But that simply is not the law, and Plaintiffs offer conspicuously little support for their theory.

The central issue in this case is whether Experian willfully failed to maintain reasonable procedures to comply with the FCRA's permissible purpose requirements.  *See* 15 U.S.C. § 1681b.  Given the current state of the law (under *Pintos*), there is no dispute that Finex lacked a permissible purpose when it obtained consumer reports from Experian to assist in its efforts to collect on certain types of towing debts.  But the FCRA does not impose strict liability on a consumer reporting agency such as Experian merely because a subscriber such as Finex obtained a consumer report for an impermissible purpose.  Rather, Experian can be liable only where it failed to maintain reasonable procedures to limit the furnishing of consumer reports to permissible purposes.

Here, the focus of this case will be on Experian's procedures during a time period when the law was unclear and in flux, and during which the Ninth Circuit issued a series of decisions that contradicted each other.  The starting point of this analysis is *Hasbun v. County of Los Angeles*, 323 F.3d 801 (9th Cir. 2003), which held that debt collection (without regard to the debt's circumstances) was a permissible purpose for obtaining a consumer report.  The law was so clear under *Hasbun* that in *Pintos*, Judge Wilken (the district judge in that case as well) granted summary judgment to Experian, holding that the collection of Ms. Pintos's towing debt constituted a permissible purpose for obtaining a consumer report under the FCRA.  Ms. Pintos appealed, and after a few years, the Ninth Circuit issued its first opinion in the case.  *See* 504

F.3d 792 (9th Cir. 2007). But that opinion did not say that Judge Wilken had misinterpreted the FCRA or *Hasbun*. Rather, it said that an amendment to the FCRA had changed the law such that the *Hasbun* decision and Judge Wilken's reasonable opinion were no longer applicable. *See id.* at 799-800.

It was clear to everyone that the Ninth Circuit's decision was wrong, as even the plaintiff conceded after Experian moved for reconsideration. The Ninth Circuit then issued a second opinion, reversing the court's first opinion. The new opinion adopted the position that Judge Wilken had interpreted *Hasbun* and the FCRA incorrectly. The new opinion also permitted some conduct held impermissible under the old opinion, i.e., the collection of towing debts reduced to judgment now constitute a permissible purpose, when under the first opinion they did not. Experian petitioned for rehearing of this second opinion, and seven judges, including Chief Judge Kozinski, said the panel's revised majority opinion "flunked Statutory Interpretation 101." *Pintos*, 605 F.3d at 672 (Kozinski, C.J., dissenting from the denial of rehearing en banc).

It was against this backdrop that Experian turned to its lawyers to assess how to respond. And all of this has to be measured against *Safeco*, which states that when a statute on its face is unclear, then there is no willful violation unless the defendant's position could not find support in the courts. Here, seven judges of the Ninth Circuit said Experian's position was correct.

Plaintiffs have it all wrong when they say that Experian cannot be liable if there is no willful violation. Experian can be liable for negligently failing to comply with the FCRA. But negligent liability under the FCRA requires actual damages. Here, Plaintiffs want to try to show a willful FCRA violation so that they can seek recovery for consumers who suffered no harm, and no actual damages.

Although Plaintiffs misrepresent the record about what Experian did in response to *Pintos*, such issues are irrelevant to whether the materials at issue are discoverable. For regardless of what Experian did, willful liability under the FCRA is an exclusively *objective* inquiry, as the Supreme Court has made clear. Indeed, even subjective bad faith by Experian is irrelevant to Plaintiffs' claims. Instead, whether Experian willfully violated the FCRA will turn on whether Experian's conduct was objectively unreasonable, and if so, whether Experian's

1    conduct was so unreasonable as to be reckless.  What Experian subjectively thought about the

2    FCRA has no bearing on this analysis, particularly when Experian is not asserting an advice-of-

3    counsel defense.

4        Thus, Plaintiffs' belief that they are entitled to *all* of Experian's privileged documents,

5    and to depose Experian's in-house attorney Ann Sterling about privileged matters, is utterly

6    lacking in merit—as is apparent from their tortured arguments for how the privilege has been

7    waived.  Plaintiffs claim that privileged matters have been placed in controversy, but all

8    Experian has done is deny that it willfully violated the FCRA.  This cannot constitute a waiver of

9    all claims of privilege.  Perhaps realizing as much, Plaintiffs argue that Experian's legal

10   communications about how to comply with Pintos in fact are all *business* decisions.  But legal

11   advice to a corporation frequently has direct business implications.  Whether such

12   communications are privileged turns on their primary purpose, which here was indisputably

13   legal.  Nor can Plaintiffs get around Experian's privilege claims by complaining about

14   Experian's privilege log.  Experian's log is entirely proper, and is certainly not so defective as to

     suggest bad faith, such that Experian should be barred from asserting the privilege at all.

15       Nor do Plaintiffs offer any colorable argument for why some of the documents they seek

16   cannot be protected as work product.  Experian's response to *Pintos* was plainly motivated by the

17   prospect of future litigation, such as this very case.  There is no basis for Plaintiffs to suggest that

18   the work-product rule is somehow off the table entirely.

19       Similarly, there is little merit to Plaintiffs' argument that Experian cannot redact

20   confidential, non-responsive information from the responsive documents that it has produced.

