Daniel J. McLoon (State Bar No. 109598)
Michael G. Morgan (State Bar No. 170611)
Sarah G. Conway (State Bar No. 261414)
JONES DAY
555 South Flower Street, 50th Floor
Los Angeles, CA 90071-2300
Telephone:     (213) 489-3939
Facsimile:     (213) 243-2539
Email: djmcloon@jonesday.com
       mgmorgan@jonesday.com
       sgconway@jonesday.com

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| ROANE HOLMAN, NARCISCO NAVARRO HERNANDEZ and MIGUEL A. ALVAREZ and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; FINEX GROUP LLC,<br><br>Defendants. | Case No. CV-11-00180-CW<br><br>**EXPERIAN INFORMATION SOLUTIONS, INC.'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES** |

PROPOUNDING PARTIES:    PLAINTIFFS

RESPONDING PARTY:       EXPERIAN INFORMATION SOLUTIONS, INC.

SET NUMBER:             TWO

# Discovery Dispute #3
# Exhibit 1

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Defendant Experian Information Solutions, Inc. (Experian), hereby supplements its responses to Plaintiffs' Second Set of Interrogatories as follows:

## I. PRELIMINARY STATEMENT

1. Experian has not yet completed its discovery relating to this case, and its investigation of the facts is continuing. Experian will continue to investigate the facts relating to this case up to and throughout the trial of this action. These responses, while based on a reasonable investigation by Experian, reflect only Experian's current state of knowledge regarding the subject matter of the Interrogatories. Discovery is ongoing and will continue as long as permitted by court order, statute, and/or stipulation. Experian expressly reserves the right to amend these responses.

2. Experian responds to the Interrogatories as it interprets and understands each of them. If Plaintiffs subsequently assert an interpretation of any Interrogatory that differs from Experian's understanding, Experian reserves the right to supplement its objections and/or responses.

3. The fact that Experian has responded or objected to any Interrogatory or part thereof may not be taken as an admission that Experian admits the existence of any fact set forth in or assumed by such Interrogatory or that such a response constitutes relevant or material evidence. The fact that Experian has responded to part or all of any Interrogatory shall not be construed to be a waiver by Experian of any objections to part or all of any Interrogatory. Nothing contained herein shall be construed as an admission of the existence or nonexistence of any fact. No implied admissions whatsoever are intended by these responses.

4. Experian has included the objections herein because the Interrogatories, as phrased, are subject to those objections. Plaintiffs should not assume that any information exists that would have been disclosed absent any particular objection or that any agreement to produce any information means that in fact any such information exist.

//

//

## II. GENERAL OBJECTIONS

1. Experian objects to Definitions, Instructions, and the Interrogatories to the extent they seek information or things subject to the attorney-client privilege, the attorney work product doctrine, the self-investigative privilege, Rule 26(b)(3) and the joint defense/common interest privileges, or any other applicable law, rule, privilege, or immunity. Experian claims and invokes all such privileges and protections. Experian deems the scope of these Interrogatories to exclude such privileged communications and does not intend these responses to waive any privilege afforded such information or communication. Inadvertent disclosure of any privileged or protected information or documents in response to these Interrogatories shall not be deemed a waiver of the applicable privilege or protection.

2. Experian objects generally to the Interrogatories to the extent they seek information that is equally available to the Plaintiffs or is in the public record on the grounds that such Interrogatories are unduly burdensome and oppressive and cause Experian unnecessary burden and expense.

3. Each response to an individual Interrogatory herein is subject to all appropriate objections (including, but not limited to, objections concerning competency, relevancy, materiality, propriety, and admissibility) that would require the exclusion of any statement contained therein if the Interrogatory were asked of a witness present and testifying in court, or of any statement contained therein if the answer were given by said witness. All such objections are reserved.

4. Experian objects to these Interrogatories to the extent they seek proprietary or confidential trade secret information or information protected by the privacy rights of third parties.

5. Experian objects to the Definitions, Instructions, and Interrogatories to the extent they are overbroad, unduly burdensome, oppressive, vague, or ambiguous.

