1  Daniel J. McLoon (State Bar No. 109598)
   Michael G. Morgan (State Bar No. 170611)
2  JONES DAY
   555 South Flower Street, 50th Floor
3  Los Angeles, CA 90071-2300
   Telephone:    (213) 489-3939
4  Facsimile:    (213) 243-2539
   Email:        djmcloon@jonesday.com
5                mgmorgan@jonesday.com

6  Attorneys for Defendant
   EXPERIAN INFORMATION SOLUTIONS, INC.
7

8              UNITED STATES DISTRICT COURT

9        NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

10

11 ROANE HOLMAN, NARCISCO            Case No. 4:11-cv-00180-CW
   NAVARRO HERNANDEZ, MIGUEL A.
12 ALVAREZ, and all others similarly situated,   **Assigned to the Honorable**
                                    **Claudia Wilken**
13              Plaintiffs,

14      v.

15 EXPERIAN INFORMATION SOLUTIONS,   **EXPERIAN INFORMATION**
   INC.,                            **SOLUTIONS, INC.'S NOTICE OF**
16                                  **MOTION AND MOTION FOR**
                                    **SUMMARY JUDGMENT AND TO**
17              Defendant.          **DECERTIFY THE CLASS;**
                                    **MEMORANDUM OF POINTS AND**
18                                  **AUTHORITIES**

19                                  **DATE:    April 11, 2013**
                                    **TIME:    2:00 PM**
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

NOTICE OF MOTION AND MOTION ................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.     INTRODUCTION ............................................................................................... 1

II.    STATEMENT OF FACTS .................................................................................. 3

     A.    Plaintiffs' Claims ................................................................................... 3

     B.    Procedural History and Case Status ....................................................... 5

III.   LEGAL STANDARD .......................................................................................... 6

IV.   ARGUMENT ....................................................................................................... 6

     A.    The New Rule Announced in *Pintos* Did Not Become Clearly Established—and Thus Could Not Have Been Willfully Violated—Before June 1, 2010 .......................................................................................... 6

          1.    *Safeco* Permits Considering Only Those FCRA Rules That Were Clearly Established When the Defendant Acted ........................ 6

          2.    The Rule Announced in *Pintos* Was in Flux Before June 1, 2010 ............ 8

          3.    A Case Cannot "Clearly Establish" the Law Before Its Mandate Issues, Even If It Might Become Final Earlier for Other Purposes ......... 10

     B.    Plaintiff Holman's Claim Fails as a Matter of Law, Because His Towing Debt Is Consumer-Initiated ................................................................... 13

     C.    The Class Should Be Decertified Due to Its Fatal Ascertainability, Predominance, and Superiority Problems ............................................. 16

          1.    A Class That Requires Live Testimony from Over 36,000 Individuals Is Not Feasibly Ascertainable ................................. 18

          2.    Because Each Class Member Will Need to Testify to Establish Liability, Common Issues Do Not Predominate .......................... 19

          3.    A Class Action Is Not the Superior Method for Resolving the Class Members' Claims .................................................................. 20

     D.    At the Very Least, the Class Definition Should Be Amended to Exclude Individuals Who Lack Standing Due to Bankruptcy, or Who Die Before Their FCRA Claims Are Adjudicated ....................................................... 21

          1.    Potential Class Members Who Have Filed for Bankruptcy May Lack Standing .......................................................................... 22

          2.    Only Living Consumers Can Bring or Maintain FCRA Claims ............... 22

V.    CONCLUSION ................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acosta v. City of Costa Mesa,*
694 F.3d 960 (9th Cir. 2012).................................................................................... 7, 11

*al-Kidd v. Ashcroft,*
580 F.3d 949 (9th Cir. 2009) ........................................................................................... 7

*al-Kidd v. Ashcroft,*
598 F.3d 1129 (9th Cir. 2010)......................................................................................... 7

*Amgen Inc. v. Connecticut Retirement Plans & Trust Funds,*
No. 11-1085 (argued Nov. 5, 2012) ............................................................................. 17

*Anderson v. Creighton,*
483 U.S. 635 (1987) ......................................................................................................... 7

*Andrews v. TRW, Inc.,*
225 F.3d 1063 (9th Cir. 2000)....................................................................................... 15

*Ashcroft v. al-Kidd,*
131 S. Ct. 2074 (2011) ........................................................................................... *passim*

*Barnes v. Am. Tobacco Co.,*
176 F.R.D. 479 (E.D. Pa. 1997), *aff'd*, 161 F.3d 127 (3d Cir. 1998) ..................................... 17

*Bateman v. Am. Multi-Cinema, Inc.,*
623 F.3d 708 (9th Cir. 2010)......................................................................................... 20

*Brower v. Evans,*
257 F.3d 1058 (9th Cir. 2001)....................................................................................... 23

*Butros v. INS,*
990 F.2d 1142 (9th Cir. 1993) (en banc)...................................................................... 11

*Caraballo v. S. Stevedoring, Inc.,*
932 F. Supp. 1462 (S.D. Fla. 1996) .............................................................................. 24

*Carver v. Lehman,*
558 F.3d 869 (9th Cir. 2009).................................................................................... 11, 12

*Comcast v. Behrend,*
133 S. Ct. 24 (2012) ....................................................................................................... 17

*Coopers & Lybrand v. Livesay,*
437 U.S. 463 (1978) ....................................................................................................... 16

EXPERIAN'S MOTION FOR
SUMMARY JUDGMENT

*Cuming v. S.C. Lottery Comm'n*,
   2008 WL 906705 (D.S.C. Mar. 31, 2008) ............................................................ 18

*Dunmore v. United States*,
   358 F.3d 1107 (9th Cir. 2004) .......................................................................... 22

*DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*,
   271 F.R.D. 676 (S.D. Fla. 2010), *aff'd*, 469 F. App'x 762 (11th Cir. 2012) ................... 19, 20

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011)............................................................................ 17

*Gales v. Winco Foods*,
   2011 WL 3794887 (N.D. Cal. Aug. 26, 2011)........................................................ 20

*Gawry v. Countrywide Home Loans, Inc.*,
   640 F. Supp. 2d 942 (N.D. Ohio 2009)............................................................... 22

*Gonzalez v. Officemax N. Am.*,
   2012 WL 5473764 (C.D. Cal. Nov. 5, 2012).......................................................... 20

*Greenhaw v. Lubbock Cnty. Beverage Ass'n*,
   721 F.2d 1019 (5th Cir. 1983)......................................................................... 17

*Haggart v. Endogastric Solutions, Inc.*,
   2012 WL 2513494 (W.D. Pa. June 28, 2012)........................................................ 18

*Hanni v. Am. Airlines, Inc.*,
   2010 WL 289297 (N.D. Cal. Jan. 15, 2010) ........................................................ 22

*Hasbun v. County of Los Angeles*,
   323 F.3d 801 (9th Cir. 2003)....................................................................*passim*

*In re Farmers Ins. Co. FCRA Litig.*,
   2008 WL 687085 (W.D. Okla. Mar. 10, 2008)......................................................... 7

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
   214 F.R.D. 614 (W.D. Wash. 2003) ............................................................... 19, 20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   267 F.R.D. 583 (N.D. Cal. 2010).................................................................... 18

*Jimenez v. Lakeside Pic-N-Pac, L.L.C.*,
   2007 WL 4454295 (W.D. Mich. Dec. 14, 2007) ................................................. 19, 20

*Just Film, Inc. v. Merchant Servs., Inc.*,
   873 F. Supp. 2d 1171 (N.D. Cal. 2012) .............................................................. 22

*Levine v. World Fin. Network Nat'l Bank*,
   554 F.3d 1314 (11th Cir. 2009)......................................................................... 7

EXPERIAN'S MOTION FOR
SUMMARY JUDGMENT

*Lowe v. Experian,*
    340 F. Supp. 2d 1170 (D. Kan. 2004) ................................................................ 24

*Mann v. TD Bank, N.A.,*
    2010 WL 4226526 (D.N.J. Oct. 20, 2010) ........................................................ 18

*Marcus v. BMW of N. Am., LLC,*
    687 F.3d 583 (3d Cir. 2012) ..................................................................... 17, 18

*Mayo v. USB Real Estate Secs., Inc.,*
    2012 WL 4361571 (W.D. Mo. Sept. 21, 2012) ................................................. 22

*Mendez v. R+L Carriers, Inc.,*
    2012 WL 5868973 (N.D. Cal. Nov. 19, 2012) ..................................................... 6

*Murray v. GMAC Mortg. Corp.,*
    532 F. Supp. 2d 938 (N.D. Ill. 2007), *aff'd*, 274 F. App'x 489 (7th Cir. 2008) .................... 10

*Murray v. New Cingular Wireless Servs., Inc.,*
    523 F.3d 719 (7th Cir. 2008) ......................................................................... 8

*O'Connor v. Boeing N. Am., Inc.,*
    197 F.R.D. 404 (C.D. Cal. 2000) .................................................................... 16

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.,*
    688 F.2d 615 (9th Cir. 1982) ........................................................................ 16

*Padilla v. Yoo,*
    678 F.3d 748 (9th Cir. 2012) ..................................................................... 7, 11

*Pintos v. Pac. Creditors Ass'n,*
    2004 U.S. Dist. LEXIS 27419 (N.D. Cal. Nov. 9, 2004) ................................... 8, 14

