Andrew J. Ogilvie        (SBN 57932)
Mark F. Anderson        (SBN 44787)
Carol M. Brewer        (SBN 214035)
Anderson, Ogilvie & Brewer LLP
235 Montgomery Street, Suite 914
San Francisco, California 94104
        Telephone:        (415) 651-1950
        Facsimile:        (415) 500-8300
        andy@aoblawyers.com
        mark@aoblawyers.com
        carol@aoblawyers.com

Balám O. Letona        (SBN 229642)
Law Office of Balám O. Letona, Inc.
55 River Street, Ste. 220
Santa Cruz, CA 95060
        Telephone:        (831) 421-0200
        Facsimile:        (831) 515-3114
        letonalaw@gmail.com

Attorneys for Plaintiffs Roane Holman, Narciso Navarro Hernandez
and Miguel A. Alvarez

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROANE HOLMAN, NARCISO NAVARRO HERNANDEZ and MIGUEL A. ALVAREZ on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.<br><br>Defendant. | Case No. 11- cv-0180-CW (DMR)<br><br>PLAINTIFFS' OPPOSITION TO EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT AND TO DECERTIFY THE CLASS<br><br><br>Date:     August 22, 2013<br>Time:     2:00 pm<br>Judge:   Hon. Claudia Wilken |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iii

I.  SUMMARY OF PLAINTIFFS' RESPONSE TO EXPERIAN'S MOTIONS ......................1

   A.  Summary of Response to Experian's Summary Judgment Motion....................................1

   B.  Summary of Response to Experian's Decertification Motion............................................1

   C.  Summary of Response to Experian's Motion to Modify The Class
      Definition ...........................................................................................................2

II.  STATEMENT OF FACTS ................................................................................3

   A.  Experian's Immediate Response to *Pintos* .........................................................3

   B.  Finex ................................................................................................................3

   C.  Experian's Actions After *Pintos II* in April 2009 ...............................................5

   D.  Experian's Actions After the Denial of *En Banc* Review in May 2010............................5

   E.  Experian's Search For A Substitute For *Pintos*-Impacted Subscribers................................6

III.  ARGUMENT ..................................................................................................7

   A.  Response to Experian's Summary Judgment Motion ...............................................7

      1.  Legal Standards For Summary Judgment Motions ..............................................7

      2.  Experian Is Not Entitled To Summary Judgment On Willfulness ................................7

         a.  In *Safeco* the Supreme Court Did Not Adopt The Test For Liability
            In Qualified Immunity Cases, But Fashioned A Different Standard
            For Use Under The FCRA ..............................................................................8

         b.  Experian Knowingly Violated The FCRA .........................................................9

         c.  Experian Recklessly Violated The FCRA .......................................................10

         d.  Experian Had To Comply With *Pintos* While Its Petitions For
            Rehearing Were Pending ..............................................................................11

         e.  Even Under The "Clearly Established" Test From Qualified
            Immunity Case Law, Experian's Motion Should Be Denied .................................12

      3.  Holman's Towing Debt Was Not Consumer-Initiated ............................................12

   B.  Response to Experian's Motion to Decertify the Class ............................................13

      1.  Legal Standards For Class Certification ...........................................................13

      2.  Individual Class Members Do Not Have To Prove That Finex Lacked
         A Permissible Purpose To Obtain Their Reports .................................................13

3.  If A Phase 2 Proceeding Is Required, Plaintiffs Can Prove The Claims of Individual Class Members Without Undue Burden On The Court ......................... 18

   a.   The Class Is Ascertainable ................................................................. 19

   b.   Common Questions Predominate ........................................................ 19

   c.   A Class Action Is Superior ................................................................. 21

4.  Plaintiffs' Proposed Trial Plan ........................................................... 23

C.  Response to Experian's Request To Modify The Class Definition .................................. 25

IV. CONCLUSION ..................................................................................... 25

1

# TABLE OF AUTHORITIES

2

**Cases**:

3

*Amchem Products, Inc. v. Windsor*
   521U.S. 591 (1997) ................................................................. 19

4

*Andrews v. Trans Union Corp.*
   7 F.Supp.2d 1056 (C.D. Cal. 1998) ............................... 17, 18

5

6

*Andrews v. TRW*
   225 F.3d 1063 (9th Cir.2001) ..................................................... 18

7

*Appleton Electric Co. v. Advance-United Expressways*
   494 F.2d 126 (7th Cir.1974) ........................................................ 22

8

9

*Ashcroft v. al-Kidd*
   131 S.Ct. 2074 (2011) ........................................................... 7, 12

10

*Augustin v. Jablonsky*
   819 F. Supp.2d 153 (E.D.N.Y. 2011) ...................................... 20

11

12

*Bateman v. Am. Multi-Cinema, Inc.*
   623 F.3d 708 (9th Cir. 2010) .............................. 13, 16, 20, 25

13

*BedRoc Ltd., LLC v. United States*
   541 U.S. 176 (2004) ................................................................... 15

14

15

*Campbell v. PricewaterhouseCoopers, LLP*
   253 F.R.D. 586 (E.D.Cal.2008) ............................................... 19

16

*Carnegie v. Household Int'l, Inc.*
   376 F.3d 656 (7th Cir. 2004) .................................................... 21

17

18

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986) ..................................................................... 7

19

*Conn. Nat'l Bank v. Germain*
   503 U.S. 249 (1992) ................................................................... 15

20

*Cortez v. Trans Union, LLC*
   617 F.3d 688 (3d Cir. 2010) ........................................................ 9

21

22

*Daubert v. Merrell Dow Pharmaceuticals*
   509 U.S. 579 (1993) ................................................................... 22

23

*Eisenberg v. Ins. Co. of N. Am.*
   815 F.2d 1285 (9th Cir.1987) ...................................................... 7

24

*Fleming v. Brown*
   2012 WL 851109 (N.D. Cal. Mar. 13, 2012) ............................. 7

25

26

*Gillespie v. Equifax*
2008 WL 4316950 (N.D. Ill. Sept. 15, 2008) ................................................. 9, 10

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) ...................................................................... 19, 20

*Herrera v. LCS Fin. Servs. Corp.*
274 F.R.D. 666 (N.D. Cal. 2011) .......................................................................... 23

*In re Farmers Med-Pay Litigation*
2007 WL 7284001 (Okla. Dist. Ct. 2007)
*order aff'd*, 229 P.3d 551 (Div. 4 2009), *cert. denied*, Jan. 25, 2010 ...................... 22

*In re Ferrell*
539 F.3d 1186 (9th Cir.2008) ............................................................................. 15

*In re Monumental Life Ins. Co.*
365 F.3d 408 (5th Cir. 2004) .............................................................................. 14

*In re Schreiber*
110 U.S. 76 (1884) ............................................................................................ 25

*In re Visa Check/MasterMoney Antitrust Litig.*
280 F.3d 124 (2d Cir. 2001) .............................................................................. 19

*Intel Corp. v. Hartford Accident & Indem. Co.*
952 F.2d 1551 (9th Cir.1991) .............................................................................. 7

*Klay v. Humana, Inc.*
382 F.3d 1241 (11th Cir. 2004) .......................................................................... 19

*Kraszewski v. State Farm General Ins. Co.*
912 F.2d 1182 (9th Cir. 1990) ........................................................................... 24

*Kumho Tire Co., Ltd. v. Carmichael*
526 U.S. 137 (1999) ......................................................................................... 22

*Lerwill v. Inflight Motion Pictures, Inc.*
582 F.2d 507 (9th Cir.1978) .............................................................................. 19