21   When arguing otherwise, Plaintiffs ignore the ample authority from this Circuit and other circuits

22   recognizing redaction as appropriate.  Moreover, Plaintiffs have not shown how Experian's

23   redactions have caused them any prejudice.

24       In short, Plaintiffs have not shown why the information they seek is discoverable, and

25   proceed from a fundamental misconception of willful FCRA liability as a subjective, not

26   objective, question.  Whether Experian willfully violated the FCRA will depend on whether

27   Experian's conduct fell within the range of reasonable responses to *Pintos*.  And Experian's

     rebuttal expert will testify only about that range of responses, and *not* about whether Experian's

28

UPDATED JOINT REPORT ON
DISCOVERY DISPUTES 2 & 3
No. CV-11-00180 CW (DMR)

1   "action[s] may have been negligent but not willful" (as Plaintiffs suggest).  *See supra* p. [pg].

2   That range of responses—not Experian's lawyers' subjective understanding of *Pintos*—is what

3   will determine whether any alleged FCRA violation here was willful.

4       **1.      Attorney-Client Privilege**

5       Plaintiff's Statement:  The attorney-client privilege is not absolute. The privilege is

6   rooted in notions of fundamental fairness. *Tennenbaum v. Deloitte & Touche,* 77 F.3d 337, 340

7   (9th Cir. 1996). It can be waived "either implicitly, by placing privileged matters in controversy,

8   or explicitly, by turning over privileged documents."  *Gomez v. Vernon*, 255 F.3d 1118, 1131

9   (9th Cir.) *cert. denied,* 534 U.S. 1066 (2001); see also *Chevron Corp. v. Pennzoil Co.,* 974 F.2d

10   1156, 1162 (9th Cir.1992) and *Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D.

11   568, 575 (N.D. Cal. 2008). When it is waived, the waiver extends to "all communications on the

    same subject matter."  *Stanford v. Roche,* F.R.D. 618, 625 (N.D.Cal. 2006).

12       First, plaintiffs contend that Experian has waived the privilege implicitly by placing

13   privileged matters in controversy.  It would be fundamentally unfair to deny them discovery to

14   rebut Experian's proposed argument and testimony. If Experian wants to argue that its violation

15   was merely negligent because it reasonably thought it could wait until the decision became final,

16   plaintiffs should be allowed the discovery to show that it knew its course of action would violate

17   the law.  This discovery would include the correspondence and research by Experian's in-house

18   and outside counsel concerning when a party must comply with a decision of the Ninth Circuit

19   and what it ought to do to change its procedures to comply with *Pintos*. If Experian conducted

20   proper legal research, it would have concluded that it had to comply with *Pintos* immediately.

21   The cases cited by the Court in its class certification order say that parties must obey "an order

22   issued by a court with jurisdiction over the subject matter and person…until it is reversed by

23   orderly and proper proceedings," *United States v. United Mine Workers*, 330 U.S. 258, 293

24   (1947), and that the "pendency of a petition for rehearing does not, in itself, destroy the finality

25   of an appellate court's judgment." *Wedbush, Noble, Cooke, Inc. v. SEC*, 714 F.2d 923, 924 (9th

26   Cir. 1983). Dkt 138, page 23.  By contending that its failure to alter its procedures in 2007 was,

    at most, a negligent violation, Experian has tendered the issue and thus waived the privilege.

27       Second, plaintiffs contend that attorney-client privilege does not apply because

28

1   Experian's decisions regarding its internal procedures relating to *Pintos* and the timing of those

2   decisions are *business* decisions, not legal advice.  Experian says Ms Sterling, an in-house

3   lawyer, drafted the Talk Tracks and decided how Experian would respond to *Pintos*.  A witness

4   from Experian's Regulatory Compliance Department explained:

5          [T]he legal department is the brains, and we're the brawn. That's  kind of the way
           I like to think about it, you know. We're the doers. They are the thinkers.  So they
6          establish policies, and we are required to work with the  business units to
           implement those policies by setting procedures. Deposition of Kathy Centanni, p
7          13, lines 9-14.

8   Experian's changes in procedures and the timing thereof were not legal advice in connection

9   with the on-going *Pintos* case. That case concerned events in 2003.  Ms. Sterling's decisions

10  from 2007 to 2010 regarding procedures for screening new subscribers and the decision to delay

11  changing compliance procedures until 2010 were *business* decisions, not legal advice.

12         A corporation cannot shield its *business* decisions from discovery by delegating the

13  decision-making authority to a lawyer who acts as a business executive.  In *In re Vioxx Products*

14  *Liability Litigation*, 501 F.Supp.2d 789, 804 (E.D. La 2007) the Court explained that if in-house

15  lawyers were given control over public dissemination of communications, "the role of legal

16  counsel would change from *legal advisor* to corporate *decision-maker*."  Quoting from *U.S. v.*

17  *Chevron Corp.*, 1996 WL 444597 (N.D. Cal.1996) the court further explained that "[w]hen a

18  document is prepared for simultaneous review by non-legal as well as legal personnel, it is not

19  considered to have been prepared primarily to seek legal advice and the attorney-client privilege

20  does not apply." Here the Talk Tracks were prepared by Ms Sterling for circulation to non-

21  lawyers as communications as to how Experian would respond to *Pintos*.  This opens Ms

22  Sterling up to discovery and makes all of her drafts and communications relating to these

23  decisions discoverable.