6. Experian objects to the Definitions, Instructions, and Interrogatories to the extent they seek disclosure of information that is neither relevant to the subject matter of this case nor reasonably calculated to lead to the discovery of admissible evidence.

7. Experian objects to these Interrogatories to the extent they are compound. Experian reserves its right to treat compound questions as multiple Interrogatories when they are separated into distinct subparts.

8. Experian objects to the definition of "Experian," "you" and "your" on the grounds they are overbroad and unduly burdensome by seeking to impose obligations on Experian beyond those permitted in the Federal Rules of Civil Procedure.

9. Experian objects to the definitions of "identify" and "describe" to the extent they impose a requirement or discovery obligation beyond those set forth in the Federal Rules of Civil Procedure. Further, Experian objects to the multiple definitions supplied for "identify" and "describe" as overbroad, unduly burdensome, vague, and ambiguous, thus rendering the Interrogatories impossible to answer under that construction.

10. Experian objects to the Definitions, Instructions, and Interrogatories to the extent they are inconsistent with, or enlarge upon, Experian's obligations to respond as imposed by law, and to the extent the Interrogatories and Definitions exceed the permissible scope of discovery as set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Orders entered by this Court. In responding to these Interrogatories, Experian will comply with the requirements set forth in those Rules, not with any Definitions or Interrogatories that exceed or alter the requirements of those Rules.

11. Experian incorporates the foregoing General Objections and limitations into each of the following responses, which responses are made subject to and without waiver of those General Objections and limitations.

### III. RESPONSES TO INTERROGATORIES

**INTERROGATORY NO. 11:**

In the section entitled "Experian's Position" in the Sale Force Talk Track, October 2007 (EIS000004), Experian said it "is reviewing its compliance policies in light of the recent *Pintos* 9th Circuit appellate decision" and that it "will notify its clients regarding compliance policies after the final outcome of the court's review." State whether Experian believed in October 2007 that the law allowed it to wait for the final outcome of the *Pintos* case before it was required to

implement policies and procedures to comply with the *Pintos* decision. If so, please state the factual and legal basis for Experian's belief in that regard and identify all persons who were involved in reaching that conclusion and all documents that refer to or reflect Experian's review, analysis or conclusions regarding this issue.

**RESPONSE TO INTERROGATORY NO. 11:**

Experian objects that, under the Supreme Court's decision in *Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 69-70 (2007), the determination of whether a defendant willfully violated the FCRA turns on an objective test: whether the defendant engaged in conduct that was, at the time it occurred, clearly established – by either "pellucid" statutory text or "authoritative" interpretations of that text by the courts of appeals or the FTC—as unlawful. *Id.* at 70; *see also Levine v. World Fin. Network Nat. Bank*, 554 F.3d 1314, 1318-19 (11th Cir. 2009). The defendant's subjective beliefs, intentions, and even purported bad faith are not taken into account in any way in this objective test. *Id.* at 70, fn. 20. Accordingly, Experian objects that this Interrogatory, by seeking information about Experian's subjective beliefs about the *Pintos* ruling in October 2007, seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Also, Experian relied on legal counsel to interpret the *Pintos* ruling in October 2007, and thus this Interrogatory seeks information that is protected by the attorney work-product doctrine and the attorney-client privilege.

Experian also objects that this Interrogatory erroneously assumes that Experian did not take steps in response to the *Pintos* decision in October 2007. *See* Experian's Response to Plaintiff's First Set of Interrogatories, Response to Interrogatory No. 8 and Amended Response to Interrogatory No. 3; Experian's Response to Plaintiff's First Set of Requests for Production of Documents, Response to Document Request No. 5; EIS1-EIS13 and EIS228; witnesses identified in Experian's Supplemental Rule 26(a)(1) Disclosures; and documents produced on September 30, 2011 at Mr. Henke's deposition.