*Pintos v. Pacific Creditors Association,*
    504 F.3d 792 (9th Cir. 2007) ............................................................ 4, 8, 9, 15

*Pintos v. Pacific Creditors Association,*
    565 F.3d 1106 (9th Cir. 2009) ..................................................................... 4, 9

*Pintos v. Pacific Creditors Association,*
    605 F.3d 665 (9th Cir. 2010) .................................................................*passim*

*Poulos v. Caesars World, Inc.,*
    2002 WL 1991180 (D. Nev. June 25, 2002) ..................................................... 20

*Powerex Corp. v. Reliant Energy Servs., Inc.,*
    551 U.S. 224 (2007) ............................................................................ 23, 24

*Rivero v. City & Cnty. of S.F.,*
    316 F.3d 857 (9th Cir. 2002) ....................................................................... 13

*Rowden v. Pac. Parking Sys., Inc.*,
   282 F.R.D. 581 (C.D. Cal. 2012) .......................................................... 18, 20, 21

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007) ...................................................................................... *passim*

*Schneider v. Unum Life Ins. Co. of Am.*,
   2008 WL 1995459 (D. Or. May 6, 2008) .......................................................... 22

*Smith v. Dep't of Human Servs.*,
   876 F.2d 832 (10th Cir. 1989)........................................................................... 24

*Stergiopolous v. First Midwest Bancorp, Inc.*,
   427 F.3d 1043 (7th Cir. 2005)...................................................................... *passim*

*Talbott v. GC Servs. Ltd. P'ship*,
   191 F.R.D. 99 (W.D. Va. 2000) ........................................................................ 19

*Thompson v. Am. Tobacco Co.*,
   189 F.R.D. 544 (D. Minn. 1999) ................................................................. 17, 19

*United States v. Hoflin*,
   880 F.2d 1033 (9th Cir. 1989)........................................................................... 23

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) ............................................................................ 19

*Villa v. United Site Services of Cal., Inc.*,
   2012 WL 5503550 (N.D. Cal. Nov. 13, 2012)................................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ...................................................................................... 17

*Wedbush, Noble, Cooke, Inc. v. SEC*,
   714 F.2d 923 (9th Cir. 1983)................................................................. 10, 11, 12

*Weigele v. FedEx Ground Package Sys., Inc.*,
   267 F.R.D. 614 (S.D. Cal. 2010)....................................................................... 20

*Wilborn v. Dun & Bradstreet Corp.*,
   180 F.R.D. 347 (N.D. Ill. 1998) ....................................................................... 22

*Williams v. Williams*,
   2012 WL 1094351 (N.D. Cal. Mar. 29, 2012)..................................................... 6

*Wolin v. Jaguar Land Rover N. Am., LLC*,
   617 F.3d 1168 (9th Cir. 2010)........................................................................... 20

*Wolph v. Acer Am. Corp.*,
   272 F.R.D. 477 (N.D. Cal. 2011) ...................................................................... 18

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001)........................................................................ 19

**STATUTES**

15 U.S.C. § 1681a .......................................................................................... 23

15 U.S.C. § 1681b .................................................................................... *passim*

15 U.S.C. § 1681c-2 ....................................................................................... 24

15 U.S.C. § 1681d .......................................................................................... 24

15 U.S.C. § 1681e ..................................................................................... 3, 24

15 U.S.C. § 1681g .................................................................................... 24, 24

15 U.S.C. § 1681h .......................................................................................... 24

15 U.S.C. § 1681i ........................................................................................... 24

15 U.S.C. § 1681j ........................................................................................... 24

15 U.S.C. § 1681k .......................................................................................... 24

15 U.S.C. § 1681m .......................................................................................... 24

15 U.S.C. § 1681n ............................................................................ 21, 23, 24

15 U.S.C. § 1681o ............................................................................................. 5

Fair and Accurate Credit Transactions Act of 2003, Pub. L. No. 108-159,
   111 Stat. 1952 (2004)..................................................................................... 9

**OTHER AUTHORITIES**

American Heritage Dictionary of the English Language (4th ed. 2000) ..................... 15

Thomas H. Dupree, Jr., *Punitive Damages and the Constitution*, 70 La. L. Rev. 421
   (2010) .......................................................................................................... 7

Fed. R. App. P. 41 .......................................................................................... 11

Fed. R. Civ. P. 23 ..................................................................................... *passim*

Merriam-Webster's Collegiate Dictionary (10th ed. 1994) ...................................... 23

Webster's College Dictionary (2d ed. 1999)......................................................... 15

1

**NOTICE OF MOTION AND MOTION**

2        PLEASE TAKE NOTICE that on April 11, 2013, at 2:00 PM, or as soon thereafter as the

3   matter may be heard, in the courtroom of the Honorable Claudia Wilken, defendant Experian

4   Information Solutions, Inc. ("Experian") will bring on for hearing its motion for summary

5   judgment and to decertify the class.

6        Pursuant to Fed. R. Civ. P. 56, Experian seeks summary judgment on all claims alleging

7   that, before June 1, 2010, Experian willfully violated 15 U.S.C. §§ 1681b, 1681e(a), as construed

8   in *Pintos v. Pacific Creditors Association*, 605 F.3d 665 (9th Cir. 2010).  Experian also seeks

9   summary judgment on Plaintiff Roane Holman's claim, because his towing debt is consumer-

10  initiated.  Pursuant to Fed. R. Civ. P. 23(c)(1)(C), Experian also seeks to decertify the class or,

11  alternatively, to exclude from the class consumers who lack standing due to bankruptcy or death.

12       This motion is based on this Notice of Motion and Motion, the Memorandum of Points

13  and Authorities, the Declarations of Patricia Finneran and Michael G. Morgan, all papers,

14  records, and documents on file, and such further evidence and argument presented at the hearing.

15

**MEMORANDUM OF POINTS AND AUTHORITIES**

16  **I.    INTRODUCTION**

17       The theory of liability advanced by Plaintiffs Roane Holman, Narcisco Navarro

18  Hernandez, and Miguel Alvarez ("Plaintiffs") in this case is legally defective in at least three

19  ways.  These flaws fatally undermine Plaintiffs' ability to recover damages for both themselves

20  and the certified class under the Fair Credit Reporting Act ("FCRA") rule announced in *Pintos*.

21       <u>First</u>, because Plaintiffs argue only that Experian *willfully* violated *Pintos*, they must prove

22  that Experian's conduct was "objectively unreasonable" "in light of legal rules that were 'clearly

23  established' at the time." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 (2007) (citing *Saucier v.*

24  *Katz*, 533 U.S. 194, 202 (2001)).  But *Pintos* did not become "clearly established" before June 1,

25  2010, when the case's mandate issued.  Although this Court disagreed when denying Experian's

26  motion to dismiss (reasoning that a decision is final once published, even if it may still be

27  revised), the Supreme Court subsequently clarified—in the context of qualified immunity, from

28  which *Safeco* borrows its standard, and to which courts have looked when applying *Safeco*—that

EXPERIAN'S MOTION FOR
SUMMARY JUDGMENT

1  a legal rule is "clearly established" only when it is "beyond debate." *Ashcroft v. al-Kidd*, 131 S.

2  Ct. 2074, 2083 (2011). This recent, binding guidance warrants summary judgment on the claims

3  of Plaintiff Roane Holman and all other class members whose *Pintos* claims arose before June 1,

4  2010. Although a decision may be final for some (or even most) purposes the moment it is

5  published, its holding cannot be said to be "beyond debate" before the case's mandate.

6       *Pintos* itself illustrates this point. The Ninth Circuit vigorously debated the case before

7  the mandate issued, revising the opinion multiple times, requesting several extra briefs, and

8  nearly reviewing the case en banc. Indeed, when en banc review was denied, seven judges

9  dissented because they disagreed with the panel majority's ruling—much like in *al-Kidd*, where

10  the Supreme Court found that the rule in question could not have been "clearly established" when

11  "eight Court of Appeals judges" (dissenting from a similar denial) thought the defendant broke no

12  rules. *Id.* at 2085. Moreover, we now know that conduct described as unlawful in the initial,

13  withdrawn *Pintos* opinion was actually lawful at all times. Thus, it is beyond dispute that the

14  superseded opinions in *Pintos* were not clearly established. Before June 1, 2010, the exact

15  contours of the final *Pintos* decision were very much under debate.

16       <u>Second</u>, Holman's claim also fails because his towing debt "result[ed] from a transaction

17  initiated by" him, undermining his ability to recover under *Pintos*. 605 F.3d at 676. Holman's

18  car was towed by the police after he was stopped for drunk driving and ran from it. Moreover,

19  Holman testified that he knew before getting into his car that it would be towed if the police

20  caught him. His circumstances are thus a far cry from those considered in *Pintos*, where the

21  plaintiff received a towing bill *only* because she "owned the car that was towed." *Id.* at 675. Ms.

22  Pintos had neither driven nor parked that car illegally and, indeed, even disputed that she owned

23  it. Her towing debt was not consumer-initiated because she "was obliged to become associated

24  with" the transaction only "*after* . . . the [debt] arose." *Id.* at 676 (emphasis added). Here, in

25  contrast, Holman was "a *participant* in the [towing] transaction." *Id.* at 675-76 (emphasis added).

26       Although Plaintiffs believe Holman nonetheless has an FCRA claim because he did not

27  directly ask for his car to be towed, Plaintiffs' position does violence to the Ninth Circuit's

28  careful language in *Pintos*. The court's final opinion excludes those with consumer-*initiated* (not

-- 2 --

1    just consumer-requested) tows.  Holman has no claim under the case as properly read.