*Lowe v. Experian*
340 F. Supp. 2d 1170 (D. Kan. 2004) .................................................................. 25

*Marcus v. BMW of N. Am., LLC*
687 F.3d 583 (3d Cir. 2012) .............................................................................. 24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574 (1986) ........................................................................................... 7

*Middlebrooks v. Retail Credit Co.*
416 F.Supp. 1013 (N.D. Ga. 1976) ................................................................ 17, 18

*Miller v. Trans Union*
2007 WL 641559 (N.D. Ill. 2007) ................................................................. 10, 12

*Miranda v. Anchondo*
   684 F.3d 844 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 256 (U.S. 2012) .................................. 15

*Mone v. Dranow*
   945 F.2d 306 (9th Cir.1991) ........................................................................... 12

*O'Connor v. Boeing N. Am., Inc.*
   184 F.R.D. 311 (C.D.Cal.1998) ....................................................................... 19

*Pintos v. Pac. Creditors Ass'n*
   504 F.3d 792 (9th Cir. 2007) ................................................................. 3, 4, 10

*Pintos v. Pac. Creditors Ass'n*
   565 F.3d 1106 (9th Cir. 2009) ................................................................... 5, 10

*Pintos v. Pac. Creditors Ass'n*
   605 F.3d 665 (9th Cir. 2010) ................................................................... 10, 12

*Safeco Insurance Co. of America v. Burr*
   551 U.S. 47 (2007) .......................................................................... 1, 8, 9, 10

*Saucier v. Katz*
   533 U.S. 194 (2001) ..................................................................................... 8

*Six (6) Mexican Workers v. Arizona Citrus Growers*
   641 F.Supp. 259 (D.Ariz. 1986) .................................................................... 23

*Six (6) Mexican Workers v. Arizona Citrus Growers*
   904 F.2d 1301 (9th Cir. 1990) ...................................................................... 22

*Smith v. Dep't of Human Services, State of Okla.*
   876 F.2d 832 (10th Cir.1989) ....................................................................... 25

*Stergiopoulos v. First Midwest Bancorp*
   427 F.3d 1043 (7th Cir. 2005) ...................................................................... 10

*Sullivan v. Kelly Servs., Inc.,*
   268 F.R.D. 356 (N.D. Cal. 2010) ................................................................... 19

*Summerfield v. Equifax Info. Servs. LLC*
   264 F.R.D. 133 (D.N.J. 2009) ....................................................................... 20

*United States v. United Mine Workers*
   330 U.S. 258 (1947) .................................................................................... 11

*Washington v. CSC Credit Services Inc.*
   199 F.3d 263 (5th Cir. 2000) ................................................................... 17, 18

*Washington v. CSC Credit Services, Inc.*
   178 F.R.D. 95 (E.D. La. 1998) ...................................................................... 17

*Wedbush, Noble, Cooke, Inc. v. SEC*
   714 F.2d 923 (9th Cir. 1983) ........................................................................ 11

*Williams v. Mohawk Indus., Inc.*
    568 F.3d 1350 (11th Cir. 2009) .................................................................. 19

*Wolin v. Land Rover North America, LLC*
    617 F.3d 1168 (9th Cir.2010) .................................................................... 13

*Wolph v. Acer America Corp.*
    272 F.R.D. 477 (N.D.Cal. 2011) ................................................................ 13

*Zeisel v. Diamond Foods, Inc.*
    2011 WL 2221113 (N.D. Cal. June 7, 2011)............................................... 23


**Statutes**:

15 U.S.C. § 1681a(k)(1)(B)(i) ........................................................................ 8

15 U.S.C. § 1681b(a)(2) ................................................................................ 17

15 U.S.C. § 1681b(a)(3) .........................................................................*passim*

15 U.S.C. § 1681e(a) ..............................................................................*passim*

15 U.S.C. § 1681n(a) .................................................................................... 14


**Rules**:

Federal Rules of Civil Procedure, Local Rule 7-9(d)..................................... 13

Federal Rules of Civil Procedure, Rule 23(b)(3)....................................... 19, 21

Federal Rules of Civil Procedure, Rule 56(c) ............................................... 7

Federal Rules of Evidence, Rule 702 ........................................................... 22


**Other Authorities**:

5 Moore, *Moore's Federal Practice,* § 23.21 (2001)...................................... 19

3 *Newberg on Class Actions* § 9:64............................................................... 24

7A Wright, Miller & Kane, *Federal Practice & Procedure* § 1778 (2d ed.1986)........................ 20

# I.   SUMMARY OF PLAINTIFFS' RESPONSE TO EXPERIAN'S MOTIONS[1]

## A.   Summary of Response to Experian's Summary Judgment Motion

In *Pintos*[2] in 2007, the Ninth Circuit held that the FCRA[3] does not authorize a consumer reporting agency (CRA) to furnish consumer reports for the collection of nonconsensual towing debts. Experian argues, first, that it did not *willfully* violate the FCRA because the mandate in *Pintos* did not issue until June 2010. To construct this theory, it argues that in *Safeco*[4] the Supreme Court adopted the "clearly established law" test from qualified immunity cases to serve as the threshold test for FCRA willfulness and that the meaning of § 1681b(a)(3)(A) was not clearly established until the *Pintos* mandate issued. That misreads *Safeco*. There the Supreme Court held that FCRA willfulness includes both intentional and reckless violations and it set out the criteria for each. While it cited a qualified immunity case for comparison, it did not borrow the qualified immunity test to use in FCRA cases. Moreover, its argument fails under the "clearly established" test because *Pintos,* other cases, and FACTA clearly established the relevant law.

Second, Experian repeats its argument that Holman "initiated" the towing because he was arrested for DUI. The Ninth Circuit rejected a similar argument in *Pintos.* This Court rejected that argument in its class certification order. That ruling was and is correct.

## B.   Summary of Response to Experian's Decertification Motion

Experian argues that the Court should decertify the class because of speculative manageability problems. It asserts that each person in the class must prove that Finex lacked a permissible purpose to obtain his or her report. Experian is again misreading the FCRA. The

---

[1]   Plaintiffs rely on previously filed declarations from Miguel Alvarez (Document69), Mark Anderson (70), Antonia Sainz-Blas (71), Paul Price (73), Roane Holman (74), Jesse Enriquez (87), Peter Henke (89), Scot Levine (90), Blas Reply (98) and Price Reply (99). Additional exhibits and testimony are attached to the Ogilvie declaration filed herewith.  Plaintiffs are also filing a Stipulation in which Experian stipulated that Collection Advantage reports with RecoveryScores of 400 to 800 are "consumer reports" as defined in the FCRA.
[2]   *Pintos v. Pac. Creditors Ass'n,* 504 F.3d 792 (9th Cir. 2007).
[3]   All statutory references are to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*
[4]   *Safeco Insurance Co. of America v. Burr,* 551 U.S. 47 (2007)

class can prevail by showing that Experian violated its duties under § 1681b(a)(3) or § 1681e(a), neither of which requires them to prove that Finex lacked a permissible purpose. Section 1681b(a)(3) says that plaintiffs prevail if they prove that Experian furnished the reports without having "reason to believe" that Finex intended to use them for a permissible purpose. Plaintiffs can prove that through the testimony of Finex's principals who told Experian's account executive that Finex intended to use the reports to collect nonconsensual towing debts like the one in *Pintos*. If the jury finds for the plaintiffs on this claim, then everyone whose report was furnished to Finex should recover and there will be no need for any further proceeding.