24         Third*,* plaintiffs contend that Experian waived its attorney-client privilege by failing to

25  provide a proper privilege log within a reasonable period of time. The chronology is undisputed.

26  Plaintiffs served their document demands in August 2011. When Experian responded in

27  September it failed to produce a privilege log. Plaintiffs never agreed to permit Experian to delay

28  in producing its log; it did so unilaterally. In February, 2012, it produced a 16-page log. In March

it produced a longer privilege log, but still incomplete. On May 3, in response to the Court's order, it filed a 143-page privilege log which it verified as complete. Dkt 139. That was wrong. Five days later it filed an additional 42-page log which it called a "Redaction Log." Many of the documents have been redacted for "privilege." Dkt 143.[2]

The court makes a case-by-case determination of the waiver issue using these factors:

> [T]he degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard. These factors should be applied in the context of a holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process. They should not be applied as a mechanistic determination of whether the information is provided in a particular format."

*Burlington N. & Santa Fe v. U.S. Dist. Court,* 408 F.3d 1142, 1149 (9th Cir. 2005). The factors weigh against Experian's claim of privilege.

The *first factor* is whether Experian's response provided sufficient information to evaluate the privilege claims. Initially it responded with boilerplate objections that did not provide any information to evaluate the privilege claims. Its privilege logs in February were hopelessly incomplete and lacked sufficient detail to evaluate the claims. Its May 3 log was also incomplete. As *Vioxx* explains, the five elements that are common to all definitions of the attorney-client privilege are (1) an attorney, (2) a client, (3) a communication, (4) confidentiality anticipated and preserved, and (5) legal advice or assistance being the purpose of the communication. *Vioxx* at 795. Here, as in *Vioxx*, the requirement that legal advice or assistance is being sought or given is problematic. "Courts require a clear showing that the attorney was acting in his professional legal capacity before cloaking documents in the privilege's protection." *Vioxx, supra* at 797, citing Paul R. Rice, 1 Attorney-Client Privilege in the United States, § 7:2, pp 24-25 (Thomson West 2d ed. 1999). The test for the application of the attorney-client

---

[2] Experian redacted many documents because they supposedly contain non-responsive confidential information. Plaintiffs dispute Experian's claim that it is allowed to redact documents for that reason. We have a protective order so redaction is unnecessary. See below.

UPDATED JOINT REPORT ON
DISCOVERY DISPUTES 2 & 3
No. CV-11-00180 CW (DMR)

privilege to communications with counsel in which a mixture of services is sought is whether counsel "was participating in the communications primarily for the purpose of rendering legal advice or assistance." *Id* at 798. The burden of proving this is exclusively Experian's. *Id* at 799.

Experian's logs list many documents that were broadcast to numerous non-attorneys. There is no information from which the Court can infer that the lawyer's purpose was to give legal advice, not business guidance, other than the boilerplate assertions that Experian attaches to all the entries on the logs.

The *second factor* -- timeliness of Experian's privilege log -- also weighs against Experian's claim. Experian says plaintiffs' document requests were "incredibly overbroad," but that is untrue. Plaintiffs requested documents that refer or relate to the *Pintos* case and limited the search to Experian departments that were responsible for complying with the permissible purpose requirements of the FCRA. It now appears that Experian's Law Department and Compliance Department were the responsible departments. Experian did not have to search the whole company. Indeed, all the responsive documents that Experian has produced have expressly referred to "*Pintos*," the "Ninth Circuit decision" or something similar. There was no real difficulty in identifying the responsive documents.

The *third factor* is the magnitude of the document production. To date Experian has produced fewer than 4,000 pages of documents. That is not a lot of documents and certainly cannot justify a delay of almost 9 months in producing its privilege log.

The *fourth factor* in the Ninth Circuit's list is whether there are particular circumstances that make responding to discovery particularly hard or easy. In this case Experian's response should have been relatively easy. *Pintos* was decided on September 21, 2007 and it was known immediately by Experian's Law Department. Relatively few people would have been involved in charting Experian's response to the Ninth Circuit's decision with respect to on-going procedures for new and existing subscribers. The scope of the inquiry was narrow, not broad.

Experian's Statement: Plaintiffs offer three theories for how Experian has somehow waived *all* claims of attorney-client privilege. They claim that (1) Experian has placed privileged matters in controversy by denying willful liability under the FCRA, (2) the communications at issue are in fact not legal advice, and (3) Experian's privilege log was

1   improper.  Each of these theories of waiver is unavailing.

2       *First*, Plaintiffs offer no authority whatsoever to support their remarkable belief that

3   Experian, "[b]y contending that its failure to alter its procedures in 2007 was, at most, a

4   negligent violation," has "waived the privilege implicitly by placing privileged matters in

5   controversy." *See supra* p. [pg].  This is unsurprising. Plaintiffs are arguing, essentially, that if a

6   party denies that it willfully violated a statute, then that party cannot claim privilege in its legal

7   advice about that statute.  But Plaintiffs plainly cannot force an implicit waiver of the privilege

8   merely by lobbing a charge of willful liability at Experian, and they cite not a single case

9   indicating otherwise.