Experian further objects that: (i) this Interrogatory is unduly burdensome and oppressive; (ii) this Interrogatory is not limited to a relevant category of subscriber; (iii) this Interrogatory

seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence; (iv) the terms "policies" and "procedures" are vague and ambiguous in that they could relate to nearly every aspect of Experian's activities, including employee training, vetting of new subscribers, communications with subscribers, the inner workings of Experian's computer systems, and Experian's security procedures; (v) this Interrogatory seeks information protected by the attorney-client privilege and the attorney work-product doctrine; and (vi) this Interrogatory seeks proprietary or confidential trade secret information concerning Experian's unique and highly sophisticated computer system.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

Subject to and without waiving its objections, Experian responds as follows: Experian believes that it complied with Ninth Circuit's September 2007 decision in *Pintos* in the following ways: Following the issuance of the decision, Experian took steps to educate subscribers and Experian employees, including those in Experian's sales and membership departments, about the decision, its holdings, and its implications. For example, Experian issued Talk-Tracks in October 2007, May 2009, June 2010, and January 2011, which have already been produced in this litigation. Experian also sent notices to subscribers in June 2010 and January 2011, which have already been produced in this litigation. Also in January 2011, Experian sent a recertification notice to collection subscribers that, among other things, required each collection subscriber to provide a signed confirmation that it was using "Experian information in connection with the collection of an obligation arising from a transaction voluntarily initiated by the consumer or patient or an obligation that has been judicially established by a court order or judgment."

Prior to and after the publication of the decision, Experian maintained a policy of requiring subscribers to agree to comply with their statutory obligation to obtain Experian consumer credit information only for purposes permitted under Section 1681b, as that provision is interpreted by the courts. Experian's subscribers were under both a statutory and a contractual obligation to comply fully with Section 1681b, including judicial determinations of that provision. Additionally, Experian permitted subscribers to access consumer credit information only where Experian possessed a reasonable belief that the information would be used only for

lawful purposes as permitted under Section 1681b. *See e.g.,* procedures described in Experian's Amended Response to Plaintiffs' Interrogatory No. 3.

Furthermore, Experian obtained and relied upon blanket certifications from Experian subscribers certifying that they would not request consumer credit reports for purposes not permitted under the FCRA. Experian did not believe that it was legally obligated to take additional steps other than what it did. The individuals involved in Experian's response to *Pintos* include: Pat Finneran, Dan Buell, Laura Mundy, Cathy Jones, Kathy Centanni, Ann Sterling, and Jason Engel. The documents reflecting Experian's response to *Pintos* include: Experian's Response to Plaintiff's First Set of Requests for Production of Documents, Response to Document Request No. 5; EIS1-EIS13 and EIS228; witnesses identified in Experian's Supplemental Rule 26(a)(1) Disclosures; documents produced on September 30, 2011 at Mr. Peter Henke's deposition; and documents produced on February 3, 2012 in advance of Ms. Centanni's deposition.

**INTERROGATORY NO. 12:**

In the section entitled "Experian's Position" in the Sale Force Talk Track, May 2009 (EIS000005), Experian said it "is reviewing its compliance policies in light of the recent *Pintos* 9th Circuit appellate decision" and that it "will notify its clients regarding compliance policies after the final outcome of the court's review." State whether Experian believed in May 2009 that the law allowed it to wait for the final outcome of the *Pintos* case before it was required to implement policies and procedures to comply with the *Pintos* decision. If so, please state the factual and legal basis for Experian's belief in that regard and identify all persons who were involved in reaching that conclusion and all documents that refer to or reflect Experian's review, analysis or conclusions regarding this issue.

**RESPONSE TO INTERROGATORY NO. 12:**

Experian objects that, under the Supreme Court's decision in *Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 69-70 (2007), the determination of whether a defendant willfully violated the FCRA turns on an objective test: whether the defendant engaged in conduct that was, at the time it occurred, clearly established – by either "pellucid" statutory text or "authoritative"

interpretations of that text by the courts of appeals or the FTC—as unlawful. *Id.* at 70; *see also Levine v. World Fin. Network Nat. Bank*, 554 F.3d 1314, 1318-19 (11th Cir. 2009). The defendant's subjective beliefs, intentions, and even purported bad faith are not taken into account in any way in this objective test. *Id.* at 70, fn. 20. Accordingly, Experian objects that this Interrogatory, by seeking information about Experian's subjective beliefs about the *Pintos* ruling in May 2009, seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Also, Experian relied on legal counsel to interpret the *Pintos* ruling in May 2009, and thus this Interrogatory seeks information that is protected by the attorney work-product doctrine and the attorney-client privilege.