2          Third, Plaintiffs can secure a judgment for the class only if over 36,000 consumers testify

3    about their towing debts.  Plaintiffs have never cited, and Experian has not located, a *single* case

4    allowing a class action to proceed in such circumstances.  Only with this voluminous live

5    testimony can a jury decide that each consumer's towing debt is neither consumer-initiated nor

6    judicially established, as 15 U.S.C. § 1681b(a)(3)(A) requires under *Pintos*.  No other admissible

7    evidence exists for this element of liability, which doubles as the test for class membership.  The

8    inevitability of this years-long, consumer-by-consumer process undermines the class's

9    ascertainability, predominance, and superiority.  The class should accordingly be decertified.

10         Should this Court disagree, it should at least amend the class definition to exclude

11   consumers who lack standing due to bankruptcy, or who die before their claims are adjudicated.

12   At least 611 potential class members filed for bankruptcy after their claims accrued; these

13   consumers have presumptively lost standing.  Also, at least 947 potential class members have

14   died; under the FCRA's text, these and any other consumers who die have no claim.

15   **II.     STATEMENT OF FACTS**

16         **A.     Plaintiffs' Claims**

17         On behalf of 36,387 potential class members, Plaintiffs claim that Experian violated the

18   FCRA by providing their Experian Collection Advantage reports to the collection agency Finex

19   Group LLC ("Finex").[1]  The FCRA allows consumer reporting agencies ("CRAs") like Experian

20   to communicate credit reports (called "consumer reports") only for those purposes listed in the

21   statute.  *See* 15 U.S.C. § 1681b.  The Act imposes liability when CRAs do not reasonably guard

22   against parties obtaining reports for other, impermissible purposes.  *See* 15 U.S.C. § 1681e(a).

23         The permissible purpose at issue here exists (in relevant part) when a party "intends to use

24   the information in connection with a credit transaction involving the consumer."  15 U.S.C.

25   § 1681b(a)(3)(A).  Finex obtained Plaintiffs' credit information "in connection with" their

26   delinquent towing debts.  *Id.*  Plaintiffs contend, however, that their debts were not "credit

---

27         [1] A Collection Advantage report is intended to predict whether a consumer will pay a

28   delinquent debt, and also distills that probability into an Experian Recovery Score.  The reports at issue do not contain consumers' complete credit histories, as are present in typical credit reports.

1    transaction[s] involving the consumer," as § 1681b(a)(3)(A) requires.  *Id.*

2           Until recently, Plaintiffs' claim would have been a non-starter.  In *Hasbun v. County of*

3    *Los Angeles*, the Ninth Circuit held that § 1681b(a)(3)(A) unequivocally allowed parties to obtain

4    "a consumer report to assist them in collecting a debt," as Finex did here.  323 F.3d 801, 803 (9th

5    Cir. 2003).  But in *Pintos*, the Ninth Circuit ultimately narrowed § 1681b(a)(3)(A) to now require

6    "a debt" that either (1) "result[ed] from a transaction initiated by" the consumer, or (2) "has been

7    judicially established."  605 F.3d at 676.

8           The *Pintos* ruling sat in flux for years.  On September 21, 2007, the Ninth Circuit issued

9    an initial opinion limiting *Hasbun*'s interpretation of § 1681b(a)(3)(A) through new, inapplicable

10   statutory language that no party had raised.  *See* 504 F.3d 792 (9th Cir. 2007).  In a petition for

11   rehearing, Experian (a defendant in the case) promptly pointed out the error.  On April 30, 2009,

12   the Ninth Circuit replaced its first opinion with a new one containing different reasoning.  *See* 565

13   F.3d 1106 (9th Cir. 2009).  But the court was still not finished.  After Experian again sought

14   rehearing, the court first requested a response to the petition, and then further asked the parties to

15   brief new issues, confirming that the case's final result was in doubt.  On May 21, 2010, the Ninth

16   Circuit finally denied rehearing en banc, over a seven-judge dissent; in response to the dissenters,

17   the panel majority amended its opinion once more.  *See* 605 F.3d 665.  Finally, on June 1, 2010,

18   the *Pintos* decision took effect with the case's mandate.  On January 10, 2011, the Supreme Court

19   declined to hear the case.  Two days later, Holman filed this action.  *See* Dkt. 1.

20          Plaintiffs argue that § 1681b(a)(3)(A), as narrowed in *Pintos*, did not permit Finex to

21   obtain their consumer reports, because their towing debts are neither consumer-initiated nor

22   judicially established.  Holman's car was towed by the police after he was stopped for drunk

23   driving and ran from it; Navarro and Alvarez each claims to have sold his car before it was towed.

24   *See, e.g.*, Decl. of M. Morgan, Ex. 1 ("Holman Dep.") at 40:8-41:8, 47:13-49:10; *id.* at Ex. 2 at

25   37:2-38:7; *id.* at Ex. 3 at 22:18-23:5, 35:14-19.  Plaintiffs further contend that Experian did not

26   reasonably ensure Finex's compliance with *Pintos*.  Finex obtained Holman's report on

27   September 14, 2009 (while *Pintos* was still before the Ninth Circuit), Alvarez's report on June 29,

28   2010, and Navarro's report on September 1, 2010.  *See* Dkt. 59 ¶¶ 15-17.  Experian need only

1    have acted negligently for Plaintiffs to receive actual damages.  *See* 15 U.S.C. § 1681o.  But

2    notably, Plaintiffs claim only that Experian violated the FCRA willfully.  *See* Dkt. 59 ¶ 31.

3    **B.      Procedural History and Case Status**

4        On March 11, 2011, Experian moved to dismiss Holman's claim.  The motion argued that

5    Experian could not have willfully violated *Pintos*'s new rule when providing Holman's report to

6    Finex in September 2009, because that rule was not clearly established at the time.  *See* Dkt. 11 at

7    5-15.  On May 25, 2011, this Court denied the motion, reasoning that—in part because the second

8    *Pintos* opinion had already been published—"Experian was not operating with a blank slate when

9    it furnished [Holman's] credit report in September 2009."  Dkt. 32 at 7.

10       On April 27, 2012, this Court granted Plaintiffs' motion for class certification.  *See* Dkt.

11   138.  The class consists of "all consumers whose consumer reports were furnished by Experian to

12   Finex from January 12, 2009 to the present in connection with Finex's efforts to collect on a

13   towing deficiency claim that"—mirroring the rule announced in *Pintos*—"was not reduced to a

14   judgment and was not the result of a transaction that the consumer initiated."  Dkt. 146 at 1.  The

15   parties "dispute[d] whether it will be administratively feasible to exclude individuals with

16   consumer-initiated tows or judicially-established debts" from the class.  Dkt. 138 at 18.  But the

17   Court found this issue not to preclude certification, because the "individual determinations

18   regarding these factors . . . are both limited and discrete inquiries."  *Id.*

19       It is unclear how Plaintiffs intend to prove which of the 36,387 potential class members—

20   who all simply have delinquent debts that Finex may have collected—are in fact actual class

21   members with towing debts that are neither consumer-initiated nor judicially established.  Expert

22   evidence suggests that at least 25-30% of the debts will be consumer-initiated.  Decl. of J.

23   Enriquez (Dkt. 87) ¶ 8.  Plaintiffs have proposed using Finex's files on these individuals (which

24   exceed 100,000 pages) to establish the circumstances of each consumer's towing debt.  *See* Dkt.

25   164 at 3-5.  But these documents (often prepared by third parties) are unauthenticated, contain

26   layers of hearsay, and in any event say virtually nothing about who is in the class.  Indeed, this

27   Court has criticized Plaintiffs' plan as "horrible," and "a huge waste of time."  7/25/12 Hearing

28   Tr. at 4:19.

EXPERIAN'S MOTION FOR
                                                                      SUMMARY JUDGMENT

1    Despite doubting the utility of the Finex documents, the Court has not yet decided how the

2    class's membership will be determined—which, because the class definition tracks the *Pintos*

3    rule, will also adjudicate the predicate § 1681b(a)(3)(A) violation that is a necessary element of

4    Experian's liability.  But live testimony from each potential member appears inevitable,

5    particularly with no other source of admissible evidence on this issue.  When acknowledging as

6    much, the Court estimated this process would demand roughly ten minutes of testimony from

7    each of the 36,387 potential class members.  *See* 12/5/12 Hearing Tr. at 3:4-7.

8    The Court intends, however, to first address the common elements of liability, regarding

9    the propriety of Experian's furnishing of consumer reports to Finex.  *See id.* at 2:18-25.  In light

10   of that issue's many disputed questions of fact, Experian seeks class-wide summary judgment

11   only on the basis that the rule announced in *Pintos* could not have been willfully violated before

12   the case's judgment took effect on June 1, 2010.

13   **III.    LEGAL STANDARD**

14   Summary judgment is proper when "there is 'no genuine issue as to any material fact and

15   . . . the moving party is entitled to judgment as a matter of law.'"  *Williams v. Williams*, 2012 WL

16   1094351, at *2 (N.D. Cal. Mar. 29, 2012).  "Material facts which would preclude entry of

17   summary judgment are those which, under applicable substantive law, may affect the outcome of

18   the case."  *Mendez v. R+L Carriers, Inc.*, 2012 WL 5868973, at *2 (N.D. Cal. Nov. 19, 2012).