Similarly, § 1681e(a) does not require each class member to prove that Finex lacked a permissible purpose to obtain his/her report. While some courts have implied that plaintiffs must prove an impermissible use of their reports to recover under § 1681e(a), those cases are inapposite and, in any event, they are not persuasive.  The Ninth Circuit has held that trial courts should not use judicial gloss to limit the protections that Congress intended when it enacted the FCRA.  This Court should construe the FCRA as it was written and should require plaintiffs to prove only what the statute requires expressly.

If Court decides to require each class member to prove that Finex lacked a permissible purpose to obtain his or her report, plaintiffs can do that without undue burden on the Court. A claims procedure is the most common solution to this problem. After class members submit claims, Experian would have a reasonable opportunity to investigate and contest those claims. It is highly unlikely that it would have any basis to challenge more than a few claims. If there are any factual disputes that cannot be settled, those could be resolved through the use of summary judgment, Special Masters, subclasses and/or a brief trial.

### C.   Summary of Response to Experian's Motion to Modify The Class Definition

Experian asks the Court to redefine the class to exclude consumers who have filed bankruptcy or died.  Plaintiffs agree that consumers who have filed bankruptcy should be

excluded from the class, but the statutory damage claims of deceased class members survive and should be paid to their heirs or estates.

## II.     STATEMENT OF FACTS

### A.     Experian's Immediate Response to *Pintos*

The 2007 *Pintos* opinion ("*Pintos I*") held that the collection of nonconsensual towing debts is not a permissible use of consumer reports. 504 F.3d at 798-799. The Court said FACTA clarified the meaning of "credit transaction involving the consumer" in § 1681b(a)(3)(A) and that the "plain terms" of § 1681e(a) require Experian to do more than rely upon its subscriber's blanket certification. Specifically, Experian must make a "reasonable effort" to "verify" a new subscriber's uses before furnishing any reports and it must stop furnishing reports if it has "reasonable grounds for believing" they will be used impermissibly.[5]

Because of the reference to FACTA, which was not in effect when the *Pintos* events occurred, Experian disagreed with the decision. In contrast to Trans Union, which promptly notified its subscribers about *Pintos*, Experian delayed telling its subscribers about *Pintos* until June 2010. Ogilvie dec. Ex E, Experian's Response to Int. 8 (Set 1); Ex 159. In 2007 its only response was a confidential Talk Track that went to some sales and marketing people. It summarized *Pintos I's* holdings and said Experian would notify subscribers about compliance policies *after* the final outcome of its petition for rehearing. Ex 145. If anyone asked about *Pintos*, Experian employees were supposed to tell them to consult their own attorney. *Id*. It did not instruct its Membership Department to prevent collection agencies like Finex from becoming subscribers, nor did it institute any procedures to verify new a new subscriber's use of reports before approving it. Exp. Resp. to Int. 8; Henke Depo. Tr. 110-113; Henke Decl. ¶ 4.  It just continued with business as usual. Experian's brief, p. 9; Exs 161, 162 & 171.

---

[5]     All *Pintos* opinions reiterated these points. 504 F.3d at 800; 565 F.3d at 1114; 605 F.3d at 677.

**B.     Finex**

Paul Price and Toni Blas formed Finex in late 2007 as a new collection agency that would specialize in collecting towing debts like the one in *Pintos*. Price Decl. ¶ 1. They contacted Experian and were assigned to account executive Scot Levine. Levine Decl. ¶ 3. Having learned about *Pintos* from their clients, they told Levine that they "did not want to get credit reports or any data that was subject to the permissible purpose limitations imposed by the FCRA." Price Decl. ¶¶ 12-13; Blas Decl. ¶¶ 6, 9, 10.  Levine recommended Collection Advantage reports because those reports contain a Recovery Score that debt collectors use to prioritize their collections.[6]  He assured them that Finex was allowed to use Collection Advantage reports to collect tow debts like the one in *Pintos*. Price Decl. ¶ 13; Blas Dec. ¶ 6.[7]

Finex then applied to become a subscriber. Henke Depo. Tr. 40-41, 69-70; Exs 33 & 40. On Experian's application forms, Finex said it was a collection agency/call center. It explained its permissible purpose by stating "we are a consumer and commercial 3rd party collection agency." Exs 33 & 40. Experian's forms did not ask for any more details. *Id.* Two Membership Department analysts used standardized checklists to process Finex's application. Henke Depo. Tr. 49-50, 53-66, 73-75, Exs 38 and 41. They verified many facts concerning Finex, but they did not verify the kinds of debts it was collecting because those questions were not on Experian's checklist. Henke Depo. Tr. 48-55, 76-77, 157-159; Ex 38, page EIS 22; Ex 42, pages EIS 41-42; Ex 38, page EIS 37. They ordered a site inspection, but the site inspector did not verify Finex's use of reports either. Henke Depo. Tr. 67-69 and Ex 39, Items 8a and 8b.

The analysts ignored indications that Finex would use the reports to collect nonconsensual towing debts. They found a page on Finex's website that promoted Finex as

---

[6]     Experian has stipulated that Collection Advantage reports that contain a RecoveryScore of 400 to 800 are consumer reports that are subject to the FCRA. The Stipulation is filed herewith. All the reports it sold to Finex had RecoveryScores in this range. Ogilvie Decl. ¶ 2.

[7]     The only Talk Track that Levine recalls seeing is the one from January 2011. Levine Depo. Tr. 23-26. He is not sure whether he was even aware of *Pintos* in 2008. *Id.*

"Towing Collections Specialists" and offered a "Special for Towing Companies" and added it to their file on Finex, Ex 38, page EIS 37, but asked no follow up questions and approved Finex as a new subscriber in early 2008. Henke Depo. Tr. 49-50, 64-66, 71-77; Ex 38; Price Decl. ¶ 20.

In June 2008, Levine asked what type of debt Finex was collecting. Levine Depo. Tr. 49, Ex. 18. In his email reply, Price said Finex was collecting towing, medical and dental debt. *Id*. In the phone call that followed, Price and Blas told Levine that 99% of Finex's collections were for towing. Blas Decl. ¶ 9. They reiterated that in light of *Pintos* Finex wanted to avoid getting FCRA data. *Id*. Levine said they were not getting any prohibited information for those collections. *Id*. The topic came up again in October 2008 after Blas received a trade association alert that warned tow bill collectors not to obtain consumer credit information in light of *Pintos*. In another phone call, Levine reassured Blas that Finex was not violating *Pintos* by using Collection Advantage reports, including the Recovery Scores. Blas Decl. ¶ 10.

## C.   Experian's Actions After *Pintos II* in April 2009.

The Ninth Circuit issued *Pintos II*[8] in April 2009 and construed § 1681b(a)(3)(A) without referring to FACTA. It again concluded that consumer reports can be used only for the collection of consumer-initiated debts. Most of *Pintos II* was unchanged from *Pintos I*. Experian responded by circulating a slightly modified internal Talk Track and by petitioning for *en banc* review. It continued with business as usual. Ex 182.

## D.   Experian's Actions After the Denial of *En Banc* Review in May 2010.

On May 21, 2010, the Ninth Circuit denied *en banc* review and issued a slightly revised opinion (*Pintos III*)[9]. Experian circulated a third Talk Track, similar to the first two, stating that it would "notify its clients in the coming weeks regarding new compliance policies…." Ex 3, EIS 6; Henke Decl. ¶ 4. Later it notified collections subscribers that it would contact them later to discuss *Pintos,* that it might ask them to "re-certify" their permissible purposes, and that it was "relying"

---

[8]   *Pintos v. Pac. Creditors Ass'n*, 565 F.3d 1106 (9th Cir. 2009).
[9]   *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665 (9th Cir. 2010).

on them "to comply with [their] contract[s]… and this interpretation of the law." Ex 139 and Henke Decl. ¶ 5, Ex. A.  The Ninth Circuit's mandate issued on June 1, 2010 and the Supreme Court denied Experian's petition for certiorari on January 11, 2011.