10      This is particularly so when willful liability under the FCRA is an entirely *objective*

11  inquiry, for which even "subjective bad faith" by Experian is irrelevant.  *Safeco Ins. Co. of Am.*

12  *v. Burr*, 551 U.S. 47, 70 n.20 (2007); see also *Levine v. World Financial Network National Bank*,

13  554 F.3d 1314, 1319 (11th Cir. 2009)("*Safeco* instructs us not to consider the subjective intent of

14  [the defendant].").  Thus, even if Plaintiffs could "show that [Experian] knew its course of action

15  would violate the law," as they speculate above, *see supra* p. [pg], that would carry no weight

16  here.  And as a result, Experian's mere denial of willful FCRA liability does not somehow

17  eliminate Experian's ability to protect from discovery its legal advice about the FCRA.

18      *Second*, Plaintiffs cannot defeat Experian's privilege claims by framing the

19  communications at issue as "business decisions, not legal advice."  *See supra* p. [pg].  Plaintiffs

20  are, of course, correct that only communications seeking or giving legal advice are privileged.

21  But the fact that Experian in-house attorney Ann Sterling's discussions with Experian employees

22  about how to comply with *Pintos* directly impacted Experian's "procedures for screening new

23  subscribers" and "compliance procedure" does not make those communications unprivileged, as

24  Plaintiffs seem to believe.  *See supra* p. [pg].  Although Ms. Sterling's advice surely affected

25  Experian's business policies, the same could be said for virtually *all* legal advice provided to a

26  corporation.  When communications have both a business and legal purpose, their privileged

27  status turns on whether the communications "were made *primarily* for the purpose of generating

28  legal advice."  *United States v. Chevron Corp.*, 1996 WL 444597, at *1 (N.D. Cal. May 30,

    1996) (emphasis added).  It is self-evident that Ms. Sterling's directives on how to comply with

1    *Pintos* and the FCRA constitute legal advice that meets this standard.

2        All Plaintiffs offer to suggest otherwise—all while ignoring the relevant standard—are

3    two facts.  First, they note that Experian employee Kathy Centanni testified that Experian's legal

4    department "establish[es] policies."  *See supra* p. [pg].  But this vanilla remark says nothing

5    about the purpose of those "policies," and certainly does not suggest that Ms. Sterling's legal

6    advice and directives about "policies" for complying with the FCRA are not privileged.  The

7    various decisions from the Ninth Circuit in *Pintos* presented issues that clearly required legal

8    advice and guidance.  For example, the first *Pintos* decision in 2007 relied on a new statute that

9    neither side had briefed and that both sides agreed did not apply to the case.

10        Second, Plaintiffs note that "the Talk Tracks were prepared by Ms. Sterling for

11   circulation to non-lawyers."  *See supra* p. [pg].  Putting aside that "circulation to non-lawyers"

12   does not automatically render a document unprivileged, Experian has never even *claimed* that the

13   Talk Tracks are privileged.  The fact that Ms. Sterling engaged in *some* unprivileged

14   communications does not make *all* of her communications unprivileged.  Similarly, although

15   "selectively disclosing *privileged communications* to an adversary" can sometimes waive the

16   privilege more broadly, *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996)

17   (emphasis added), disclosure of unprivileged documents like the Talk Tracks cannot cause the

18   broader subject matter waiver that Plaintiffs seem to suggest.

19        Moreover, even if the Talk Tracks *were* privileged, their disclosure would not cause a

20   broader waiver.  Subject matter waiver is governed by Fed. R. Evid. 502, which was enacted in

21   2008—two years after *Stanford v. Roche,* F.R.D. 618 (N.D. Cal. 2006), which Plaintiffs cite—

22   and "curtails prior waiver doctrine significantly," in part by "limit[ing] subject matter waiver."  8

23   Charles Alan Wright, et al., Federal Practice and Procedure § 2016.2.  Under Rule 502(a),

24   subject matter waiver occurs only when the disclosed and undisclosed materials "ought in

25   fairness to be considered together."  Rule 502(a)(3).  Courts have stressed the "narrow scope" of

26   this provision.  *Seyler v. T-Systems N. Am., Inc.*, 771 F. Supp. 2d 284, 288 (S.D.N.Y. 2011).  It

27   allows a waiver only in "those *unusual situations* in which fairness requires a further disclosure

28   of related, protected information, in order to prevent a selective and misleading presentation of

     evidence to the disadvantage of the adversary."  Fed. R. Evid. 502 Advisory Committee Notes

(emphasis added); *accord Coleman v. Sterling*, 2011 WL 2005227, at *2 (S.D. Cal. May 23, 2011).  Here, when Experian's subjective beliefs are irrelevant to Plaintiffs' FCRA claims, see *Safeco*, 551 U.S. at 70 n.20, Plaintiffs are in no way "disadvantage[d]" by receiving the Talk-Tracks memoranda but not Experian's underlying legal advice.  *See, e.g.*, *Cooey v. Strickland*, 269 F.R.D. 643, 653-54 (S.D. Ohio 2010) (holding, under Rule 502(a), that disclosure of "company policy" did not waive privilege for the legal advice concerning that policy).