Experian also objects that this Interrogatory erroneously assumes that Experian did not take steps in response to the *Pintos* decision in May 2009. *See* Experian's Response to Plaintiff's First Set of Interrogatories, Response to Interrogatory No. 8, Response to Interrogatory No. 9 and Amended Response to Interrogatory No. 3; Experian's Response to Plaintiff's First Set of Requests for Production of Documents, Response to Document Request No. 5; EIS1-EIS13 and EIS228; witnesses identified in Experian's Supplemental Rule 26(a)(1) Disclosures; and documents produced on September 30, 2011 at Mr. Henke's deposition.

Experian further objects that: (i) this Interrogatory is unduly burdensome and oppressive; (ii) this Interrogatory is not limited to a relevant category of subscriber; (iii) this Interrogatory seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence; (iv) the terms "policies" and "procedures" are vague and ambiguous in that they could relate to nearly every aspect of Experian's activities, including employee training, vetting of new subscribers, communications with subscribers, the inner workings of Experian's computer systems, and Experian's security procedures; (v) this Interrogatory seeks information protected by the attorney-client privilege and the attorney work-product doctrine; and (vi) this Interrogatory seeks proprietary or confidential trade secret information concerning Experian's unique and highly sophisticated computer system.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 12:**

Subject to and without waiving its objections, Experian responds as follows: Experian believes that it complied with Ninth Circuit's April 2009 decision in *Pintos* in the following ways: Following the issuance of the decision, Experian took steps to educate subscribers and Experian employees, including those in Experian's sales and membership departments, about the decision, its holdings, and its implications. For example, Experian issued Talk-Tracks in May 2009, June 2010, and January 2011, which have already been produced in this litigation. Experian also sent notices to subscribers in June 2010 and January 2011, which have already been produced in this litigation. Also in January 2011, Experian sent a recertification notice to collection subscribers that, among other things, required each collection subscriber to provide a signed confirmation that it was using "Experian information in connection with the collection of an obligation arising from a transaction voluntarily initiated by the consumer or patient or an obligation that has been judicially established by a court order or judgment."

Prior to and after the publication of the decision, Experian maintained a policy of requiring subscribers to agree to comply with their statutory obligation to obtain Experian consumer credit information only for purposes permitted under Section 1681b, as that provision is interpreted by the courts. Experian's subscribers were under both a statutory and a contractual obligation to comply fully with Section 1681b, including judicial determinations of that provision. Additionally, Experian permitted subscribers to access consumer credit information only where Experian possessed a reasonable belief that the information would be used only for lawful purposes as permitted under Section 1681b. *See e.g.*, procedures described in Experian's Amended Response to Plaintiffs' Interrogatory No. 3.

Furthermore, Experian obtained and relied upon blanket certifications from Experian subscribers certifying that they would not request consumer credit reports for purposes not permitted under the FCRA. Experian did not believe that it was legally obligated to take additional steps other than what it did. The individuals involved in Experian's response to *Pintos* include: Pat Finneran, Dan Buell, Laura Mundy, Cathy Jones, Kathy Centanni, Ann Sterling, and Jason Engel. The documents reflecting Experian's response to *Pintos* include: Experian's Response to Plaintiff's First Set of Requests for Production of Documents, Response to

Document Request No. 5; EIS1-EIS13 and EIS228; witnesses identified in Experian's Supplemental Rule 26(a)(1) Disclosures; documents produced on September 30, 2011 at Mr. Henke's deposition; and documents produced on February 3, 2012 in advance of Ms. Centanni's deposition.

**INTERROGATORY NO. 13:**

In the section entitled "Experian's Position" in the Sale Force Talk Track, June 2010 (EIS000006), Experian said it "is reviewing its compliance policies in light of the Ninth Circuit's latest decision in the *Pintos* case" and that it "will notify its clients in the coming weeks regarding new compliance policies, possibly including re-certification, updated membership documents, and audits." State whether Experian believed in June 2010 that the law allowed it to wait until the Ninth Circuit denied *en banc* review before it was required to implement policies and procedures to comply with the *Pintos* decision. If so, please state the factual and legal basis for Experian's belief in that regard and identify all persons who were involved in reaching that conclusion and all documents that refer to or reflect Experian's review, analysis or conclusions regarding this issue.