19   **IV.    ARGUMENT**

20   **A.    The New Rule Announced in *Pintos* Did Not Become Clearly Established—**
     **and Thus Could Not Have Been Willfully Violated—Before June 1, 2010.**

21

22   **1.    *Safeco* Permits Considering Only Those FCRA Rules That Were**
        **Clearly Established When the Defendant Acted.**

23   Because Plaintiffs claim that Experian not negligently but *willfully* violated the FCRA rule

24   announced in *Pintos*, their claim must satisfy *Safeco*.  In *Safeco*, the Supreme Court held that a

25   defendant can violate the FCRA willfully only with a "reading of the statute" that is not just

26   incorrect but "objectively unreasonable."  551 U.S. at 69.[2]  A defendant's conduct is "objectively

_____

[2] Even with an "objectively unreasonable" position, the defendant must also have "r[u]n a
risk of violating the law substantially greater than the risk associated with a reading that was
merely careless" in order to violate the FCRA willfully.  *Safeco*, 551 U.S. at 69.

1     unreasonable" only when it is clearly unlawful, because it conflicts either with "pellucid statutory

2     text" or "authoritative guidance" from the courts of appeals or the FTC.  *Id.* at 70.  Put another

3     way, a defendant whose position "could have reasonably found support in the courts" cannot have

4     willfully violated the FCRA.  *Id.* at 70 n.20.  Whether a defendant adopted an "objectively

5     unreasonable" position is a threshold question of law that can be resolved on summary judgment.

6     *See, e.g.*, *Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318-19 (11th Cir. 2009).

7         When introducing this standard to the FCRA, the *Safeco* Court analogized it to the

8     standard for qualified immunity, which similarly requires "assessing . . . whether an action was

9     reasonable in light of legal rules that were 'clearly established' at the time."  551 U.S. at 70

10    (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).  Courts have accordingly sought guidance

11    from qualified immunity cases when applying *Safeco* to FCRA claims.  *See In re Farmers Ins.*

12    *Co. FCRA Litig.*, 2008 WL 687085, at *1 (W.D. Okla. Mar. 10, 2008).[3]  And though there is not

13    yet authority elaborating on exactly when a new rule becomes "clearly established" under *Safeco*,

14    the question has long been relevant to qualified immunity.  *See, e.g.*, *Anderson v. Creighton*, 483

15    U.S. 635, 640 (1987).  In that context, the Supreme Court recently clarified—after this Court

16    denied Experian's motion to dismiss—that "existing precedent must have placed the [relevant

17    rule] *beyond debate*."  *al-Kidd*, 131 S. Ct. at 2083 (emphasis added); *accord, e.g.*, *Acosta v. City*

18    *of Costa Mesa*, 694 F.3d 960, 981 (9th Cir. 2012) (quoting *id.*); *Padilla v. Yoo*, 678 F.3d 748,

19    750, 763 (9th Cir. 2012) (same).

20         Thus, in *al-Kidd*, the Supreme Court reversed the Ninth Circuit's decision that the

21    defendant was not entitled to qualified immunity for an alleged Fourth Amendment violation.  *See*

22    131 S. Ct. at 2085.  Like in *Pintos*, the Ninth Circuit had decided the case by a 2-1 vote, splitting

23    on the merits of the relevant rule (along with whether it was clearly established).  *See al-Kidd v.*

24    *Ashcroft*, 580 F.3d 949, 981 (9th Cir. 2009) (Bea, J., dissenting); 131 S. Ct. at 2080 (citing *id.*).

25    Also similarly to *Pintos*, the circuit had denied en banc review, with eight judges dissenting to

26    argue that the defendant had not violated the law.  *See al-Kidd v. Ashcroft*, 598 F.3d 1129, 1137,

27          [3] Commentators have also recognized the relationship between the *Safeco* and qualified
immunity standards.  *See, e.g.*, Thomas H. Dupree, Jr., *Punitive Damages and the Constitution*,
28    70 La. L. Rev. 421, 431 (2010).

EXPERIAN'S MOTION FOR
SUMMARY JUDGMENT

1   1142 (9th Cir. 2010); 131 S. Ct. at 2080 (citing *id.*).  When reversing the circuit, the Supreme

2   Court explained that the defendant could not have violated a rule that was "clearly established"

3   when "eight Court of Appeals judges agreed with his judgment," 131 S. Ct. at 2085—echoing

4   *Safeco*'s point that willful FCRA liability cannot attach to conduct that "could have reasonably

5   found support in the courts," 551 U.S. at 71 n.20.  The Court, moreover, rebuked the lower courts,

6   "and the Ninth Circuit in particular," for finding rules to be "clearly established" too easily, by

7   "defin[ing]" them "at a high level of generality."  131 S. Ct. at 2084.

8        *Safeco*'s focus on only clearly established FCRA rules also requires, of course,

9   considering only those rules that were clearly established when the defendant acted.  *See* 551 U.S.

10  at 70.  Subsequent "authoritative guidance" that places an FCRA question "beyond debate" going

11  forward cannot "clearly establish" the relevant rule retroactively.  *Id.*; *al-Kidd*, 131 S. Ct. at 2083;

12  *see also, e.g.*, *Murray v. New Cingular Wireless Servs., Inc.*, 523 F.3d 719, 726 (7th Cir. 2008).[4]

13        **2.    The Rule Announced in *Pintos* Was in Flux Before June 1, 2010.**

14        As noted above, the Ninth Circuit in *Pintos* took years to effect the standard giving rise to

15  Plaintiffs' claims.  Ms. Pintos argued that § 1681b(a)(3)(A) precluded her consumer report from

16  being used in the collection of her towing debt.  *See Pintos v. Pac. Creditors Ass'n*, 2004 U.S.

17  Dist. LEXIS 27419, at *7 (N.D. Cal. Nov. 9, 2004).  The district court—this Court—disagreed.

18        Following *Hasbun*—which, as noted, flatly allowed creditors to use "a consumer report to

19  assist them in collecting a debt," 323 F.3d at 803—this Court held that, under "settled law in the

20  Ninth Circuit," § 1681b(a)(3)(A) allowed a collection agency to access Ms. Pintos's credit report.

21  2004 U.S. Dist. LEXIS 27419, at *7.  Ms. Pintos appealed in December 2004, and nearly six

22  years of litigation in the Ninth Circuit followed.

23        The Ninth Circuit's first opinion (from 2007) acknowledged that, under *Hasbun*, "debt

24  collection was generally a permissible purpose for obtaining credit reports under

25  § 1681b(a)(3)(A)," and thus this Court's "reading of *Hasbun* was not unreasonable."  504 F.3d at

26  796, 799.  But the court opined that *Hasbun* "must be reevaluated in light of" the Fair and

27

28        [4] Subjective intent is similarly irrelevant under *Safeco*.  *See* 551 U.S. at 70 n.20; *see also, e.g.*, *Levine*, 554 F.3d at 1319; *Murray*, 523 F.3d at 726-27.

EXPERIAN'S MOTION FOR
SUMMARY JUDGMENT

Accurate Credit Transactions Act of 2003 ("FACTA"),[5] which amended the FCRA, because *Hasbun*'s "pre-FACTA interpretation [wa]s no longer persuasive." *Id.* at 799-800.  In light of FACTA, the court held that § 1681b(a)(3)(A) no longer allowed consumer reports to be used for all debt collection, but instead now covered the collection of only those debts where "the consumer directly participates and voluntarily seeks credit."  *Id.* at 798-99.  This rule made no exception for debts confirmed in court and, indeed, the court indicated that pre-FACTA authorities permitting "judgment creditors" to use consumer reports were now "unpersuasive." *Id.* at 799-800 & n.4.  Having invoked FACTA *sua sponte*, however, the court did not realize that the legislation was enacted and effective *after* the events at issue in *Pintos*.

Experian petitioned for rehearing, pointing out (in part) that FACTA could not retroactively apply to the case.  In response, on April 30, 2009, the Ninth Circuit withdrew its initial *Pintos* opinion, and issued a new opinion with revised reasoning.  *See* 565 F.3d 1106. Though this second opinion still narrowed *Hasbun*, it did so differently.  Revoking the short-lived requirement that the consumer have "directly participate[d] and voluntarily" sought the debt being collected, 504 F.3d at 798-99, and reversing the court's stance on judgment creditors, *see id.* at 799-800 & n.4, the court construed § 1681b(a)(3)(A) to now more broadly cover debt that either (1) resulted from a transaction the consumer *initiated* or (2) had been confirmed by a court. 565 F.3d at 1113-14.[6]  Because Ms. Pintos "bec[a]me associated with" her debt only "after her car was towed," the court ruled in her favor.  *Id.* at 1113.  Judge Bea dissented, arguing that this second opinion conflicted with *Hasbun* and erred on the merits.  *See id.* at 1117-18.

On May 21, 2009, Experian petitioned for rehearing or rehearing en banc of the second *Pintos* opinion.  On June 15, 2009, the Ninth Circuit ordered Ms. Pintos to respond to the petition. And on October 23, 2009, the Ninth Circuit asked the parties to brief additional issues, confirming that the case's result had not yet been decided.

Finally, on May 21, 2010, the Ninth Circuit denied rehearing en banc.  *See* 605 F.3d 665. Writing for seven dissenters, Chief Judge Kozinski detailed how the panel "flunk[ed] Statutory

---

[5] *See* Pub. L. No. 108-159, 111 Stat. 1952 (2004).