Experian began its recertification process in December 2010 with some training and set July 1, 2011 as the deadline for completing the process. Ex 10. Experian asked its collection subscribers to "recertify" that they were using its reports to collect only debts that resulted from transactions that were voluntarily initiated by the consumer or that had been reduced to judgment. Eventually Experian put 273 active subscribers on "compliance hold" because they could not or would not recertify. Henke Depo. Tr. 120-122; Ex 10, EIS 228; Ogilvie dec., Ex F, Experian's Response to Int. 21.  Experian did not implement any procedures to ask new collections subscribers to explain precisely what types of debts they collect. Henke Depo. Tr. 160-162.

**E.     Experian's Search for a Substitute For *Pintos*-Impacted Subscribers**

Experian began to worry about its "revenue exposure due to this decision" as soon as *Pintos* was announced. Ex 161, EIS 3694. The Collections Products team, which covers Collection Advantage reports, tracked lost revenue resulting from some subscribers who learned of *Pintos* on their own and reduced their purchases of reports. Exs 148, 149, 150, 164, 165, 172. When asked how extensive these revenue losses might be, Dan Buell, who was the Collections Products team leader, indicated that *Pintos*'s impact could be huge. He focused on debt that is owed to government agencies because that is largely nonconsensual consumer debt. He estimated that such debt comprises about 12% of the entire debt in the United States. He also estimated that 25% to 35% of Experian's collections customers collect some form of that debt. Buell Depo. Tr. 118-120, 129-130 & Ex 161. But that was not all. He added that "the impact of the [*Pintos*] ruling…goes beyond government and into other markets." Ex 161.

A few months after the 2007 *Pintos* opinion, Buell recognized that Experian was "woefully lacking" in products to sell to its *Pintos*-impacted subscribers. Buell Depo. Tr. 211,

212-214, Ex 173, EIS 3584.  To address that gap in the Collections Products line, he asked a team member to formulate a "post-*Pintos* plan and launch[] it to market." *Id.* When that effort failed,[10] Buell partnered with another company to develop a new product called "PriorityScore for Collections" that Experian could sell to its *Pintos*-impacted clients. Buell Depo. Tr. 241-245, Ex 179. The new product was available in 2009, well before Experian required its collections clients to sign the recertification forms. *Id.*

## III.   ARGUMENT

### A.   Response to Experian's Summary Judgment Motion

#### 1.   Legal Standards For Summary Judgment Motions

Summary judgment is granted properly when no genuine and disputed issues of material fact remain and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Eisenberg v. Ins. Co. of N. Am.,* 815 F.2d 1285, 1288–89 (9th Cir.1987); *Fleming v. Brown*, 2012 WL 851109 at *2 (N.D. Cal. Mar. 13, 2012).

The moving party bears the burden of showing that there is no material factual dispute. The Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex,* 477 U.S. at 324; *Eisenberg,* 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir.1991); *Fleming, supra* at *2.

#### 2.   Experian Is Not Entitled To Summary Judgment On Willfulness.

Experian argues that, as a matter of law, it did not willfully violate the FCRA because *Pintos* was not final until the mandate issued. Experian's brief, pp 6-13. Relying upon a recent Supreme Court case on qualified immunity, *Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2083 (2011),

---

[10]   Exhs 173, 174, 177 and 178 relate to the unsuccessful product.

Experian argues that it could not be liable until the mandate issued because the law was not "clearly established."  Experian misreads the cases.

> **a.**    **In *Safeco* the Supreme Court Did Not Adopt The Test For Liability In Qualified Immunity Cases, But Fashioned A Different Standard For Use Under The FCRA.**

The entire foundation for Experian's argument that it did not act willfully is a case citation in *Safeco* that comes after the Supreme Court's observation that "this is not a case in which the business subject to the Act had the benefit of guidance from the courts of appeals or the [FTC] that might have warned it away from the view it took." *Safeco* at 70. At that point the *Safeco* opinion states: "Cf. *Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (assessing, for qualified immunity purposes, whether an action was reasonable in light of legal rules that were 'clearly established' at the time)." *Id. Safeco* contains no other reference to *Saucier*, no citation to other qualified immunity cases and no discussion of the test for qualified immunity, other than the language quoted above.  From this citation of *Saucier*, Experian argues that in *Safeco* the Supreme Court borrowed the "clearly established law" test from the qualified immunity line of cases and made it the test for willfulness under the FCRA.

*Safeco* did not do that. Instead the Court explained that willfulness under the FCRA covers both knowing violations and reckless violations and that knowing violations are the "more serious" subcategory. 551 U.S. at 60. Knowing violations are actions <u>known</u> to violate the Act. Reckless violations are actions that have a <u>high risk</u> of violating the Act.

*Safeco* involved the question of when an insurance company must send an "adverse action" notice to a new applicant for insurance. In the insurance context, the FCRA defines an adverse action as "an *increase* in any charge for…any insurance, existing or applied for" but the statute does not identify the point from which to measure an increase. § 1681a(k)(1)(B)(i) and *Safeco* at 69. The case arose because insurance companies were not sending out adverse action notices to new applicants. Safeco thought there could never be an "increase" in the rate offered to

a new applicant because there was no prior rate for comparison, but the Supreme Court disagreed with that reading of the FCRA. The Court, however, held that Safeco's violation was not willful because the language of that section was "less-than-pellucid" and Safeco had no guidance either from the courts of appeals or from the FTC. *Id.* at 70.

There are significant differences between qualified immunity cases and FCRA cases that explain why courts apply different tests. The doctrine of qualified immunity provides a shield for public officials against civil lawsuits. Public officials are immune from lawsuit unless precedent has "clearly established" that the specific conduct of which they are accused constitutes a violation.  The words of the constitution give scant guidance to anyone as to what may or may not be a violation, which is why the Supreme Court requires that the law be "clearly established" before a public official may be held liable for violating it. The FCRA is different. It is a statute and most of it is written in very specific language. For example, in *Cortez v. Trans Union, LLC*, 617 F.3d 688 (3d Cir. 2010), Trans Union argued that its violations could not have been willful because the relevant statutory provisions had never been interpreted by a court. The Third Circuit rejected that argument. "The credit agency whose conduct is first examined under that section of the Act should not receive a pass because the issue has never been decided. The statute is far too clear to support any such license."  Similarly, the district court in *Gillespie v. Equifax*, 2008 WL 4316950 (N.D. Ill. Sept. 15, 2008), distinguished the case before it from *Safeco* because the FCRA provision that was at issue in *Gillespie* could "not be called 'less-than-pellucid'."

### b.    Experian Knowingly Violated The FCRA.

The FCRA provisions at issue here are written in plain terms, quite unlike the "less-than-pellucid" text in *Safeco*. Section 1681b(a)(3) prohibits Experian from furnishing reports unless it has "reason to believe" its customer intends to use them for permissible purposes. There is nothing unclear about that. Section 1681e(a) requires Experian to "maintain reasonable procedures…to limit the furnishing of reports" to permissible purposes. That section also requires

Experian to "make a reasonable effort to verify" a new subscriber's uses of credit reports before it furnishes any reports and not to furnish reports if "it has reasonable grounds for believing that the report will not be used for a [permissible] purpose…."  Each *Pintos* opinion says § 1681e(a) states these duties in "plain terms." 504 F.3d at 800; 565 F.3d at 1114; 605 F.3d at 677.