To be clear, Experian does not object to a deposition of Ms. Sterling to confirm that she wrote the Talk Tracks and that they constituted the policy of the company.  The reason why this issue has been teed up now is that Plaintiffs' counsel has stated that their purpose in seeking Ms. Sterling's deposition is to inquire into her legal rationale for drafting the Talk Tracks the way she did, which clearly would require her to divulge privileged information.  The deposition has not gone forward because both sides agree that it would be unproductive to proceed with a deposition where Plaintiffs seek privileged information that would trigger instructions not to answer.  These issues need to be resolved before the deposition occurs.

*Third*, and finally, Experian's privilege log does not constitute a waiver of privilege under the reasonableness standard stated in *Burlington N. & Santa Fe v. U.S. Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005).  The federal rules require a privilege log only when "a party withholds information *otherwise discoverable* by claiming that the information is privileged." Fed. R. Civ. P. 26(b)(5) (emphasis added).  Thus, "if a broad discovery request includes an allegedly privileged document, and if there is an objection to the scope of the request," then the responding "party need not log the document until the court rules on its objections." *United States v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003); *see also, e.g., Tumbling v. Merced Irrigation Dist.*, 262 F.R.D. 509, 518 (E.D. Cal. 2009).

Plaintiffs' discovery requests were incredibly overbroad.  Request No. 12, for example, sought "[a]ll documents in the files and records of Experian's Compliance Department that refer or relate to the [*Pintos*] decision . . ., including but not limited to all emails, letters, reports, analyses and other documents that mention *Pintos*."  Request Nos. 13 and 14 sought the same materials from "every other department of Experian that had any responsibility for complying with the permissible purpose limitations of the Fair Credit Reporting Act," and from "Experian's

UPDATED JOINT REPORT ON
DISCOVERY DISPUTES 2 & 3
No. CV-11-00180 CW (DMR)

department that is responsible for its Collection Advantage products."  These and Plaintiffs'
other requests covered an astonishingly large amount of ground.  Any documents that somehow
"relate to" *any* of the FCRA's permissible purpose requirements also "relate to" *Pintos*, as do all
documents that "relate to" 15 U.S.C. §§ 1681a(m) and 1681b(c) (which concern prescreened
offers of credit), or to anything else discussed in *Pintos*.  Yet only a small slice (if that) of all this
material is even potentially relevant to this case.

Experian timely voiced these concerns to Plaintiffs in September 2011.  Yet for three
months, Plaintiffs did not respond to Experian's objections at all, much less cure their requests'
overbreadth.  Experian reiterated its concerns to Plaintiffs on January 19, 2012, and offered to
work with Plaintiffs to fix the objectionable requests.  Finally, on January 25, 2012, Experian
unilaterally narrowed the defective requests.  Even once narrowed by Experian, Plaintiffs'
requests were still staggering in their breadth, as virtually every Experian department deals with
the permissible purpose requirements discussed in *Pintos*.

Nonetheless, on February 13, 2012—just nineteen days after narrowing Plaintiffs'
requests, and after four individuals expeditiously reviewed over 20,000 pages of documents for
both responsiveness and privilege—Experian produced a detailed privilege log to Plaintiffs (this
detailed privilege log was an updated version of the privilege log sent on February 6, 2012 prior
to the deposition of an Experian employee).  By February 16, 2012, Experian had reviewed
40,000 pages of documents in response to Plaintiffs' document requests.  On March 12, 2012,
Experian sent an updated privilege log that was now 78 pages and a redaction log with 79
entries.  In an email to Plaintiffs on March 17, 2012, Experian informed Plaintiffs that it had now
reviewed more than 100,000 pages of documents.  On March 29, 2012, Experian sent a privilege
log with 113 pages and a redaction log with 235 entries.  Finally, in early May, in response to
this Court's order, Experian provided a final privilege and redaction log to Plaintiffs and lodged
these documents with the Court.  In total, Experian's team of four lawyers reviewed over
115,000 pages of documents in response to the narrowed discovery requests in a little over two
months.   Under these circumstances, where responding to Plaintiffs' discovery requests has been
"unusually hard," *Burlington*, 408 F.3d at 1149, the timing and substance of Experian's privilege
log are plainly not grounds for waiver.

1    Indeed, waiver "is a harsh sanction reserved generally for unjustified, inexcusable, or bad

2    faith conduct."  *USF Ins. Co. v. Smith's Food & Drug Ctr., Inc.*, 2011 WL 2457655, at *3 (D.

3    Nev. June 16, 2011).  Courts generally decline to find privilege waived when the responding

4    party has worked in good faith to produce a log, even when the court has already had to

5    intervene to order the log's production.  *See, e.g.*, *Carl Zeiss Vision Int'l Gmbh v. Signet

6    Armorlite Inc.*, 2009 WL 4642388, at *3-4 (S.D. Cal. Dec. 1, 2009) (declining to find waiver,

7    despite defendant's failure to produce privilege log until nine months after court-ordered

8    deadline, because of defendant's "good faith effort at compliance"); *Humphreys v. Regents of the

9    Univ. of Cal.*, 2006 WL 1409336, at *1 (N.D. Cal. May 23, 2006) (declining to find waiver due

10   to defendant's "good faith effort at compliance with this Court's order").  As noted, Experian

11   worked diligently and in good faith towards producing a privilege log, which it did at significant

12   cost only nineteen days after it independently narrowed Plaintiffs' objectionable discovery

     requests and continuously updated throughout its review of over 115,000 pages of documents.