**RESPONSE TO INTERROGATORY NO. 13:**

Experian objects that, under the Supreme Court's decision in *Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 69-70 (2007), the determination of whether a defendant willfully violated the FCRA turns on an objective test: whether the defendant engaged in conduct that was, at the time it occurred, clearly established – by either "pellucid" statutory text or "authoritative" interpretations of that text by the courts of appeals or the FTC—as unlawful. *Id.* at 70; *see also Levine v. World Fin. Network Nat. Bank*, 554 F.3d 1314, 1318-19 (11th Cir. 2009). The defendant's subjective beliefs, intentions, and even purported bad faith are not taken into account in any way in this objective test. *Id.* at 70, fn. 20. Accordingly, Experian objects that this Interrogatory, by seeking information about Experian's subjective beliefs about the *Pintos* ruling in June 2010, seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Also, Experian relied on legal counsel to interpret the *Pintos* ruling in June 2010, and thus

this Interrogatory seeks information that is protected by the attorney work-product doctrine and the attorney-client privilege.

Experian also objects that this Interrogatory erroneously assumes that Experian did not take steps in response to the *Pintos* decision in June 2010. *See* Experian's Response to Plaintiff's First Set of Interrogatories, Response to Interrogatory No. 8, Response to Interrogatory No. 9 and Amended Response to Interrogatory No. 3; Experian's Response to Plaintiff's First Set of Requests for Production of Documents, Response to Document Request No. 5; EIS1-EIS13 and EIS228; witnesses identified in Experian's Supplemental Rule 26(a)(1) Disclosures; and documents produced on September 30, 2011 at Mr. Henke's deposition.

Experian further objects that: (i) this Interrogatory is unduly burdensome and oppressive; (ii) this Interrogatory is not limited to a relevant category of subscriber; (iii) this Interrogatory seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence; (iv) the terms "policies" and "procedures" are vague and ambiguous in that they could relate to nearly every aspect of Experian's activities, including employee training, vetting of new subscribers, communications with subscribers, the inner workings of Experian's computer systems, and Experian's security procedures; (v) this Interrogatory seeks information protected by the attorney-client privilege and the attorney work-product doctrine; and (vi) this Interrogatory seeks proprietary or confidential trade secret information concerning Experian's unique and highly sophisticated computer system.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 13:**

Subject to and without waiving its objections, Experian responds as follows: Experian believes that it complied with Ninth Circuit's May 2010 decision in *Pintos* in the following ways: Following the issuance of the decision, Experian took steps to educate subscribers and Experian employees, including those in Experian's sales and membership departments, about the decision, its holdings, and its implications. For example, Experian issued Talk-Tracks in June 2010 and January 2011, which have already been produced in this litigation. Experian also sent notices to subscribers in June 2010 and January 2011, which have already been produced in this litigation. Also in January 2011, Experian sent a recertification notice to collection subscribers that, among

other things, required each collection subscriber to provide a signed confirmation that it was using "Experian information in connection with the collection of an obligation arising from a transaction voluntarily initiated by the consumer or patient or an obligation that has been judicially established by a court order or judgment."

Prior to and after the publication of the decision, Experian maintained a policy of requiring subscribers to agree to comply with their statutory obligation to obtain Experian consumer credit information only for purposes permitted under Section 1681b, as that provision is interpreted by the courts. Experian's subscribers were under both a statutory and a contractual obligation to comply fully with Section 1681b, including judicial determinations of that provision. Additionally, Experian permitted subscribers to access consumer credit information only where Experian possessed a reasonable belief that the information would be used only for lawful purposes as permitted under Section 1681b. *See e.g.,* procedures described in Experian's Amended Response to Plaintiffs' Interrogatory No. 3.