[6] The Ninth Circuit thus changed both its reasoning and its holding.  Only the case's determination with respect to Ms. Pintos stayed the same.

Interpretation 101" by grafting a consumer-initiation requirement onto § 1681b(a)(3)(A). *Id.* at 672. In response, also on May 21, 2010, the panel majority changed its opinion for a last time, to explain that the dissenters had "not persuaded us to change our opinion." *Id.* at 670, 676 n.2.

On June 1, 2010, the Ninth Circuit issued the case's mandate, which stated that "[t]he judgment of this Court, entered on April 30, 2009, takes effect this date." June 1, 2010 Order (9th Cir. No. 04-17485). On January 10, 2011, the Supreme Court denied certiorari in *Pintos*.

### 3. A Case Cannot "Clearly Establish" the Law Before Its Mandate Issues, Even If It Might Become Final Earlier for Other Purposes.

In its motion to dismiss, Experian argued that it could not have willfully violated the rule announced in *Pintos* any earlier than June 1, 2010, when the case's mandate issued. *See* Dkt. 11 at 8-15. In denying that motion (which Experian will not simply rehash), this Court made two points. Notably, the Court analyzed this issue before the Supreme Court clarified that a rule is not "clearly established" unless it is "beyond debate." *al-Kidd*, 131 S. Ct. at 2083.

First, this Court explained that, under *Wedbush, Noble, Cooke, Inc. v. SEC*, 714 F.2d 923, 924 (9th Cir. 1983), "once precedential decisions are published, they are binding for the purposes of stare decisis." Dkt. 32 at 6; *see also Wedbush*, 714 F.2d at 924 (stating that, "even though the mandate has not yet issued," decision was "final for such purposes as stare decisis, and full faith and credit"). And second, this Court pointed to *Stergiopolous v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1047 (7th Cir. 2005), in which the Seventh Circuit remarked "that, under section 1681b(a)(3)(A), a consumer's credit report may be furnished only if the consumer initiated the transction." Dkt. 32 at 7. This Court accordingly reasoned that, in light of the "April 2009 *Pintos* decision and the Seventh Circuit's decision in *Stergiopolous*," "Experian was not operating with a blank slate when it furnished Plaintiff [Holman]'s credit report in September 2009." *Id.*

Under *Safeco*, however, the question is not whether Experian was "operating with a blank slate," *id.*, but rather whether Experian violated "legal rules that were 'clearly established' at the time." 551 U.S. at 70 (quoting *Saucier*, 533 U.S. at 202); *see also, e.g., Murray v. GMAC Mortg. Corp.*, 532 F. Supp. 2d 938, 944 (N.D. Ill. 2007) ("[W]hile it cannot be said that the instant matter involves the same 'dearth of guidance' as was found in *Safeco*, it nonetheless cannot be said that

1   the legal rules were 'clearly established.'"), *aff'd*, 274 F. App'x 489 (7th Cir. 2008).  Neither the

2   older *Pintos* decisions (before the judgment "took effect" with the mandate) nor *Stergiopolous*

3   "clearly established" the FCRA rule at issue, by placing it "beyond debate" in this circuit.[7]

4         To be sure, as this Court noted, *Wedbush* states that decisions have a degree of finality

5   instantly upon publication, even before the mandate issues.  *See* 714 F.2d at 924.  But as per

6   *Wedbush*, this finality is only "*for such purposes* as stare decisis, and full faith and credit."  *Id.*

7   (emphasis added).  *Wedbush* does *not* state that merely publishing a decision "*clearly establishes*"

8   the law, when that decision—even if entitled to immediate respect from other courts, via stare

9   decisis and full faith and credit—can still be revoked or revised.  Nor does such a view comport

10   with the recent, binding authority emphasizing that a rule becomes "clearly established" only

11   when it is "*beyond debate*."  *al-Kidd*, 131 S. Ct. at 2083 (emphasis added); *accord Acosta*, 694

12   F.3d at 981; *Padilla*, 678 F.3d at 750, 763.  A decision can be entitled to "stare decisis, and full

13   faith and credit," *Wedbush*, 714 F.2d at 924, well before it places a legal question "beyond

14   debate."  *Cf. Butros v. INS*, 990 F.2d 1142, 1145 (9th Cir. 1993) (en banc) (stating, in

15   immigration context, that "there can be no pretense of anything so simple as one all-embracing

16   notion of finality," when agency "may reconsider or reopen the case").

17         Indeed, the Ninth Circuit has underscored that its opinions are not "beyond debate" until a

18   case's mandate issues.  Until then, "opinions can be, and regularly are, amended or withdrawn, by

19   the merits panel at the request of the parties pursuant to a petition for panel rehearing, in response

20   to an internal memorandum from another member of the court who believes that some part of the

21   published opinion is in error, or sua sponte by the panel itself."  *Carver v. Lehman*, 558 F.3d 869,

22   878-79 (9th Cir. 2009).  "Thus, until the mandate issues, an opinion is not fixed as 'settled Ninth

23   Circuit law,' and reliance on the opinion is a 'gamble.'"  *Id.* at 878 n.16 (quoting *United States v.*

24   *Ruiz*, 935 F.2d 1033, 1037 (9th Cir. 1991)); *see also, e.g.*, Fed. R. App. P. 41 advisory comm.

25   notes ("A court of appeals' judgment or order is not final until issuance of the mandate; at that

26   time the parties' obligations become fixed.").  Indeed, a main purpose of publishing an opinion

27          [7] Although this Court focused on the April 2009 *Pintos* opinion when deciding the motion

28   to dismiss, *see* Dkt. 32 at 7, it suggested when certifying the class that the withdrawn September 2007 opinion similarly clearly established the law.  *See* Dkt. 138 at 23-24.

EXPERIAN'S MOTION FOR
SUMMARY JUDGMENT

1   before it "takes effect" with the mandate is to allow the parties to raise objections and the court's

2   other judges to weigh in, in a "collaborative process" that "strengthens" the "final quality of those

3   opinions, thereby better enabling them to stand the test of time." *Carver*, 558 F.3d at 879.

4   Although an appellate opinion may provide "authoritative guidance" that places a question

5   "beyond debate" *after* this process is over and the mandate has issued, it cannot do so beforehand,

6   when the debate is still ongoing. *Safeco*, 551 U.S. at 70; *al-Kidd*, 131 S. Ct. at 2083.

7       To be clear, then, Experian's position here is not inconsistent with *Wedbush*. Experian

8   agrees with this Court that *Carver* "did not silently overrule *Wedbush*, nor could it." Dkt. 32 at 6.

9   For the point at which a decision can clearly establish the law by becoming "enshrined as a

10   binding construction," *Carver*, 558 F.3d at 879, is crucially different from the date when that

11   decision becomes "final for such purposes as stare decisis, and full faith and credit," *Wedbush*,

12   714 F.2d at 924. The former, not the latter, is relevant under *Safeco*. *See* 551 U.S. at 70.[8] And as

13   *Pintos*'s history shows, before June 1, 2010, the case's rule was nowhere near "beyond debate,"

14   as the court was actively revising and debating its holding. *See supra* pgs. 8-10.

15       Indeed, when no fewer than *seven* Ninth Circuit judges vehemently disagreed with *Pintos*,

16   conduct inconsistent with the decision certainly "could have reasonably found support in the

17   courts" while the case was still pending. *Id.* at 71 n.20; *see also, e.g.*, *al-Kidd*, 131 S. Ct. at 2085

18   (explaining that a defendant cannot have violated clearly established law when "eight Court of

19   Appeals judges agreed with his judgment in a case of first impression"). If just one more of these

20   judges had been randomly reassigned to the *Pintos* panel (to join Judge Bea), the case would have

21   come out differently. *See Carver*, 558 F.3d at 878-79. As a result, *Pintos* could not have clearly

22   established the FCRA rule at issue any earlier than June 1, 2010, when its mandate issued and the

23   Ninth Circuit ceased its work on the case.

24       Nor did *Stergiopolous* clearly establish the relevant law. Even if *Stergiopolous* created a

25   consumer-initiation requirement in the Seventh Circuit in 2005 (and it did not),[9] *Hasbun* was then

---

26   [8] In most cases—but not *Pintos*—this distinction will matter little, because the mandate
27   will issue quickly. *See* Fed. R. App. P. 41(b) (indicating mandate presumptively issues within 21
    days of opinion's publication).

28   [9] On its face, *Stergiopoulos* has no relevance whatsoever to debt collection. The case
    concerned plaintiffs who "sought financing for their new cars," and sued a third-party lender that

EXPERIAN'S MOTION FOR
                                                                                 SUMMARY JUDGMENT

1    still controlling authority in the Ninth Circuit, and lacked any such gloss on § 1681b(a)(3)(A) for

2    debt collection.  As noted, *Hasbun* permitted credit reports to be used for *all* debt collection,

3    regardless of who initiated the debt.  *See* 323 F.3d at 803.  In light of *Hasbun*, *Stergiopolous*

4    cannot have provided the "authoritative guidance" that *Safeco* requires.  *See, e.g.*, *Rivero v. City

5    & Cnty. of S.F.*, 316 F.3d 857, 865 (9th Cir. 2002) (explaining, with qualified immunity, focus on

6    whether "controlling authority" clearly established the law "in this circuit").