To be sure, Experian argued in *Pintos* that § 1681b(a)(3)(A) was ambiguous, but the Ninth Circuit resolved that by construing that provision in *Pintos I*.  There it held that Experian could furnish consumer reports only for consumer-initiated credit transactions. It noted that its reading of the statutory language was supported by FACTA's new definition of "credit." Regardless of whether the Court should have relied on FACTA in discerning the pre-FACTA meaning of § 1681b(a)(3)(A), its construction eliminated whatever doubt may have existed earlier. Furthermore, the Ninth Circuit's construction was in accord with *Stergiopoulos v. First Midwest Bancorp,* 427 F.3d 1043, 1047 (7th Cir. 2005) and *Miller v. Trans Union,* 2007 WL 641559 (N.D. Ill. 2007). Experian's situation is like Equifax's in *Gillespie* where the court refused to dismiss the willfulness claim because "unlike in *Safeco,* Equifax hardly faced a 'dearth of guidance' from other sources." *Id* at *7.

Finally, it is important to remember that this case *is* subject to FACTA. Every court that has considered FACTA's impact on the reading of § 1681b(a)(3)(A) has concluded that FACTA's definition of credit makes clear that that subsection does not allow debt collectors to use credit reports to collect nonconsensual debts. Experian has ignored the FACTA amendment. It has never asserted that after FACTA it is still reasonable to read § 1681b(a)(3)(A) to allow collectors to use consumer reports to collect nonconsensual towing debts.

### c.    Experian Recklessly Violated The FCRA.

A jury also could find that Experian violated the FCRA by engaging in reckless conduct. "[A] company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran

a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco* at 69.  The evidence here is sufficient for a jury to find that Experian recklessly violated all of these duties because its conduct created a very high risk of violating the Act. By failing to train its employees about *Pintos* and by failing to tell them not to sell consumer reports to collectors like Finex, it created a high likelihood that violations would occur.  It compounded that high risk by continuing to rely upon the blanket certifications of its new subscribers and by failing to make any effort to verify its new subscribers' uses of reports. Experian's only argument in defense is that it thought it could get *Pintos* turned around. That is a long shot at best and would always expose the company to a high risk of violating the law.

>            **d.    Experian Had To Comply With *Pintos* While Its Petitions For Rehearing Were Pending.**

Experian argues that it was allowed to defer all changes in policy until its petitions for rehearing were decided with finality. It contends that the *Pintos* mandate had to issue before it could be liable for willfully violating the FCRA. This Court disagreed in its prior orders. It pointed out that notwithstanding Experian's pending petitions, *Pintos* was "nevertheless final for such purposes as stare decisis, and full faith and credit." *Wedbush, Noble, Cooke, Inc. v. SEC*, 714 F.2d 923, 924 (9th Cir. 1983). It noted that the Supreme Court has held that parties must obey "an order issued by a court with jurisdiction over the subject matter and person . . .until it is reversed by orderly and proper proceedings." Document 138, p. 23, quoting from *United States v. United Mine Workers*, 330 U.S. 258, 293 (1947). The Ninth Circuit has held that "the 'pendency of a petition for rehearing does not, in itself, destroy the finality of an appellate court's judgment." *Wedbush* at 924. Experian fails to cite any case that contradicts these authorities.

Experian's argument, if accepted, would create a two-tier system of justice: big, well-financed companies could delay an adverse decision for years—thereby escaping any liability in the meantime—because they could afford to petition for rehearing to the $n$th degree. Everyone else would have to comply immediately.

e.    Even Under The "Clearly Established" Test From Qualified Immunity Case Law, Experian's Motion Should Be Denied.

Even if the "clearly established law" test from qualified immunity cases had any application in this case, Experian would not be entitled to summary judgment because the law on permissible purpose *was* clearly established when Experian furnished the reports to Finex. In the qualified immunity cases that Experian cites, the critical legal issues were *undecided* when the events took place. Thus, for example, in *Ashcroft* "[a]t the time of al-Kidd's arrest, not a single judicial opinion had held that pretext could render an objectively reasonable arrest pursuant to a material-witness warrant unconstitutional." 131 S.Ct. at 2083.  In *Padilla v. Yoo*, 678 F.3d 748 (9th Cir. 2012), when the relevant events occurred "there did not exist a 'single judicial opinion' holding that a United States citizen held in military detention as an enemy combatant possessed rights against the kind of treatment to which Padilla was subjected." *Id.* at 759.

In contrast to those cases, the legal issue here *had been decided* before the *Holman* events occurred. *Pintos*, *Stergiopolous, Miller* and FACTA all informed Experian that it was not allowed to furnish consumer reports for the collection of nonconsensual towing debts. Its obligations to maintain appropriate procedures, to verify its new subscriber's uses and to stop furnishing reports if it had grounds to suspect impermissible usage are clear from the statute, as every *Pintos* opinion said. This case is not analogous to *Ashcroft* and *Padilla* because those defendants had no such guidance.

3.    Holman's Towing Debt Was Not Consumer-Initiated

Experian argues again that Holman initiated the towing of his car by driving under the influence. The Court already rejected this argument in the class certification order where it explained that "[Holman] did not ask for his car to be towed. Instead, the police had it towed without his permission or consent." That analysis is correct.

The dissent in *Pintos II* said Mrs. Pintos "chose" to break the law and that she "was no innocent bystander." 605 F.3d at 680.  The majority accepted those facts and still concluded that

Mrs. Pintos did not initiate the tow transaction, even though she parked the car and chose to break the law. It cited *Mone v. Dranow,* 945 F.2d 306 (9th Cir.1991), which involved a plaintiff who allegedly incurred a debt by unfairly competing against his former employer. The plaintiff's unfair competition may have caused a debt to arise, but the plaintiff did not initiate a credit transaction.  Holman's arrest for driving under the influence does not constitute a consumer-initiated towing transaction. The police initiated the tow, not Holman.

### B.       Response to Experian's Motion to Decertify the Class

#### 1.       Legal Standards For Class Certification

The Ninth Circuit reviews class certification orders for abuse of discretion, but gives the district court noticeably more deference if it *grants* certification than if it *denies* certification. *Bateman v. Am. Multi-Cinema, Inc.,* 623 F.3d 708, 712 (9th Cir. 2010); *Wolin v. Land Rover North America, LLC*, 617 F.3d 1168, 1171 (9th Cir.2010). Any doubts regarding the propriety of class certification generally should be resolved in favor of certification. *Wolph v. Acer America Corp*., 272 F.R.D. 477, 481 (N.D.Cal. 2011). A district court abuses its discretion when it makes an error of law or places too much significance on one factor. *Bateman, supra* at 712.

#### 2.       Individual Class Members Do Not Have To Prove That Finex Lacked A Permissible Purpose To Obtain Their Reports

The premise of Experian's manageability argument is that each class member must prove that he/she did not initiate the tow and does not have an adverse judgment. Experian misreads the FCRA. The sections upon which the class's claims are based do not require them to prove that Finex lacked a permissible purpose with respect to each person in the class.

In the class certification motion, plaintiffs defined the class as "all consumers whose consumer reports were furnished by Experian to Finex in connection with Finex's efforts to collect on a towing deficiency claim from January 1, 2008 to the present." Document 68, p. 12. The Court initially agreed with that definition, but limited the class period to the two year statute of limitations. Document 138, p. 36. Then Experian filed a motion seeking leave to file a motion

for reconsideration. Complying with Local Rule 7-9(d), plaintiffs did not respond and were not asked to respond. Two days later, the Court denied Experian's motion but amended the class definition to limit the class to consumers whose reports were furnished to Finex "to collect on a towing deficiency claim that was not reduced to a judgment and was not the result of a transaction that the consumer initiated." Document 146, p. 1.