13   Moreover, Experian has always been clear with Plaintiffs that it asserted privilege over

14   two general categories of documents:  (1) communications with outside counsel about Experian's

15   response to Pintos, and (2) Experian's lawyers' internal discussions about the company's

16   response to Pintos.  With no "surprise[s]" in Experian's privilege log, and given Experian's good

17   faith efforts to produce the log, a finding of waiver is entirely inappropriate here.  *E.E.O.C. v.

18   Safeway Store, Inc.*, 2002 WL 31947153, at *3 (N.D. Cal. Sept. 16, 2002).

19   Indeed, Plaintiffs tellingly fail to cite a *single* case in which a court found a blanket

20   waiver of the privilege in circumstances like these.  Instead, Plaintiffs offer a mechanical

21   application of the four factors discussed in *Burlington*, even though the Ninth Circuit instructed

22   against such a "mechanistic determination," and instead endorsed "a holistic reasonableness

23   analysis."  408 F.3d at 1149.  But even Plaintiffs' approach does not support their waiver claim.

24   Plaintiffs baldly claim that Experian's log provides "no information from which the Court

25   can infer that the lawyer's purpose was to give legal advice," but offer no support for this claim.

26   In fact, Experian's log gives individual descriptions of each document from which it is clear why

27   the document is privileged.  Offering additional details about these documents would only serve

28   to disclose their privileged contents.  To the extent the Court believes Experian's log could be

more detailed, the log is certainly not the sort of "unjustified, inexcusable, or bad faith conduct" that requires a blanket waiver. *USF Ins.*, 2011 WL 2457655, at *3.

As for the timeliness of Experian's log, as discussed above, any delays in the production of the log were due solely to Plaintiffs' incredibly overbroad requests, and Plaintiffs' stubborn refusal to narrow those requests even after Experian objected. That the responsive documents *produced* by Experian all generally mention *Pintos*, the Ninth Circuit, or something similar is irrelevant, when the potentially responsive documents that Experian had to *review* constituted a far broader set.

Similarly, Plaintiffs' claim about "the magnitude of the document production" misses the point entirely. Plaintiffs claim that the 4,000 produced pages do not justify the timing of Experian's log, but the log of course only includes documents that were *not* produced. As noted, Experian reviewed over 115,000 pages of documents, produced its first privilege log from those documents less three weeks after narrowing Plaintiffs' requests, and continued to work diligently on updating its log afterwards. As discussed, this has been an "unusually hard" process. *Burlington*, 408 F.3d at 1149. Experian's "good faith effort" cannot give rise to a blanket waiver. *Carl Zeiss*, 2009 WL 4642388, at *3-4.

### 2.   **Attorney Work Product Rule**:

Plaintiff's Statement:  The work product doctrine protects from discovery documents prepared in anticipation of litigation by or for a party. *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006); Fed. R. Civ. Proc. 26(b)(3)(A). Experian's documents relating to how and when it should adjust its procedures to comply with the Ninth Circuit's *Pintos* decision were not prepared in anticipation of this litigation or any other. *Pintos* changed the legal landscape for consumer reporting agencies by clarifying one aspect of permissible purpose. It narrowed the purposes for which collection agencies can obtain and use credit reports. Experian has a statutory duty to maintain reasonable procedures to comply with its FCRA obligations, including its obligation to limit the use of its reports to permissible purposes. 15 USC §1681e(a). The steps that it took or considered for its internal procedures to comply with *Pintos* were not steps prepared in anticipation of litigation, so the work product rule does not apply.

Experian's Statement:  Experian's principal claim is that Plaintiffs are seeking documents

protected by the attorney-client privilege.  Nonetheless, many of these documents are shielded from discovery by work product protections as well.  Documents constitute work product if they "can be fairly said to have been prepared or obtained *because of the prospect of litigation*."  *In re Grand Jury Subpoena (Mark Torf/Torf Environmental Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) (emphasis added).  The documents at issue here were prepared while Experian was actively litigating the *Pintos* case, in order to ensure Experian's compliance with *Pintos* and to prepare for future, similar suits, such as this case.  Plaintiffs suggest that Experian is entirely incapable of protecting its work product, but do not challenge any specific assertion of the work product rule, and have not shown that the work product rule is fundamentally unable to apply in these circumstances.

### 3.    Relevance

Plaintiffs' Statement:  Experian has asserted that the information sought by plaintiffs is not relevant. This case is distinguishable from the situation in *Safeco*,[3] which Experian relies upon, because when Experian made these decisions, the law was clearly established by appellate court precedent. *Pintos* informed Experian that its reports should not be used by collection agencies to collect non-consensual debts. 504 F.3d 792. The FCRA clearly provides that Experian has an affirmative duty to maintain reasonable procedures to limit the furnishing of consumer reports to permissible purposes. 15 USC § 1681e(a). *Pintos* debunked Experian's argument that it could rely on the subscriber's "blanket certification" and that it did not have to *verify* its new subscriber's uses of reports before beginning to furnish them. 504 F.3d at 800. *Pintos* informed Experian that it had to stop furnishing reports if it had any reason to believe that its reports would be used impermissibly. *Id*. In short, Experian's FCRA obligations were clear after *Pintos* was decided on September 21, 2007.