Furthermore, Experian obtained and relied upon blanket certifications from Experian subscribers certifying that they would not request consumer credit reports for purposes not permitted under the FCRA. Experian did not believe that it was legally obligated to take additional steps other than what it did. The individuals involved in Experian's response to *Pintos* include: Pat Finneran, Dan Buell, Laura Mundy, Cathy Jones, Kathy Centanni, Ann Sterling, and Jason Engel. The documents reflecting Experian's response to *Pintos* include: Experian's Response to Plaintiff's First Set of Requests for Production of Documents, Response to Document Request No. 5; EIS1-EIS13 and EIS228; witnesses identified in Experian's Supplemental Rule 26(a)(1) Disclosures; documents produced on September 30, 2011 at Mr. Henke's deposition; and documents produced on February 3, 2012 in advance of Ms. Centanni's deposition.

**INTERROGATORY NO. 14:**

If Experian contends that it has any "reading" of the Fair Credit Reporting Act that provides Experian with a defense under *Safeco v. Burr*, 551 U.S. 47 (2007) to Plaintiffs' claims in this lawsuit, please explain in detail what that "reading" is, the date and name of each person who

made that "reading" of the FCRA, and what actions or decisions, if any, resulted from that reading of the FCRA.

**RESPONSE TO INTERROGATORY NO. 14:**

Experian objects that this Interrogatory purports to seek information regarding Experian's defense to "Plaintiffs' claims in this lawsuit," and yet the lawsuit purports to assert claims on behalf of a class of more than 40,000 consumers. The nature of each class member's claim, and, in turn, Experian's defenses to that claim, depends on each class member's highly individualized circumstances. As explained in Experian's Opposition to Plaintiffs' Motion for Class Certification, no consumer who "initiate[s]" the towing of his car or whose towing debt has been "judicially established," has a valid Fair Credit Reporting Act (FCRA) claim under *Pintos v. Pacific Creditors Association*, 605 F.3d 665, 676 (9th Cir. 2010). The class description, however, pays no heed to what is required under *Pintos* and includes consumers who have no right to recover, including consumers whose debts resulted from a towing which they initiated and consumers whose underlying debts have been established by a court. In order to respond to this Interrogatory, Experian would have to delve into the highly individualized circumstances for more than 40,000 class members. Accordingly, Experian objects that this Interrogatory is overbroad and highly burdensome.

Additionally, Experian objects that this vague Interrogatory improperly purports to seek privileged and irrelevant information regarding Experian's interpretations of its obligations under the FCRA. Under the Supreme Court's decision in *Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 69-70 (2007), the determination of whether a defendant willfully violated the FCRA turns on an objective test: whether the defendant engaged in conduct that was, at the time it occurred, clearly established – by either "pellucid" statutory text or "authoritative" interpretations of that text by the courts of appeals or the FTC—as unlawful. *Id.* at 70; *see also Levine v. World Fin. Network Nat. Bank*, 554 F.3d 1314, 1318-19 (11th Cir. 2009). The defendant's subjective beliefs, intentions, and even purported bad faith are not taken into account in any way in this objective test. *Id.* at 70, fn. 20. Accordingly, Experian objects that this Interrogatory, by seeking information about Experian's subjective beliefs, seeks information that

is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Experian relied on legal counsel to interpret the various *Pintos* rulings, and thus this Interrogatory seeks information that is protected by the attorney work-product doctrine and the attorney-client privilege.

Experian also objects that: (i) the term "reading" is undefined, vague, and ambiguous; (ii) this Interrogatory is not limited to a relevant category of subscriber; (iii) this Interrogatory seeks information that is not relevant to the subject matter of this litigation and is not reasonably calculated to lead to the discovery of admissible evidence; (iv) this Interrogatory is unduly burdensome and oppressive; (v) this Interrogatory seeks information protected by the attorney-client privilege and the attorney work-product doctrine; and (vi) because this Interrogatory purports to seek information regarding more than 40,000 class members, this Interrogatory contains more than 40,000 subparts and thus Plaintiffs have greatly exceeded the twenty-five interrogatory limit under FRCP 33(a)(1).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14:**

Subject to and without waiving its objections, Experian responds as follows: Experian's "reading" of the FCRA was that – in the wake of the holdings of the Ninth Circuit Court of Appeals in *Pintos v. Pacific Creditors Association* relating to the circumstances under which a consumer credit report may be used to collect on a towing debt – the following steps were sufficient to comply with Experian's legal obligations:

First, following the issuance of the various decisions, Experian took steps to educate subscribers and Experian employees, including those in Experian's sales and membership departments, about those decisions, their holdings, and their implications. For example, Experian issued Talk-Tracks in October 2007, May 2009, June 2010, and January 2011, which have already been produced in this litigation.