7        In short, then, Experian cannot have *willfully* violated the rule announced in *Pintos* any

8    earlier than June 1, 2010.  Before then, nothing even arguably clearly established a prohibition on

9    using consumer reports to collect debts like those at issue here.  *See* Dkt. 11 at 11-14.  And as a

10   result, summary judgment is warranted on the claims of Plaintiff Roane Holman and all other

11   class members whose *Pintos* claims arose before June 1, 2010.[10]

12       **B.    Plaintiff Holman's Claim Fails as a Matter of Law, Because His Towing Debt
             Is Consumer-Initiated.**

13       Separate from the class-wide problems discussed above, Holman's individual claim also

14   fails because his debt "result[ed] from a transaction initiated by" him.  *Pintos*, 605 F.3d at 676.

15       As noted, the consumer-initiation requirement is a gloss on the statutory need for "a credit

16   transaction involving the consumer."  § 1681b(a)(3)(A).  In *Pintos*, the Ninth Circuit found no

17   such transaction when the police "found a sport utility vehicle belonging to Pintos parked on the

18   street" with expired registration and then had the car towed.  605 F.3d at 673.  Ms. Pintos had not

19   herself parked or driven the car illegally;[11] her *only* connection to the towing was that she "owned

20

21   (continued…)

22   had obtained their credit reports during the plaintiffs' "search for credit."  427 F.3d at 1047.  The
     court discussed consumer initiation only in that context, to explain why "[a] third party cannot
23   troll for reports."  *Id.*  This "trolling" concern is inapposite in the collection context, where there
     are preexisting consumer debts.

24   [10] *Pintos* remained under debate until January 10, 2011, when the Supreme Court denied
     certiorari in the case.  Experian reserves the right to argue that it cannot have willfully violated
25   the case's new rule before that date.

26   [11] Although Judge Bea's *Pintos* dissent suggests that Ms. Pintos *did* park "her car on a
     public street," it merely assumed that fact, instead of supporting it from the record.  *See* 605 F.3d
27   at 680 (Bea, J., dissenting).  The *Pintos* majority neither echoed that assumption nor used it in its
     analysis.  *See id.* at 673-76 (majority op.).  Nor, for that matter, did this Court, whose summary
28   judgment opinion in *Pintos* similarly found only that the police had directed that a car owned (but
     not parked or driven) by Ms. Pintos be towed.  *See* 2004 U.S. Dist. LEXIS 27419, at *2.

the car that was towed." *Id.* at 675.  And even that link was initially unclear:  Ms. Pintos claimed "that the car was owned solely by her son," not her.  2004 U.S. Dist. LEXIS 27419, at *2. Although her non-ownership defense failed, *see id.*, the fact remained that Ms. Pintos "was obliged to become associated with" the credit transaction only "*after* her car was towed and the towing deficiency claim arose," exclusively because she owned the car.  *Pintos*, 605 F.3d at 676 (emphasis added).  The Ninth Circuit accordingly held that Ms. Pintos "did not participate" in the transaction and, thus, was not "involved" in the transaction as the FCRA required.  *Id.* at 675-76.

The circumstances of Holman's towing debt could not be more different.  His car was towed in August 2009 after the police caught him driving while "extremely inebriated."  Holman Dep. at 40:9.  After pulling over, Holman "got out" of his car "and "just took off running."  *Id.* at 40:25-41:3.  The police tackled and arrested Holman, and had his car towed.  *See id.* at 44:18-45:6, 47:13-49:10.  Holman later pled guilty to drunk driving ("DUI").

This was Holman's second DUI conviction.  After his first DUI arrest in 2006, he also "spent the night in jail," and his "car was towed that night as well."  *Id.* at 27:9-10.  So with the 2009 arrest at issue here, Holman admitted that he "knew what was coming," as he had "already been through it."  *Id.* at 40:11-12.  His later testimony made that point crystal clear:

> Q:  [Y]ou knew in 2006 that if you committed another DUI, that you were going to be arrested and your car would be towed; correct?
> A:  Mm-hmm. . . . I did know that, yes.
> Q:  So just to be clear, at the time you were drinking, you knew that if you were to be arrested in that state of intoxication, that you would be arrested and your vehicle would be towed; correct?
> A:  If I was driving, yeah.

*Id.* at 45:23-46:9.  Far, then, from "becom[ing] associated with" the transaction only "after [his] car was towed and the towing deficiency claim arose," merely because he owned the car (like Ms. Pintos), Holman was deeply "involved" with his towing debt.  605 F.3d at 675-76.  He drove drunk knowing his car would be towed if the police caught him, and then ran from it after the police stopped him.  Under any reasonable understanding, Holman's debt is consumer-initiated.

In disagreeing, Plaintiffs have emphasized that Holman did not directly ask for his car to be towed.  But *Pintos* requires a transaction that the consumer *initiated*, not requested.  These two

1   terms cannot be conflated.  A "consumer-requested" transaction suggests only those transactions

2   that are directly sought by the consumer, while a "consumer-initiated" transaction allows for the

3   consumer to be indirectly involved.  *Compare, e.g.*, The American Heritage Dictionary of the

4   English Language 1482 (4th ed. 2000) (defining "request" as "to ask (a person) to do

5   something"), *and id.* at 106 (defining "ask" as "to make a request for"), *with, e.g.*, Webster's

6   College Dictionary 678 (2d ed. 1999) (defining "initiate" as "to begin, set going, or originate").

7   The Ninth Circuit's deliberate choice of the more passive "initiate" cannot be ignored—

8   particularly when, in switching to this standard, the second *Pintos* opinion revoked the first

9   opinion's rule that the consumer more actively have "directly participate[d] and voluntarily

10  [sought] credit."  504 F.3d at 798-99.  Plaintiffs have acted as if the withdrawn 2007 opinion

11  became the law.

12        Besides pretending that *Pintos* uses a verb other than "initiate," Plaintiffs' position is also

13  incompatible with the FCRA's text.  Section 1681b(a)(3)(A) calls for "a credit transaction

14  *involving* the consumer."  The statute's "use of the word 'involved' implies that" there need not

15  be "a predicate credit transaction with the consumer *directly*," because the consumer's link to the

16  debt may be indirect.  *Stergiopoulous*, 427 F.3d at 1046-47 (emphasis added).  Thus, the fact that

17  Ms. Pintos did not directly ask for her car to be towed was besides the point.  She did not

18  "initiate" her towing debt because—as nothing more than the car's absent owner—she did not

19  "participat[e]" in the towing transaction.  *Id.*

20        Of course, a consumer's link to the transaction cannot be entirely passive and still trigger

21  § 1681b(a)(3)(A).  The consumer-initiation requirement "is not satisfied simply because the

22  consumer did something that arguably led to the creditor's claim."  *Pintos*, 605 F.3d at 675.

23  Thus, the mere fact "that Pintos owned the car that was towed did not mean that she initiated the

24  credit transaction."  *Id.*  But as the next sentence of *Pintos* clarifies, this was because Ms. Pintos

25  "was obliged to become associated with [the transaction] *after* her car was towed and the towing

26  deficiency claim arose."  *Id.* at 676 (emphasis added).  Again, she neither drove nor parked the

27  car illegally; she only owned it.  Similarly, as the *Pintos* court noted, the plaintiff in *Andrews v.*

28  *TRW, Inc.*, 225 F.3d 1063, 1067 (9th Cir. 2000), could not be said to have initiated a transaction

caused by an identity thief.  There too, the consumer "was obliged to become associated with" the transaction only "*after* [the debt] arose."  *Pintos*, 605 F.3d at 675 (emphasis added).

But here, Holman "bec[a]me associated with" the towing transaction well *before* the debt arose, *id.* at 676, through voluntary acts, by driving drunk and then running from his car, knowing that it would be towed.  He was "drawn in as *a participant* in the [towing] transaction," *id.* at 675 (emphasis added), and his resulting towing debt is accordingly consumer-initiated.  This warrants summary judgment on his FCRA claim under *Pintos*.

### C.      The Class Should Be Decertified Due to Its Fatal Ascertainability, Predominance, and Superiority Problems.

In addition to seeking summary judgment on the above grounds, Experian also respectfully asks that this Court decertify the class.  "[A] district court's order denying or granting class status is inherently tentative."  *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11 (1978); *see also* Fed. R. Civ. P. 23(c)(1)(C).  "Perhaps the main reason for the tentative nature of class status determinations is that they generally involve considerations that are closely tied to the factual and legal issues of the case."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 633 (9th Cir. 1982).  To that end, a court considering whether to decertify a class "is 'required to consider the nature and range of proof necessary to establish the allegations' in the complaint."  *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000) (quoting *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982)).  Even if a class may initially seem to satisfy Rule 23, the class should be decertified if subsequent developments demonstrate that the case is not fit for class-wide adjudication.

When certifying the class here, this Court acknowledged the dispute over "whether it will be administratively feasible to exclude individuals with consumer-initiated tows or judicially-established debts," given the need for "individual determinations regarding these factors."  Dkt. 138 at 18.  But the Court reasoned that these would be "limited and discrete inquiries."  *Id.*  In the nine months since then, however, the class's unmanageability has come into sharper focus. Allowing this case to continue as a class action would be unprecedented.