Plaintiffs contend that the Court's initial definition was the proper one and that the Court should revise the class definition accordingly. "District courts are permitted to limit or modify class definitions to provide the necessary precision." *In re Monumental Life Ins. Co.,* 365 F.3d 408, 414 (5th Cir. 2004). Section 1681n(a) provides that "[a]ny person who willfully fails to comply with *any requirement imposed* under this subchapter with respect to any consumer is liable to that consumer for [statutory damages]." § 1681n(a). Plaintiffs contend that Experian willfully violated the requirements imposed on it by §§ 1681b(a)(3) and 1681e(a). Those sections do not require class members to prove that Finex lacked a permissible purpose.

Section 1681b(a)(3) requires Experian to have "reason to believe" that its subscriber "intends to use the information" for a permissible purpose before it furnishes any reports.[11] Experian failed to comply with that requirement when it furnished the class members' reports to Finex *knowing* that Finex intended to use the information for an *impermissible* purpose. As the Court noted earlier, there is no factual dispute on this point. Document 138, p. 9 n 3.

Section 1681e(a) requires Experian to "maintain reasonable procedures designed…to limit the furnishing of consumer reports to the purposes listed under section 1681b…."  It also requires Experian to "make a reasonable effort to verify…the uses certified by [a new] prospective user" and to cease furnishing reports if it "has reasonable grounds for believing that the report will not be used for a [permissible] purpose." Experian willfully failed to comply with these requirements. It did not implement reasonable procedures to limit the furnishing of reports

---

[11]    Section 1681b(a) authorizes Experian to furnish a report in response to a court order or in accordance with the consumer's written instructions, but those provisions are inapplicable here.

to permissible purposes after *Pintos*. It did not make any effort to verify Finex's uses before it began furnishing reports.[12] And it furnished reports to Finex long after it had reasonable grounds for believing that Finex was using them impermissibly.

These sections do not require plaintiff to prove that the user of the report (Finex) actually lacked a permissible purpose. Congress did not make that an element of what the class must prove to prevail under these sections. The Court should not increase plaintiffs' burden of proof from the standard Congress has imposed and thereby exonerate Experian from liability.

"The preeminent canon of statutory interpretation requires us to 'presume that [the] legislature says in a statute what it means and means in a statute what it says there.' " *BedRoc Ltd., LLC v. United States,* 541 U.S. 176, 183 (2004) (alteration in original) (quoting *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54 (1992)). Thus, statutory interpretation "begins with the statutory text." *Id.* "If the statutory language is unambiguous and the statutory scheme is 'coherent and consistent,' " judicial inquiry must cease. *In re Ferrell,* 539 F.3d 1186, 1190 n. 10 (9th Cir.2008), quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340 (1997). See *Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012), *cert. denied,* 133 S. Ct. 256 (U.S. 2012).

The FCRA begins with Congressional findings and statement of purpose. Congress <u>found</u> that there is a "*need* to insure that consumer reporting agencies exercise their grave responsibilities with…*a respect for the consumer's right to privacy."* § 1681(a)(4), italics added. The <u>purpose</u> of the FCRA, it explained in a subsection entitled "Reasonable procedures," is "to require that consumer reporting agencies adopt *reasonable procedures for*…[the] *proper utilization* of such information in accordance with the requirements of this subchapter." *Id.,* italics added. Plainly Congress wanted CRAs to implement *reasonable procedures*.

The statutory scheme is coherent and consistent. Congress wants CRAs to adopt proper procedures. Congress told the CRAs what procedures are required, but Experian chose to ignore

---

[12]     As of late 2011, it still had not implemented any procedures to verify the uses certified by new collections subscribers. Henke Depo. Tr. 160-162.

those requirements. As a result, Experian sold thousands of reports to Finex knowing that Finex intended to use them for impermissible purposes.  Holding Experian liable to each person whose report it sold to Finex is consistent with Congress's purpose in enacting the FCRA.

Experian urges the Court to read into the FCRA a limitation on its liability that Congress did not provide. It argues that even though it *knew* Finex intended to use the reports impermissibly, the class should be decertified and Experian should be exonerated. Its reason for decertifying the class is the difficulty of culling the few consumers for whom Finex allegedly had a permissible purpose from the majority for whom Finex lacked a permissible purpose. That would reward Experian for its willful violations of the FCRA, which it has largely gotten away with.[13] Decertifying the class would thwart Congress's goal of ensuring that CRAs adopt reasonable procedures. That would encourage Experian to continue shirking its responsibilities.

In *Bateman* the district court denied class certification because of the "disproportionality between the potential liability and the actual harm suffered, the enormity of the potential damages [and defendant's] good faith." 623 F.3d at 713. The Ninth Circuit looked to FACTA to determine whether the court's reasons for denying class certification were consistent with Congressional intent and FACTA's remedial scheme. *Id.* at 716. Finding that those reasons were inconsistent with Congressional intent and unsupported by the language of the Act, it reversed.

So far as plaintiffs are aware, no appellate court has ever held or said that plaintiffs claiming a violation of § 1681b(a)(3) must prove that the user of their reports lacked a

---

[13]     This is the <u>sole</u> lawsuit against Experian for ignoring *Pintos*. Experian (Centanni) Depo. Tr. 7 & 26 and Ex 190, Topic 16.  The claims here represent a small fraction of Experian's violations. The evidence indicates that many collection agencies were using Experian's reports impermissibly. Experian acknowledges that it had to put 273 subscribers on "compliance hold" because they did not sign the recertification form. According to Buell, 25% to 35% of its collections subscribers collect both consensual and nonconsensual consumer debt. Those agencies may have signed the recertification forms (and thus avoided being not put on compliance hold), even though they previously had been using Experian's reports to collect nonconsensual debt. Furthermore the class here has been reduced by a third because of the statute of limitations.  Experian avoids liability for all those violations no matter how the Court rules.

permissible purpose. When Experian furnished reports to Finex, it knew that Finex intended to use the reports to collect nonconsensual towing debts like the one in *Pintos*. It is reasonable to infer that Finex used them to collect nonconsensual towing debts. If the jury finds that Experian willfully violated § 1681b(a)(3) by furnishing reports to Finex without having reason to believe that Finex intended to use them for a permissible purpose, then every person whose report was furnished to Finex is entitled to recover whatever the jury awards as damages.[14]

Section 1681e(a) is a different section, with different wording. There are a few cases that discuss that section. Experian will probably rely on language from *Washington v. CSC Credit Services Inc.*, 199 F.3d 263 (5th Cir. 2000) that indicates that plaintiffs must prove that the user lacked a permissible purpose. The case is distinguishable and its reasoning is not persuasive.

The plaintiffs in *Washington* were consumers whose reports had been sold to an insurance company that apparently used them for claims adjustment purposes, which is not a permissible purpose. *Washington v. CSC Credit Services, Inc.*, 178 F.R.D. 95 (E.D. La. 1998). Plaintiffs claimed that the defendant CRAs did not maintain proper procedures to prevent the misuse of the reports by insurance companies. The CRAs, however, claimed that each plaintiff had given the insurance company their written authorization to obtain the report. *Id.* at 99. Because a CRA is authorized to furnish a consumer report to anyone who has obtained written authorization from the consumer, irrespective of permissible purpose, § 1681b(a)(2), the CRAs argued that plaintiffs would have to prove that their written authorizations were somehow ineffective. That, argued the CRAs, would swamp the case with individual issues. The district court certified the class.