In *Safeco* there was "no need to pinpoint the negligence/recklessness line, for Safeco's reading of the statute, albeit erroneous, was not objectively unreasonable." *Safeco, supra* at 69. This case is different because Experian had the benefit of *Pintos*, which clarified its FCRA obligations, and *United States v. United Mine Workers*, 330 U.S. 258, (1947) and *Wedbush, Noble, Cooke, Inc. v. SEC*, 714 F.2d 923 (9th Cir. 1983), which made clear its obligation to

---

[3]  *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47 (2007).

comply immediately with the *Pintos* decision. Experian's reading of the law was objectively unreasonable, so there is a need to pinpoint the negligence/recklessness line. If Experian is going to present testimony and argue that its violation was only negligent, not reckless or intentional, then plaintiffs are entitled to this information. It is relevant and discoverable.

Experian also refuses to produce a 30(b)(6) witness to testify about any changes Experian has made to its new subscriber screening procedures since *Pintos*. It claims that information is not relevant. Plaintiffs want the information to show Experian's willfulness. It refused to comply with *Pintos* in 2007, 2009 and it still refuses to comply by taking reasonable measures to verify the uses certified by its prospective subscribers and by failing to implement procedures to stop furnishing reports whenever it has reason to believe the reports may be used impermissibly. This evidence is relevant to liability and punitive damages.

Experian's Statement: Plaintiffs once again miss the point. Experian's relevance objections stem directly from the massive overbreadth of Plaintiffs' document requests. As discussed above, Plaintiffs' requests sought a wide swath of information, much of which lacks any conceivable connection to the merits of this case.

As for Experian's legal department's discussions about how to comply with *Pintos*, this material—which, of course, regardless of its relevance, is privileged—cannot bear on whether Experian willfully violated the FCRA. As explained above, willful liability under the FCRA calls for an exclusively *objective* inquiry, for which Experian's subjective beliefs about *Pintos* are besides the point. Plaintiffs suggest that "pinpoint[ing] the negligence/recklessness line," *Safeco*, 551 U.S. at 69, which is required when a party's conduct is objectively unreasonable, calls for a subjective inquiry. Not so. Establishing recklessness (as opposed to negligence) under *Safeco* requires "show[ing] that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." 551 U.S. at 69. Calibrating this risk is an objective, not subjective, inquiry. For if Experian's conduct was objectively unreasonable—and it was not—whether Experian acted recklessly will turn on *how* unreasonable Experian's conduct was, and not what Experian subjectively understood the FCRA to mean. And as a result, Experian's lawyers' discussions about the FCRA are not only privileged, but also irrelevant to Plaintiffs' claims.

Plaintiffs complain that Experian "also refuses to produce a 30(b)(6) witness to testify about any changes Experian has made to its new subscriber screening procedures since *Pintos*." Not true. Experian is willing to produce a witness on this subject and, in fact, Experian already has responded to plaintiffs' interrogatories inquiring about the actions taken by Experian in response to the *Pintos* decisions. For the reasons discussed above, however, Experian is not willing to produce a witness to testify regarding the wholly separate, irrelevant, and privileged matter of what Experian subjectively understood the FCRA to mean.

**4.    Redactions**

Plaintiffs' Statement:  When Experian produced its first batch of documents in 2011, it designated almost all of them "confidential" under the Protective Order. Plaintiffs contested a few of those designations for key documents that they needed to use in motions. Experian made a motion to keep them 13 documents "confidential." The Court disallowed its "confidential" designation for 12 of the 13 disputed documents. Dkt. 108. Thus when Experian next produced documents in 2012, it took a new tack. Rather than designating them "confidential," it unilaterally redacted everything except the references to the *Pintos* case and left it to plaintiffs to figure out what they mean. Plaintiffs protested but Experian refuses to produce un-redacted copies. The redacted document list is 43 pages long.

Rejecting an argument like Experian's, one court explained:

> Defendants' novel interpretation of their discovery obligations is not supported by the text of Fed.R.Civ.P. 34 and would open a fertile new field for discovery battles. Rule 34 talks about production of "documents," as opposed to the relevant information contained in those documents. It is at least implicit that the duty to "produce documents as they are kept in the usual course of business" includes the substantive contents of those documents. *See also* Fed.R.Civ.P. 34(b)(2)(E)(ii) (party must produce information "in a form or forms in which it is ordinarily maintained"). Certainly, a party that seeks to "inspect" a document would anticipate being able to inspect the entire document. This interpretation of Rule 34 is consistent with the guidance in Fed.R.Civ.P. 1 that the Rules be construed to advance the just, speedy and inexpensive determination of cases. There is no express or implied support for the insertion of another step in the process (with its attendant expense and delay) in which a party would scrub responsive documents of non-responsive information. In sum, the Court cannot countenance Defendants' "redaction campaign."

*Orion Power Midwest, L.P. v. Am. Coal Sales Co.,* 2008 WL 4462301 (W.D. Pa. Sept. 30, 2008), footnote omitted. Another court recently summarized the relevant cases and explained that:

    (1)    Redaction of otherwise discoverable documents is the exception rather than the rule.