Second, Experian sent notices to subscribers in June 2010 and January 2011, which have already been produced in this litigation.

Third, in January 2011, Experian sent a recertification notice to collection subscribers that, among other things, required each collection subscriber to provide a signed confirmation that it

was using "Experian information in connection with the collection of an obligation arising from a transaction voluntarily initiated by the consumer or patient or an obligation that has been judicially established by a court order or judgment."

Fourth, prior to and after issuance of the decisions, Experian maintained a policy of requiring subscribers to agree to comply with their statutory obligation to obtain Experian consumer credit information only for purposes permitted under Section 1681b, as that provision is interpreted by the courts. Experian's subscribers were under both a statutory and a contractual obligation to comply fully with Section 1681b, including judicial determinations of that provision.

Fifth, Experian permitted subscribers to access consumer credit information only where Experian possessed a reasonable belief that the information would be used only for lawful purposes as permitted under Section 1681b. *See e.g.*, procedures described in Experian's Amended Response to Plaintiffs' Interrogatory No. 3.

Sixth, Experian obtained and relied upon blanket certifications from Experian subscribers certifying that they would not request consumer credit reports for purposes not permitted by the FCRA.

The individuals involved in Experian's response to *Pintos* include: Pat Finneran, Dan Buell, Laura Mundy, Cathy Jones, Kathy Centanni, Ann Sterling, and Jason Engel. The documents reflecting Experian's response to *Pintos* include: Experian's Response to Plaintiff's First Set of Requests for Production of Documents, Response to Document Request No. 5; EIS1-EIS13 and EIS228; witnesses identified in Experian's Supplemental Rule 26(a)(1) Disclosures; documents produced on September 30, 2011 at Mr. Henke's deposition; and documents produced on February 3, 2012 in advance of Ms. Centanni's deposition.

**INTERROGATORY NO. 15:**

If you contend that any violation of the Fair Credit Reporting Act by Experian that occurred in this case was not "willful," please explain in detail the factual and legal basis for such contention and identify all witnesses and documents that have evidence relating to that contention.

**RESPONSE TO INTERROGATORY NO. 15:**

Experian objects that, because this Interrogatory is not limited to any particular alleged "violation," this Interrogatory seeks information pertaining to Plaintiffs' claims on behalf of a class of more than 40,000 consumers. The nature of each class member's claim, and, in turn, Experian's defenses to that claim, depends on each class member's highly individualized circumstances. As explained in Experian's Opposition to Plaintiffs' Motion for Class Certification, no consumer who "initiate[s]" the towing of his car or whose towing debt has been "judicially established" has a valid Fair Credit Reporting Act (FCRA) claim under *Pintos v. Pacific Creditors Association*, 605 F.3d 665, 676 (9th Cir. 2010). The class description pays no heed to what is required under *Pintos* and includes consumers who have no right to recover, including consumers whose debts resulted from a towing which they initiated and consumers whose underlying debts have been established by a court. A response to this Interrogatory would require Experian to delve into the highly individualized circumstances of more than 40,000 class members. Accordingly, this Interrogatory is grossly overbroad and highly burdensome.