Whereas it was previously clear only that each class member's claim presented

1   individualized questions, it is now evident that these questions—which concern an essential

2   element of liability—will demand live testimony from *each* class member, as this Court itself

3   recently acknowledged.  *See* 12/5/12 Hearing Tr. at 3:4-8.  There is no surrogate (from Finex's

4   documents or otherwise) for this crucial evidence on the circumstances of each class member's

5   towing debt.  And no trial plan without testimony from each class member would be consistent

6   with Experian's due process and jury trial rights.  *See, e.g.*, *Marcus v. BMW of N. Am., LLC*, 687

7   F.3d 583, 594 (3d Cir. 2012) ("Forcing [defendants] to accept as true absent persons' declarations

8   that they are members of the class, without further indicia of reliability, would have serious due

9   process implications."); *Greenhaw v. Lubbock Cnty. Beverage Ass'n*, 721 F.2d 1019, 1032-33

10  (5th Cir. 1983) (recognizing defendant's "Seventh Amendment right to cross-examine every

11  member of the class advancing a claim" when there are "disputed questions of fact to be

12  resolved" member by member in order to determine liability); *Thompson v. Am. Tobacco Co.*,

13  189 F.R.D. 544, 554 (D. Minn. 1999) (noting defendants' right "to cross-examine each class

14  member regarding th[e] alleged injury"); *Barnes v. Am. Tobacco Co.*, 176 F.R.D. 479, 500 (E.D.

15  Pa. 1997) (same), *aff'd*, 161 F.3d 127 (3d Cir. 1998).

16          Instead of tackling the many challenges with determining the class's membership (and the

17  corresponding elements of liability), this Court to date has simply punted these issues to a later

18  phase.  *See, e.g.*, 12/5/12 Hearing Tr. at 2:24-25 ("If liability is found at that [first] trial, then we

19  will worry about how we are going to deal with all of the people.").  Convenient as it may be, this

20  Court's approach is not the "rigorous analysis" that the Supreme Court requires for certification

21  issues.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *see also, e.g.*, *Ellis v.

22  Costco Wholesale Corp.*, 657 F.3d 970, 980 (9th Cir. 2011) ("[D]istrict courts are not only at

23  liberty to, but *must* perform [this] rigorous analysis . . . ." (emphasis added)).  Indeed, the

24  Supreme Court is now further considering the extent to which a court must ensure at certification

25  that "the plaintiff class has introduced admissible evidence, including expert testimony, to show

26  that the case is susceptible to awarding damages on a class-wide basis."  *Comcast v. Behrend*, 133

27  S. Ct. 24, 24 (2012) (granting certiorari on question) (argued Nov. 5, 2012).[12]

28          [12] The Court is considering similar issues in *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, No. 11-1085 (argued Nov. 5, 2012).

This Court must confront Plaintiffs' need to have class members testify, one at a time, about their towing debts.  And this unavoidable feature of the class's claims fatally undermines the class's ascertainability, predominance, and superiority.

### 1. A Class That Requires Live Testimony from Over 36,000 Individuals Is Not Feasibly Ascertainable.

Under the ascertainability requirement, it must be "administratively feasible to determine whether a particular person is a class member." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011).  As this Court stated in its class certification order, *see* Dkt. 138 at 18, a class does not become unascertainable merely because "class members will be required to submit some information in order to determine whether they are members of the class." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 592 (N.D. Cal. 2010) (suggesting potential submission of purchased products' serial or model number).  But when individuals, instead of simply "submit[ting] some information," *id.*, will need to testify in court to prove not only their class membership but also an element of liability, the class is not ascertainable.  *See, e.g.*, *Marcus*, 687 F.3d at 593 ("If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate."); *Rowden v. Pac. Parking Sys., Inc.*, 282 F.R.D. 581, 585-86 (C.D. Cal. 2012) (no ascertainability in FCRA action because all potential class members would "have to testify," which "would be incredibly time consuming"); *Mann v. TD Bank, N.A.*, 2010 WL 4226526, at *12 (D.N.J. Oct. 20, 2010) (no ascertainability when class needs "individual hearings to establish who qualifies as a class member" by having purchased a gift card); *Cuming v. S.C. Lottery Comm'n*, 2008 WL 906705, at *3 (D.S.C. Mar. 31, 2008) (no ascertainability when class needs "potentially thousands of individualized inquiries" regarding when members purchased lottery tickets); *Haggart v. Endogastric Solutions, Inc.*, 2012 WL 2513494, at *3 (W.D. Pa. June 28, 2012) (no ascertainability when class needs "person-by-person" adjudication of "class membership," imposing "serious administrative burdens incongruous with the efficiencies expected in a class action").

Although determining the class's membership may have once seemed administratively feasible, that is no longer the case.  The Court predicted this process might require ten minutes of

testimony from each potential class member.  *See* 12/5/12 Hearing Tr. at 3:5.  Experian respectfully submits that the testimony will often take longer, but even the Court's estimate (with approximately 36,000 potential class members) projects to 6,000 hours of live testimony.  With seven hours of testimony per day, this would demand *over 850 courtroom days*, which would take more than three years.  This is far from the "limited and discrete" process contemplated by the Court's initial ascertainability analysis or, for that matter, any sensible understanding of Rule 23.

### 2.    Because Each Class Member Will Need to Testify to Establish Liability, Common Issues Do Not Predominate.

For similar reasons, the certified class also does not meet Rule 23(b)(3)'s predominance requirement.  "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  Thus, predominance does not exist when "the main issues in a case require the separate adjudication of each class member's individual claim." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001).

Here, even if Plaintiffs prevailed on the common questions concerning Experian's procedures, the class would still need literally years of live testimony on individualized issues in order to establish *any* liability.  In other words, this case would still "require the separate adjudication of each class member's individual claim."  *Id.*  In such circumstances, even though the class's claims may implicate some common issues, those issues do not predominate.  *See, e.g.*, *Villa v. United Site Services of Cal., Inc.*, 2012 WL 5503550, at *12 (N.D. Cal. Nov. 13, 2012) (no predominance when members could obtain relief only through "individual and fact-intensive" inquiries, given lack of records containing necessary information); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 214 F.R.D. 614, 619 (W.D. Wash. 2003) (same); *DWFII Corp. v. State Farm Mut. Auto. Ins. Co.*, 271 F.R.D. 676, 684 (S.D. Fla. 2010) (same), *aff'd*, 469 F. App'x 762 (11th Cir. 2012); *Jimenez v. Lakeside Pic-N-Pac, L.L.C.*, 2007 WL 4454295, at *12 (W.D. Mich. Dec. 14, 2007) (same); *Thompson*, 189 F.R.D. at 554 (same); *Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 106 (W.D. Va. 2000) (finding predominance only because claims would "not require the testimony of each and every" potential class member).

### 3.    A Class Action Is Not the Superior Method for Resolving the Class Members' Claims.

Finally, the need for live testimony from over 36,000 potential class members also demonstrates that a class action is not "superior to other available methods for fairly and efficiently adjudicating the controversy," as Rule 23(b)(3) requires.  Among the factors relevant to superiority are "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(D).  In light of this provision—and the superiority test's "concern for judicial economy," *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010)—superiority is lacking when it appears "a class action would be impractical and unmanageable."  *Gales v. Winco Foods*, 2011 WL 3794887, at *11 (N.D. Cal. Aug. 26, 2011); *see also Rowden*, 282 F.R.D. at 585 (evaluating superiority requires considering "'the whole range of practical problems that may render the class action format inappropriate for a particular suit'") (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974)).

Thus, courts have found no superiority when trying a class's claims would require "a large number of testifying witnesses," *Weigele v. FedEx Ground Package Sys., Inc.*, 267 F.R.D. 614, 624-25 (S.D. Cal. 2010), or "would amount to the adjudication of each of [the members'] claims on an individual basis, effectively," *Gonzalez v. Officemax N. Am.*, 2012 WL 5473764, at *6 (C.D. Cal. Nov. 5, 2012).  Such circumstances "effectively negate the[] efficiencies" of a class action.  *Weigele*, 267 F.R.D. at 624-25; *see also, e.g.*, *DWFII*, 271 F.R.D. at 685 (no superiority when court needs "to scrutinize individually the details of each class member's claim"); *In re PPA*, 214 F.R.D. at 619 (same); *Jimenez*, 2007 WL 4454295, at *12 (same); *Poulos v. Caesars World, Inc.*, 2002 WL 1991180, at *12 (D. Nev. June 25, 2002) (same).

Here, when courts have criticized 227 testifying class members as "far too many witnesses for a manageable class action," *Weigele*, 267 F.R.D. at 624-25, a trial plan requiring over 36,000 witnesses is well beyond the realm of reasonableness.  The "likely difficulties" in managing this process will be immense for the Court, the parties, and for the potential class members themselves.  *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 713 (9th Cir. 2010) ("Superiority must be looked at from the point of view (1) of the judicial system, (2) of the

potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large and (6) of the defendant. The listing is not necessarily in order of importance of the respective interests.").  For the Court and the parties will need to spend years simply hearing this testimony.  It will take even longer for a jury to deliberate and adjudicate each of these claims.  And it will take the parties significant time to prepare to litigate each potential class member's claim, one at a time.  Indeed, merely *scheduling* this testimony (and maintaining the multi-year schedule in the event of no-shows, changed availability, etc.) will prove a massive endeavor.  Moreover, with so many witnesses, it is unavoidable that the potential class members will spend significant time simply waiting to testify.  This trial plan, though inevitable, is utterly unwieldy—and accordingly falls well short of the superiority required by Rule 23(b)(3).[13]

***

It is quite telling that Plaintiffs have never cited, and Experian has not seen, a *single* case allowing a class action to proceed in circumstances like these.  Simply put, there is no precedent for a class action that would demand live testimony from over 36,000 individuals in order to adjudicate an essential element of liability.  The now-inescapable need for such testimony requires the class to be decertified.