The Fifth Circuit vacated the class certification order. It said the critical issue was whether a plaintiff can bring an action for failure to "maintain reasonable procedures" as required by § 1681e(a) without first showing that a report was disclosed in violation of § 1681b. Relying

---

[14]     Alternatively, if the Court concludes that Experian is not liable to a consumer who asked to have the car towed or had a judgment on the debt, then in Phase 2 it should be Experian's burden to prove those facts with respect to specific consumers on the Finex list.

on language from *Andrews v. Trans Union Corp.*, 7 F.Supp.2d 1056 (C.D. Cal. 1998) and *Middlebrooks v. Retail Credit Co.*, 416 F.Supp. 1013 (N.D. Ga. 1976), it said "we find that the actionable harm the FCRA envisions is improper disclosure, not the mere *risk* of improper disclosure that arises when 'reasonable procedures' are not followed and disclosures are made." 199 F.3d at 267. [15] Because the plaintiffs did not claim that any reports were furnished without written authorization, there was no evidence of improper disclosure.

*Washington* is very different from this case. There was no evidence in *Washington* that any of the reports had been improperly disclosed. Here, in contrast, it is beyond dispute that the vast majority of the reports were improperly disclosed.

More importantly, however, in *Washington* the Fifth Circuit improperly substituted its finding of the statute's purpose in place of Congress's statement of purpose. As quoted above, the Fifth Circuit said "we *find* that the actionable harm the FCRA envisions is improper disclosure." Italics added. That conflicts with Congress's statement that the FCRA's purpose is "to require that consumer reporting agencies *adopt reasonable procedures*…." Congress intentionally defined the violation as the failure to adopt reasonable procedures. Congress told the CRAs what procedures they must adopt. Congress put them on notice that if they willfully fail to comply with *any* such requirement with respect to any consumer, they will be liable to that consumer for statutory damages. § 1681n. The Court should enforce the law as Congress wrote it.

### 3. If A Phase 2 Proceeding Is Required, Plaintiffs Can Prove The Claims of Individual Class Members Without Undue Burden On The Court.

Manageability is a factor in determining if a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. Rule Civ.Proc. 23(b)(3). The critical question is not whether a class action is manageable in the abstract, but how the

---

[15]     *Andrews* was reversed. *See Andrews v. TRW*, 225 F.3d 1063 (9th Cir.2001). *Middlebrooks* was decided on summary judgment. The court did not analyze the statutory language, but instead relied on language from some cases involving accuracy claims. It did not decide, or even consider, the issues that are presented here.

possible problems in managing the case as a class action compare to the problems that would occur in managing litigation without a class suit. The manageability inquiry is a comparative one. *Klay v. Humana, Inc.,* 382 F.3d 1241, 1273 (11th Cir. 2004) ["We are not assessing whether this class action will create significant management problems, but instead determining whether it will create relatively more management problems than any of the alternatives (including, most notably, 600,000 separate lawsuits by the class members.)"]; *Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1358 (11th Cir. 2009); *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 140 (2d Cir. 2001).

In arguing manageability, Experian recasts it as a factor in determining  ascertainability, predominance and superiority.  It is really a factor only for the superiority inquiry.

### a.    The Class Is Ascertainable

A class is ascertainable if the class definition "specifies 'a distinct group of plaintiffs whose members [can] be identified with particularity.' " *Campbell v. PricewaterhouseCoopers, LLP,* 253 F.R.D. 586, 593 (E.D.Cal.2008) (quoting *Lerwill v. Inflight Motion Pictures, Inc.,* 582 F.2d 507, 512 (9th Cir.1978)); *Sullivan v. Kelly Servs., Inc.,* 268 F.R.D. 356, 362 (N.D. Cal. 2010). "The identity of class members must be ascertainable by reference to objective criteria." 5 James W. Moore, *Moore's Federal Practice,* § 23.21 [1] (2001). The class definition is sufficient if it is "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v. Boeing N. Am., Inc.,* 184 F.R.D. 311, 319 (C.D.Cal.1998).

The Court's original class definition and its amended definition use objective criteria by which the parties and the Court can ascertain whether an individual is a class member.

### b.    Common Questions Predominate

In arguing that alleged manageability problems mean common questions do not predominate, Experian again confuses the two inquiries. Rule 23(b)(3)'s predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

representation." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998), quoting *Amchem Products, Inc. v. Windsor*, 521U.S. 591, 623 (1997).  The predominance inquiry "focuses on the relationship between the common and individual issues." *Hanlon, supra* at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id*. citing 7A Wright, Miller & Kane, *Federal Practice & Procedure* § 1778 (2d ed.1986).

All the liability issues are common questions.  Did Experian willfully violate § 1681b(a)(3) by furnishing consumer reports to Finex when it did not reasonably believe that Finex was going to use them for a permissible purpose?[16] Did Experian willfully violate § 1681e(a) by failing to maintain "reasonable procedures," by failing to make a "reasonable effort" to "verify" Finex's uses of the reports and by continuing to furnish reports to Finex when it had "reasonable grounds for believing" that Finex would use them for impermissible purposes?[17] These are common questions that can be resolved for all class members in one trial.

Damage amounts are also common questions. Class members can recover statutory damages of $100 to $1,000 without proof of any actual injury. *Bateman, supra*, 623 F.3d at 718. To set the amount of statutory damages, the jury should consider the information contained in the Collection Advantage reports, the increased risk of identity theft, the consumers' loss of control over their financial information, and the circumstances of Experian's sales to Finex.  It is irrelevant how the release of these reports affected particular class members. Cf. *Augustin v. Jablonsky*, 819 F. Supp.2d 153, 157-158 (E.D.N.Y. 2011) [in prisoners' class action for illegal strip searches, the court valued their claims for "injury to human dignity" by considering how the searches were conducted, but did not consider how the inmates reacted to the searches.]  Punitive

---

[16]     First Amended Complaint ¶ 29 (FAC), Document 59.
[17]     FAC ¶ 28.

damages can be determined by reference to Experian actions and inactions.  See, e.g.,

*Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 142-43 (D.N.J. 2009).

### c.      A Class Action Is Superior

Manageability factors into whether a class action is superior to other methods of

adjudicating the claims of the class members, but it is only one of four enumerated factors:

(A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)    the likely difficulties in managing a class action.

Rule 23(b)(3).  All four factors weigh in favor of this case proceeding as a class action.

*First*, the members of the class have little interest or incentive to maintain individual

actions due to the small amount of damages they can recover. *Second*, there is no other pending

litigation brought by any consumers for Experian's sales to Finex or any other collection agency

that was using the reports to collect nonconsensual debts. Experian (Centanni) Depo. Tr. 7,

26:11-23, Ex 190, Topic 16. The vast majority of class members have no idea that Experian sold

their Collection Advantage to Finex.[18]  *Third*, having a single court determine whether Experian

violated the FCRA will avoid the risk of inconsistent determinations.

The fourth factor, manageability difficulties, is the only one that Experian mentions.