    (2)    Ordinarily, the fact that the producing party is not harmed by producing irrelevant information or by producing sensitive information which is subject to a protective order restricting its dissemination and use renders redaction both unnecessary and potentially disruptive to the orderly resolution of the case.

    (3)    The Court should not be burdened with an *in camera* inspection of redacted documents merely to confirm the relevance or irrelevance of redacted information, but only when necessary to protect privileged material whose production might waive the privilege.

*Beverage Distributors v. Miller Brewing,* 2010 WL 1727640 (S.D. Ohio, April 28, 2010); *see also Great Lakes Gas Transmission Ltd Partnership v. Essar Steel*, 2011 WL 1486033 (D. Minn, April 19, 2011); *ArcelorMittal Cleveland v. Jewell Coke Company*, 2010 WL 5230862 (N.D. Ohio, Dec. 16, 2010).

    Plaintiffs ask the Court to order Experian to produce all the documents on its redaction log in un-redacted form. Experian waived any privilege claims by failing to disclose these documents on its May 3 privilege log. The redactions for "non-responsive confidential information" are improper. Experian offered to make some of its redacted documents available for plaintiffs' counsel to inspect, but not copy, at Jones Day's offices.  That is not an acceptable solution. Experian has redacted thousands of pages. Plaintiffs' counsel need time to review them and figure out how they fit into the overall picture. When lawyers use documents in cases like this, they often have to refer back to them and cross-reference them to see what patterns emerge. Plaintiffs' counsel cannot do that in a few minutes or a few hours, and they should not be required to visit Jones Day every time they want to see a document. They have given Experian a list of about 100 documents and it refuses to produce them in unredacted form. Moreover, the Protective Order provides Experian protection for its confidential information. Plaintiffs' counsel have agreed not to disclose any information that is marked "confidential" until and unless the court decides it should not be protected.  That should be sufficient.  Experian has no reason to doubt that plaintiffs' counsel will comply with their obligations under that Order.

    <u>Experian's Statement:</u>  Plaintiffs oddly suggest, without citing any cases from within this Circuit, that redaction is some novel procedure.  In fact, courts in this Circuit regularly recognize redaction as appropriate—even when a protective order is in place—when responsive documents include confidential non-responsive information.  *See, e.g.*, *E.E.O.C. v. ABM Indus. Inc.*, 2010

WL 785819, at *4-7 (E.D. Cal. Mar. 4, 2010) (authorizing redaction of non-responsive information in documents produced under a protective order); *Carrizosa v. Stassinos*, 2006 WL 2529503, at *4 (N.D. Cal. Aug. 31, 2006) (authorizing redaction of information where defendant "claims a right of privacy or that is otherwise not responsive to these requests"). There is also significant authority outside of this Circuit for the redaction of such information. *See, e.g.*, *Spano v. Boeing Co.*, 2008 WL 1774460 (S.D. Ill., April 16, 2008); *Beauchem v. Rockford Prods. Corp.*, 2002 WL 1870050 (N.D. Ill. Aug. 13, 2002); *Schiller v. City of New York*, 2006 WL 3592547 (S.D.N.Y. Dec. 7, 2006). Plaintiffs' claim that the right to redact confidential non-responsive information simply "does not exist" is meritless.

Nor have Plaintiffs shown any prejudice from these redactions. Plaintiffs suggest they cannot "figure out what [the redacted documents] mean," but they cite no examples of such documents to support this meritless claim. In fact, the redactions at issue are minor, and should not impair Plaintiffs' comprehension of the documents. Moreover, Experian has repeatedly asked Plaintiffs to identify any redacted documents that Plaintiffs cannot understand. To date, Plaintiffs have identified only one such document, for which Experian promptly provided additional contextual information. In addition, Experian has given Plaintiffs full access to unredacted versions of these documents, which are located at Jones Day's offices. Plaintiffs protest that they "should not be required to visit Jones Day every time they want to see a document," but the Jones Day office in question is less than *one hundred yards* from Plaintiffs' counsel's offices.

In short, when ample authority supports Experian's right to redact to confidential non-responsive information, when Plaintiffs fail to identify even a single example of a redacted document that they cannot understand, and when Experian has made numerous concessions to ensure that the redactions do not affect Plaintiffs' ability to litigate this case, Plaintiffs' attempt to obtain unredacted copies of all these documents must be rejected.

Meet and Confer Attestation: The parties hereby attest that they have met and conferred in person on May 8, 2012 in San Francisco, California regarding all issues in this letter.

1

Dated: May 16, 2012                                     Jones Day

2

3
                                                        By  */s/ Michael G. Morgan*
4                                                            Michael G. Morgan

5                                                       Attorneys for Defendant
                                                        EXPERIAN INFORMATION SOLUTIONS,
6                                                       INC.

7

Dated: May 16, 2012                                     Anderson, Ogilvie & Brewer LLP

8

9

10                                                      By:/s/ *Andrew J. Ogilvie*
                                                            Andrew J. Ogilvie

11                                                      Attorneys for Plaintiffs
                                                        ROANE HOLMAN, NARCISCO
12                                                      NAVARRO HERNANDEZ, MIGUEL A.
                                                        ALVAREZ
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UPDATED JOINT REPORT ON
DISCOVERY DISPUTES 2 & 3
No. CV-11-00180 CW (DMR)