Also, Experian objects that, under the Supreme Court's decision in *Safeco Insurance Company of America v. Burr*, 551 U.S. 47, 69-70 (2007), the determination of whether a defendant willfully violated the FCRA turns on an objective test: whether the defendant engaged in conduct that was, at the time it occurred, clearly established – by either "pellucid" statutory text or "authoritative" interpretations of that text by the courts of appeals or the FTC—as unlawful. *Id.* at 70; *see also Levine v. World Fin. Network Nat. Bank*, 554 F.3d 1314, 1318-19 (11th Cir. 2009). The defendant's subjective beliefs, intentions, and even purported bad faith are not taken into account in any way in this objective test. *Id.* at 70, fn. 20. Accordingly, Experian objects that this Interrogatory, by seeking information about Experian's subjective beliefs, seeks information that is irrelevant and is not reasonably calculated to lead to the discovery of admissible evidence.

Experian further objects that: (i) this Interrogatory is unduly burdensome and oppressive; (ii) this Interrogatory is not limited to a relevant category of subscriber; (iii) this Interrogatory seeks information that is not relevant to the subject matter of this litigation and is not reasonably

calculated to lead to the discovery of admissible evidence; (iv) Experian objects that the term "reading" is undefined, vague, and ambiguous; (v) this Interrogatory seeks information protected by the attorney-client privilege and the attorney work-product doctrine; (vi) this Interrogatory seeks proprietary or confidential trade secret information concerning Experian's unique and highly sophisticated computer system; and (vii) because this Interrogatory purports to seek information regarding more than 40,000 class members, this Interrogatory contains more than 40,000 subparts and thus Plaintiffs have greatly exceeded the twenty-five interrogatory limit under FRCP 33(a)(1).

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 15:**

Subject to and without waiving its objections, Experian responds as follows: Experian denies that it has violated the FCRA, either negligently or willfully. However, if Experian is found to have violated the FCRA, Experian contends that its conduct was objectively reasonable because Experian took reasonable steps to comply with its obligations in the wake of the holdings of the Ninth Circuit Court of Appeals in *Pintos v. Pacific Creditors Association* relating to the circumstances under which a consumer credit report may be used to collect on a towing debt, including the following:

First, following the issuance of the various decisions, Experian took steps to educate subscribers and Experian employees, including those in Experian's sales and membership departments, about those decisions, their holdings, and their implications. For example, Experian issued Talk-Tracks in October 2007, May 2009, June 2010, and January 2011, which have already been produced in this litigation.

Second, Experian sent notices to subscribers in June 2010 and January 2011, which have already been produced in this litigation.

Third, in January 2011, Experian sent a recertification notice to collection subscribers that, among other things, required each collection subscriber to provide a signed confirmation that it was using "Experian information in connection with the collection of an obligation arising from a transaction voluntarily initiated by the consumer or patient or an obligation that has been judicially established by a court order or judgment."

Fourth, prior to and after issuance of the decisions, Experian maintained a policy of requiring subscribers to agree to comply with their statutory obligation to obtain Experian consumer credit information only for purposes permitted under Section 1681b, as that provision is interpreted by the courts. Experian's subscribers were under both a statutory and a contractual obligation to comply fully with Section 1681b, including judicial determinations of that provision.

Fifth, Experian permitted subscribers to access consumer credit information only where Experian possessed a reasonable belief that the information would be used only for lawful purposes as permitted under Section 1681b. *See e.g.,* procedures described in Experian's Amended Response to Plaintiffs' Interrogatory No. 3.

Sixth, Experian obtained and relied upon blanket certifications from Experian subscribers certifying that they would not request consumer credit reports for purposes not permitted by the FCRA.

The individuals involved in Experian's response to *Pintos* include: Pat Finneran, Dan Buell, Laura Mundy, Cathy Jones, Kathy Centanni, Ann Sterling, and Jason Engel. The documents reflecting Experian's response to *Pintos* include: Experian's Response to Plaintiff's First Set of Requests for Production of Documents, Response to Document Request No. 5; EIS1-EIS13 and EIS228; witnesses identified in Experian's Supplemental Rule 26(a)(1) Disclosures; documents produced on September 30, 2011 at Mr. Henke's deposition; and documents produced on February 3, 2012 in advance of Ms. Centanni's deposition.

Dated: February 13, 2012

JONES DAY

By: /s/ Michael G. Morgan

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.

LAI-3159827v1

EXPERIAN'S SUPPLEMENTAL RESPONSES
TO PLAINTIFFS' SECOND SET OF
INTERROGATORIES