### D.   At a Minimum, the Class Definition Should Exclude Consumers Who Lack Standing Due to Bankruptcy or Die Before Their Claims Are Adjudicated.

Finally, at the very least, the class definition should be amended to exclude any individuals who lack standing due to bankruptcy, or who die before their FCRA claims are adjudicated.  Experian's records indicate that 611 of the potential class members filed for bankruptcy after Finex obtained their consumer reports, and that 947 of the potential class members have died.  Decl. of P. Finneran ("Finneran Decl.") ¶¶ 6-7.

---

[13] Plaintiffs might say this suit has no realistic alternative, because consumers will not individually seek the small damages available.  *See* Dkt. 68 at 17.  "Out of concern," however, "that a small statutory award might dissuade potential challenges to [an FCRA] violation, Congress took the significant step of making attorney's fees, costs, and punitive damages available to individual litigants."  *Rowden*, 282 F.R.D. at 586 (citing § 1681n(a)(2), (3)).  "These remedies give individuals *truly harmed* . . . a more than sufficient incentive to bring an action even if the amount of recovery is difficult to quantify or relatively small."  *Id.* (emphasis added).

1    **1.      Consumers Who Have Filed for Bankruptcy May Lack Standing.**

2    Bankrupt consumers presumptively lack standing to pursue any legal claims.  "Upon a

3    declaration of bankruptcy, all of a petitioner's property becomes the property of the bankruptcy

4    estate, including all . . . causes of action."  *Just Film, Inc. v. Merchant Servs., Inc.*, 873 F. Supp.

5    2d 1171, 1176 (N.D. Cal. 2012).  For a bankruptcy petitioner to retain standing for any "causes of

6    action that accrued prior to the petition," either the consumer must have listed the claim in his or

7    her petition, or the bankruptcy trustee must have abandoned the claim.  *Schneider v. Unum Life*

8    *Ins. Co. of Am.*, 2008 WL 1995459, at *2 (D. Or. May 6, 2008).  *See generally Dunmore v.*

9    *United States*, 358 F.3d 1107, 1112 (9th Cir. 2004).  But if neither of these events occurs, the

10   claim remains the property of the estate—even after the consumer's "debt is discharged and the

11   bankruptcy case is closed"—and the consumer lacks standing for the claim.  *Schneider*, 2008 WL

12   1995459, at *3.

13   The class here must thus exclude all consumers who have filed for bankruptcy after their

14   claims against Experian accrued, and whose bankruptcy estates did not approve the claim.  *See,*

15   *e.g.*, *Mayo v. USB Real Estate Secs., Inc.*, 2012 WL 4361571, at *4-5 (W.D. Mo. Sept. 21, 2012)

16   (denying certification when roughly "44% of the proposed class" had "filed for bankruptcy" and

17   thus "may lack standing"); *Gawry v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 942, 955-

18   56 (N.D. Ohio 2009) (noting that absent class members in bankruptcy may not "have standing to

19   bring a claim"); *Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347, 356 (N.D. Ill. 1998) (same).

20   Determining which of these bankrupt consumers can be class members will require individualized

21   evidence about each of their bankruptcy proceedings.  *See id.*  The need to consider such evidence

22   can undermine certification entirely, *see Mayo*, 2012 WL 4361571, and provides further reason

23   why individualized issues predominate in this matter.  Should this Court not decertify the class,

24   the class definition should be amended to exclude consumers who lack standing due to

25   bankruptcy.  *See, e.g.*, *Hanni v. Am. Airlines, Inc.*, 2010 WL 289297, at *9 (N.D. Cal. Jan. 15,

26   2010) (class definition must describe those with "a right to recover based on the description").

27   **2.      Only Living Consumers Can Bring or Maintain FCRA Claims.**

28   Similarly, the class definition should be amended to exclude any individuals who have

-- 22 --                                         EXPERIAN'S MOTION FOR
                                                 SUMMARY JUDGMENT

1   died.  "Civil liability for willful noncompliance" with the FCRA may be imposed only on "[a]ny

2   *person* who willfully fails to comply with any requirement imposed under [the Act] *with respect*

3   *to any consumer*."  15 U.S.C. § 1681n (emphasis added).  "Any [such] *person*" can be held

4   "liable *to that consumer*."  *Id.* (emphasis added).  Thus, a "person" can be liable, but only for

5   actions concerning a "consumer," and only "that consumer" can recover damages—and

6   "consumer" can refer only to someone who is alive.

7        Specifically, the FCRA defines "person" and "consumer" differently.  A "consumer" is

8   defined to mean "an individual."  15 U.S.C. § 1681a(c).  A "person," in contrast, means not only

9   an "individual" but also an "*estate*," as well as any "partnership, corporation, trust, . . . or other

10  entity."  15 U.S.C. § 1681a(b) (emphasis added).  Because "individual" and "estate" are listed

11  separately within the "person" definition, the term "individual"—and, importantly, its synonym

12  "consumer"—cannot include "estate."  For it is a "fundamental principle of statutory construction

13  that interpretive constructions of statutes which would render some words surplusage are to be

14  avoided."  *United States v. Hoflin*, 880 F.2d 1033, 1038 (9th Cir. 1989).  If "individual" (and

15  "consumer") encompassed any "estate," then there would have been no need for Congress to list

16  "estate" separately when defining "person."

17       Other than indicating that the two terms do not overlap, the FCRA does not define

18  "individual" or "estate."  Accordingly, both terms should presumptively carry their "ordinary

19  meaning."  *Brower v. Evans*, 257 F.3d 1058, 1065 (9th Cir. 2001).  Under that meaning, an

20  "estate" consists of "the assets and liabilities left by a person at death."  Merriam-Webster's

21  Collegiate Dictionary 397 (10th ed. 1994).  By excluding "estate," an "individual" therefore must

22  refer to someone who is living, as must "consumer"—and, thus, claims under § 1681n (which

23  belong only to "consumers") can be maintained only by those who are alive.

24       This construction of "consumer," to refer only to the living, is also evident from the

25  FCRA's other uses of the term.  "A standard principle of statutory construction provides that

26  identical words and phrases within the same statute should normally be given the same meaning."

27  *Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 232 (2007).  Repeatedly, the FCRA

28  uses "consumer" in contexts that can only apply to living persons.  For example, § 1681c-2(a)

1  explains how a CRA must respond when a "consumer identifies . . . information that resulted

2  from an alleged identity theft," § 1681g(f) states how a CRA must respond to "the request of a

3  consumer for a credit score," § 1681h(a) requires "that the consumer furnish proper

4  identification" before obtaining a disclosure of his credit file, and § 1681k(a) talks of "a

5  consumer's ability to obtain employment."  In these and other FCRA provisions, the word

6  "consumer" cannot possibly refer to those who are dead.  *See also, e.g.*, §§ 1681d(a)(1), 1681e(c),

7  1681g(a), 1681g(c)(2), 1681i(a), 1681j(a), 1681m(a).  Similarly, then, the use of "consumer" in

8  § 1681n, to designate who can seek damages for willful liability, can only refer to the living.[14]

9      As noted, Experian's records indicate that 947 of the potential class members are dead.

10  Finneran Decl. ¶ 7.  In light of the FCRA's focus on living persons, none of these individuals

11  have a claim against Experian.  *See* § 1681n ("Any person who willfully fails to comply with any

12  requirement imposed under this title *with respect to any consumer* is liable *to that consumer* . . .

13  .").[15]  The class definition should be amended to account for this.

14  **V.     CONCLUSION**

15      The Court should grant this motion for summary judgment and to decertify the class.

16  Dated: February 7, 2012                    JONES DAY

17

18                                             By:   /s/ Daniel J. McLoon
                                                    Daniel J. McLoon
19

20                                             Attorneys for Defendant
                                               EXPERIAN INFORMATION SOLUTIONS,
21                                             INC.

22

23  ――――――――――――――
    [14] Even if the FCRA authorized a claim on behalf of a deceased person (it does not), the claim
24  would fail here because it would be practically impossible to establish the towing debt's details.
    Moreover, punitive damages would be unavailable, as such "penal" liability does not survive a
25  party's death.  *See, e.g.*, *Caraballo v. S. Stevedoring, Inc.*, 932 F. Supp. 1462, 1466 (S.D. Fla.
    1996) (addressing Age Discrimination in Employment Act and Americans with Disabilities Act).

26  [15] It appears no court has ever analyzed this statutory interpretation issue.  Although the court in
    *Lowe v. Experian*, 340 F. Supp. 2d 1170, 1175-76 (D. Kan. 2004), held that FCRA claims survive
27  a plaintiff's death, the court treated this question as one of federal common law—which is the
    case only for a statute with "no expression of contrary intent."  *Smith v. Dep't of Human Servs.*,
28  876 F.2d 832, 834 (10th Cir. 1989).  Because the FCRA's use of "consumer" excludes the dead,
    *Lowe*'s analysis (which did not consider the point) is, respectfully, incorrect.

EXPERIAN'S MOTION FOR
                                                    SUMMARY JUDGMENT