Several points need to be noted. *First*, any such management difficulties, if they exist at all,

would arise in the second phase only. As Judge Posner explained in *Carnegie v. Household Int'l,*

*Inc.*, 376 F.3d 656, 661 (7th Cir. 2004), "there is a big difference from the standpoint of

---

[18]    Experian does not notify the consumer when it sells a Collection Advantage report. Ogilvie dec ¶ 7 and Exhibit E thereto.  Experian treats Collection Advantage reports as "soft inquiries" and discloses them only on the file disclosure that is sent to a consumer who asks for it. Thus the only way a consumer can learn that Experian sold a Collection Advantage report about him is by obtaining the file disclosure directly from Experian and noticing in the section entitled "Inquiries Shared Only With You" that Experian sold a report to a debt collector.

manageability between the liability and remedy phases of a class action." If the Court agrees that plaintiffs do not have the burden of proving that Finex lacked a permissible purpose for each person on the list and the jury finds that Experian willfully violated the Act, the case would be over in Phase 1. If a Phase 2 proceeding is needed to separate the few who initiated the tows from the many who did not, a separate proceedings of some sort may be required but that, as Judge Posner remarked, "won't be the end of the world." *Id.*

*Second*, Experian's manageability concerns are entirely speculative. Experian has not proffered *any* admissible evidence to show that anyone on the Finex list initiated the tow or had an adverse judgment on the towing debt.[19] Its speculations are contradicted by all the record evidence. Price and Blas testified that Finex collected nonconsensual towing claims like the one in *Pintos*. The towing company documents support that testimony, which is probably why Experian has not offered any such documents. See Ogilvie Decl. ¶ 8.  Furthermore Price took elaborate precautions to ensure that the Finex list does not include any consumers who initiated the tows or who had judgments on the debts. Price dec. ¶ 10; Price reply dec. ¶¶ 5, 6 & 7.  Experian's unsupported speculation provides no reasonable basis to decertify the class.

*Third*, even assuming that the Finex list is over-inclusive, Experian's alleged manageability problems result directly from its own FCRA violations. If it had responded properly to *Pintos*, Finex never would have obtained *any* consumer reports and this case would not be pending. A defendant's misconduct that makes it difficult to identify or manage a class action should not be

---

[19]      In opposition to the class certification motion, Experian submitted a declaration for its alleged towing expert, Jesse Enriquez, who opined that 25% to 30% of the people on the Finex list initiated their towing transactions. It is doubtful that Enriquez's opinion is admissible under Rule 702 of the Federal Rules of Evidence, *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). But even if his testimony was admissible, that would not be a valid reason to decertify the class. "[S]peculation as to the unmanageability of a class action is an inadequate basis for refusing certification, especially in the absence of a reasonable alternative method of adjudication. *In re Farmers Med-Pay Litigation*, 2007 WL 7284001 (Okla. Dist. Ct. 2007), *order aff'd*, 2010 OK CIV APP 12, 229 P.3d 551 (Div. 4 2009), cert. *denied*, (Jan. 25, 2010).

the basis for denying class certification. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990); *see also Appleton Electric Co. v. Advance-United Expressways*, 494 F.2d 126, 135-39 (7th Cir.1974) [Defendants' failure to keep records necessary to refund overpayments did not make the class unmanageable.]

### 4.   Plaintiffs' Proposed Trial Plan

In Phase 1 the jury should decide liability and damages:

1.   Did Experian willfully violate the FCRA

   a.   by furnishing consumer reports to Finex when it did not have reason to believe that Finex would use those reports for permissible purposes; or

   b.   by failing to maintain reasonable procedures to limit the furnishing of consumer reports to permissible purposes after *Pintos* was decided; or

   c.   by failing to make a reasonable effort to verify Finex's uses of its reports prior to furnishing any reports to Finex; or

   d.   by furnishing consumer reports to Finex when Experian had reasonable grounds for believing that Finex would use the reports for impermissible purposes?

2.   If you answered "yes" to any subpart of Question 1, what amount do you award to each plaintiff for statutory damages to compensate each plaintiff?  [Your statutory damage award must be between $100 and $1,000 per consumer.]

3.   If you answered "yes" to Question 1, what amount, if any, do you award to each consumer for punitive damages?

Plaintiffs contend that if the jury finds that Experian willfully violated any of these sections, judgment should be entered in favor of every consumer whose report was furnished by Experian to Finex. If the Court agrees, there would be no need for a Phase 2 proceeding.  If the jury finds for Experian on all claims, the case will be over. A Phase 2 will be needed only if the jury finds against Experian on liability and the Court requires the class to prove that Finex lacked a permissible purpose with respect to each person on the Finex list.

If a Phase 2 is required, the usual procedure is to use claim forms. Claim forms are often used where consumers have to establish some basic facts in order to participate in the class's recovery. See, for example *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 674-75 (N.D. Cal.

2011), *Zeisel v. Diamond Foods, Inc.,* C 10-01192 JSW, 2011 WL 2221113 (N.D. Cal. June 7, 2011) and *Six (6) Mexican Workers v. Arizona Citrus Growers*, 641 F.Supp. 259, 263 (D.Ariz. 1986). Newberg explains that procedures used in small claims courts offer one important model for simple and economical means to resolve individual issues in class actions and approves "simple proofs" and "plain English forms." 3 Newberg on Class Actions § 9:64.

Experian cites *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012), implying that claim forms are improper, but *Marcus* does not support its argument. *Marcus* was a class action involving a hodge-podge of state law claims brought by a BMW lessee whose Bridgestone "run-flat" tires had repeatedly had gone flat. The Third Circuit vacated the class certification order because the district court had not included a readily discernible, clear and complete list of the class's claims. In remanding the case, the Court mused that if plaintiff tried again to certify a class, the district court should be sensitive to ascertainability issues. It noted that BMW might not be able identify the vehicles that left Germany with Bridgestone tires and that dealers change tires before selling the vehicles. Moreover, there would be no way for BMW to confirm that a particular consumer's tires had gone flat and been replaced. In light of all that, it cautioned "against approving a method that would amount to no more than ascertaining by potential class members' say so." *Marcus supra* at 594. It said forcing defendants to accept absent persons' declarations "without further indicia of reliability" could have serious due process implications.

Here there is "further indicia of reliability." Experian could review tow company files to confirm that the tows were nonconsensual. Documents in those files indicate who ordered the tows. It can ask the tow companies if the tow debts were nonconsensual and if the companies obtained judgments. It can search public records for judgments on the debts. There are plenty of sources of information it can use to confirm the veracity of the claims.

If a Phase 2 is needed, the Court could also employee summary judgment procedures or use special masters to assist in the verification of claims. See, e.g., *Kraszewski v. State Farm General Ins. Co*., 912 F.2d 1182, 1183 (9th Cir. 1990). Or the Court could use subclasses. In sum, it has sufficient tools to resolve the manageability problems that are only speculative now.

### C.    Response to Experian's Request To Modify the Class Definition

Plaintiffs agree that consumers who have filed for bankruptcy should be excluded from the class, but they disagree with Experian's claim that deceased people should be excluded from the class.  The only court to decide this issue rejected Experian's argument. *Lowe v. Experian*, 340 F. Supp. 2d 1170 (D. Kan. 2004). *Lowe* explained that the survivability of a federal claim is governed by federal common law.  Under federal common law, a claim for compensatory damages survives the death of the plaintiff, but a claim for punitive damages does not.  *Id.* at 1175, citing *Smith v. Dep't of Human Services, State of Okla.,* 876 F.2d 832, 834 (10th Cir.1989) and *In re Schreiber,* 110 U.S. 76, 80, 3 S.Ct. 423, 28 L.Ed. 65 (1884)). *Bateman* says that the FCRA's statutory damages serve a compensatory function, 623 F.3d at 718, so the claim for statutory damages survives the death of a class member. The class should include deceased class members and their heirs or estates should recover statutory damages but not punitive damages.

## IV.    CONCLUSION

Experian's motions for summary judgment and to decertify the class should be denied. Its motion to modify the class definition should be granted in part only. People who have filed bankruptcy should be excluded from the class, but deceased class members should remain in the class and should recover statutory damages but not punitive damages.

Dated: July 25, 2012          By  _/s/_     *Andrew J. Ogilvie*
                                    Andrew J. Ogilvie
                              Attorneys for plaintiffs and the putative class