United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROANNE HOLMAN; NARCISCO NAVARRO HERNANDEZ; MIGUEL A. ALVAREZ; and all others similarly situated, | No. C 11-0180 CW |
| | ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND TO DECERTIFY THE CLASS |
| Plaintiffs, | |
| v. | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | (Docket No. 186) |
| Defendant. | |

————————————————————————/

Defendant Experian Information Solutions, Inc. has filed a motion for summary judgment and a motion to decertify the class. Plaintiffs Roane Holman, Narcisco Navarro Hernandez and Miguel A. Alvarez oppose the motion and Defendant has filed a reply. Having considered the parties' papers and the entire record in this case, the Court DENIES Defendant's motion for summary judgment and motion to decertify the class. (Docket No. 186).

BACKGROUND

This action arises from Experian's purported disclosure of the credit reports of putative class members to Finex Group, LLC in violation of the Fair Credit Reporting Act (FCRA). Plaintiffs seek statutory damages under the FCRA for Experian's alleged willful violation of the statute by furnishing consumer reports to Finex and failing to verify that Finex was using those reports for a permissible purpose, even though Experian had reason to believe that Finex was not doing so.

United States District Court
For the Northern District of California

I.   Experiences of the named Plaintiffs

A. Roane Holman

On August 8, 2009, Holman was driving his Toyota car and was stopped and arrested on suspicion of drunk driving.  Holman Decl. ¶ 2.  The police had a towing company tow Holman's car from the scene.  Id.  They did not ask him if he wanted the car towed.  Id. Holman was unable to pay the towing company for towing and storage fees for his car.  Id. at ¶ 3.  The towing company subsequently sold his car in a lien sale.  Id.  Holman later received bills from Finex seeking to collect the balance owed for towing and storage.  Id.

Plaintiffs allege that Experian provided Finex with a consumer report regarding Holman, including his credit information, on September 14, 2009.  First Am. Compl. (1AC) ¶ 15. Experian admits that it did.  Answer ¶ 15.

B. Narciso Navarro Hernandez

Navarro formerly owned a LeBaron car.  He traded it for a truck, and subsequently completed a form at the DMV to record the transfer of the car.  Navarro Depo. Tr. 22:18-23:19, 25:1-5.[1]

Plaintiffs allege that later on, in August 2009, a law enforcement officer directed a towing company to tow the car.  1AC ¶ 8.  The towing company sent him a bill, which he did not pay. Id.  The company subsequently sold the car at an auction and claimed he was liable for the deficiency.  Id.  When Navarro failed to pay the deficiency, the towing company retained Finex to

_____

[1] Although Experian suggests that Navarro in fact did not trade away the car, Experian offers no evidence to contradict Navarro's testimony.

2

collect it.  Id.  On September 1, 2010, Experian furnished a consumer information report with his credit information to Finex for use in collecting the debt.  Id. at ¶ 17.

C. Miguel A. Alvarez

Alvarez formerly owned a 1985 VW Jetta.  Alvarez Decl. ¶ 2. He sold the car on September 11, 2009 and subsequently filed a Notice of Transfer and Release of Liability with the California Department of Motor Vehicles.  Id.

Alvarez subsequently received a bill from a towing company for towing and storage of the Jetta, which had taken place after he sold the car.  Id. at ¶ 3.  Alvarez did not initiate the towing.  Id.  He alleges that a law enforcement officer directed the towing company to tow the car.  1AC ¶ 7.

After Alvarez refused to pay the bill, the towing company sent him a notice, stating that the car had been sold at a lien sale and asking him to pay the towing deficiency.  Alvarez Decl. ¶ 4.  Finex subsequently sent Alvarez bills for towing and storage.  Id.

Plaintiffs allege that Experian furnished Finex with a consumer report regarding Alvarez, including his credit information, on June 29, 2010.  1AC ¶ 16.

II.  Appeal in Pintos v. Pacific Creditors Association and Experian's related actions

In Pintos v. Pacific Creditors Association, Case No. C 03 5471 CW (N.D. Cal.), this Court granted summary judgment in favor of the defendants, Pacific Creditors Association (PCA) and Experian, concluding that the law permitted Experian to furnish Maria Pintos's credit report to PCA for the purpose of collecting

United States District Court
For the Northern District of California

her towing-related debt.  Experian had maintained that this purpose fell within the scope of 15 U.S.C. § 1681b(a)(3)(A), which authorizes a consumer reporting agency to furnish a consumer credit report to a person it has reason to believe "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer."  Pintos appealed.  While the alleged events in the current case occurred, proceedings on Pintos's appeal were ongoing.

The Pintos appeal generated two opinions by the Ninth Circuit.  In the first, issued September 21, 2007, the Ninth Circuit concluded that the Fair and Accurate Credit Transactions Act of 2003 (FACTA), Pub. L. No. 108-159, 117 Stat. 1952, amended the FCRA to define "credit" as a "'right . . . to defer payment,'" and, as a result, a "'credit transaction' is a transaction in which the consumer directly participates and voluntarily seeks credit."  Pintos v. Pac. Creditors Ass'n, 504 F.3d 792, 798 (9th Cir. 2007) (citing Stergiopoulos v. First Midwest Bancorp, Inc., 427 F.3d 1043, 1047 (7th Cir. 2005)).  It also held that Pacific Creditors Association's (PCA's) blanket certification to Experian that it would use the credit reports for permissible purposes did not absolve Experian of responsibility, because "the reporting agency must make 'a reasonable effort' to verify the certifications and may not furnish reports if 'reasonable grounds' exist to believe that reports will be used impermissibly."  Id. at 800 (citing 15 U.S.C. § 1681e(a)).

United States District Court
For the Northern District of California

In response to this decision, in October 2007, Experian distributed a "Talk Track" memorandum to its employees outlining the Ninth Circuit's holding and the company's position regarding the case, and instructing its employees to use the information in the memorandum when speaking with collections customers. Henke Decl. ¶ 4; Anderson Decl., Ex. 7, at 1. In the memorandum, Experian stated that it was "seeking court review and rehearing of [the] decision" and would "notify its clients regarding compliance procedures after the final outcome of the court's review." Anderson Decl., Ex. 7, at 1. Experian directed its employees to tell "clients to consult with their company's legal counsel for guidance in this matter" if the clients asked a question regarding the Pintos decision. Id.; Henke Depo. Tr. 105:13 106:4.

On April 30, 2009, the Ninth Circuit withdrew its first opinion and issued a superseding decision. The second Pintos opinion excised the previous references to the FACTA, but reached the same conclusion: collection of a towing-related debt did not provide a permissible purpose to obtain or furnish a credit report where it did not constitute "a transaction initiated by [the consumer]" and was not a judicially-established debt. Pintos v. Pac. Creditors Ass'n, 565 F.3d 1106, 1114 (9th Cir. 2009). The Ninth Circuit did not alter its holding or analysis regarding Experian's liability for PCA's FCRA violations. Id. at 1114-15.

In response to the second decision, Experian distributed a second Talk Track memorandum to its employees in May 2009. Henke Decl. ¶ 4; Anderson Decl., Ex. 7, at 2. The memorandum provided staff with an update regarding the more recent decision, and included the same description of the company's position as that

contained in the previous memorandum.  Anderson Decl., Ex. 7, at
2.  Experian again stated that it was "seeking court review and
rehearing of [the] decision" and would "notify its clients
regarding compliance procedures after the final outcome of the
court's review."  Id.  Experian again directed its employees to
tell "clients to consult with their company's legal counsel for
guidance in this matter."  Id.

Experian petitioned for rehearing en banc, which was denied;
seven circuit judges dissented from the denial.  See Pintos v.
Pac. Creditors Ass'n, 605 F.3d 665, 670-72 (9th Cir. 2010).
Following the denial of the petition, on May 21, 2010, the Ninth
Circuit panel amended the second Pintos opinion to clarify what
arguments Experian and PCA could raise on remand to this Court.
Id. at 670.  This amendment did not alter the analysis or holding
of the April 2009 opinion.  Id.

In June 2010, Experian issued a third Talk Track memorandum
to its sales employees describing the recent denial of the motion
for rehearing en banc and the holding of the earlier decisions.
Henke Decl. ¶ 4; Anderson Decl., Ex. 7, at 3.  In the memorandum,
Experian stated that it would "notify its clients in the coming
weeks regarding new compliance policies, possibly including
re-certification, updated membership documents, and audits."
Anderson Decl., Ex. 7, at 3.  It again stated that it "urges all
clients to consult with their companies' legal counsel for
guidance in this matter."  Id.

In September or October 2010, Experian mailed a document
titled "Important Notice" to all of its subscribers.  Henke Decl.
¶ 5, Ex. A; Anderson Decl., Ex. 5.  In the notice, Experian

described the <u>Pintos</u> case and the Ninth Circuit's holding. Experian also stated that

> Experian will be contacting all pertinent customers to discuss this issue. We expect to confirm with you that you are in compliance with this interpretation of the FCRA. Until then, unless you advise otherwise, we are relying upon you to comply with your contract with Experian and this interpretation of the law. This means that you may obtain Experian reports for collection purposes only when collecting an obligation arising from a transaction voluntarily initiated by the consumer or patient or an obligation that has been judicially established by a court order or judgment.

Anderson Decl., Ex. 5.

Experian began a process to have its collections clients "re-certify their permissible purpose of collections." Anderson Decl., Ex. 8, at 1. On December 15, 2010, Experian held a training session for its staff, in which it reviewed the impacted client accounts and taught staff about an online process that it created for the re-certification process. Experian provided a webinar for staff who could not attend the training. <u>Id.</u> at 2. Experian set July 1, 2011 as the deadline for re-certification of clients. <u>Id.</u> at 1.

On January 10, 2011, the United States Supreme Court denied Experian's petition for a writ of certiorari. Subsequently, in January 2011, Experian issued a fourth and final Talk Tracks memorandum to its staff, describing the case. Henke Decl. ¶ 6; Anderson Decl., Ex. 7, at 4. Experian also sent a second notice to its clients, which was largely identical to the first mailed notice. Henke Decl. ¶ 7, Ex. B.

III. Experian's relationship with Finex

Paul Price and Antonia Sainz-Blas founded Finex, a collection agency specializing in collecting towing deficiency claims for

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

towing companies, in late 2007.  Price Decl. ¶ 1.  Finex began its collection activities in late 2007 or early 2008.  Id. at ¶ 3.

Finex began discussing Experian's services with Experian in late 2007.  Blas Decl. ¶ 5.  Finex's primary contact at Experian for the duration of its relationship with Experian was Scot Levine, an Account Executive.  Levine Decl. ¶ 3.  On Finex's applications for services with Experian in December 2007 and January 2008, Finex described itself as a collection agency and call center, and listed its permissible purpose for obtaining credit information as follows: "We are a consumer & commercial 3rd party collection agency."  Anderson Decl. ¶¶ 8-9, Exs. 2 and 3.  During its process of approving Finex to report and receive credit information, an Experian employee noted that Finex's permissible purpose was "collections."  Anderson Decl., Ex. 11.  Experian employees printed pages from Finex's website that indicated that Finex provided collections for towing companies and placed these documents in Experian's file on Finex.  Henke Depo. Tr. 49-50, 64:22-66:10, 71-77; Anderson Decl., Ex. 9.

Finex entered into a Subscriber Agreement with Experian in January 2008, under which Finex received Collection Advantage reports from Experian, which contain credit information taken from Experian's consumer credit database.  Blas Decl. ¶ 5; Levine Decl. ¶ 3.  Finex began receiving these reports in early 2008.  Price Decl. ¶ 20.  The Collection Advantage reports contain a "Recovery Score," which Levine "described as a score that ranks accounts based on the likelihood the debtors will pay the debt."  Price Decl. ¶ 12.

**United States District Court**
For the Northern District of California

Price and Blas state that they discussed the <u>Pintos</u> decisions with Levine on multiple occasions and that they told Levine repeatedly, including in their early conversations with him, that "Finex specialized in collecting on towing deficiency claims." Price Decl. ¶¶ 12-13; Blas Decl. ¶¶ 6, 9, 10. During their initial conversation with him, Price and Blas asked him whether in light of <u>Pintos</u> "there was any problem with Finex receiving the Recovery Scores for use in its towing claims collections," to which Levine responded that "there was no problem." Price Decl. ¶ 6. In June 2008, Price and Blas told Levine that "99% of our collections were for towing" and said they "wanted to be sure we were not getting FRCA information we should not be getting in light of <u>Pintos</u>." <u>Id.</u> at ¶ 9. Levine assured them that "Finex was not getting any information it should not be getting for those collections." <u>Id.</u> Also in June 2008, Price sent Levine an email stating that one type of debt that Finex collected was for towing. Anderson Reply Decl. ¶ 2, Ex. 18. Again in October 2008, Levine "assured" Blas that they "were not in violation of the <u>Pintos</u> decision in using the Collection Advantage reports, including the Recovery Scores." Blas Decl. ¶ 10.

Finex's account with Experian was discontinued in late 2010, and Finex last obtained a Recovery Score from Experian on November 19, 2010. Levine Decl. ¶ 2; Price Decl. ¶ 25; Anderson Decl. ¶ 18. At that time, Experian had not yet sent Finex a re-certification request for compliance with the <u>Pintos</u> decision. Henke Decl. ¶¶ 7-8. During the course of their relationship from 2008 to 2010, Experian furnished Finex with Collection Advantage reports on more than 40,000 consumers. Price Decl. ¶ 22.

IV.  Background of this action

   Holman initiated this action on January 12, 2011 as the sole Plaintiff, naming as Defendants Experian and Finex.  <u>See</u> Docket No. 1.  Defendant Experian filed a motion to dismiss the complaint, arguing that, in September 2009, no authority clearly established that it was impermissible under FCRA to furnish consumer credit reports for use in the collection of towing-related debts.  Specifically, Experian argued that the use of credit reports to collect towing-related debts was debatable until January 2011, when the Supreme Court denied its petition for certiorari in <u>Pintos</u>.

   On May 25, 2011, this Court denied Experian's motion to dismiss the complaint.  Docket No. 32.  Holman later settled his claims against Finex and Holman and Experian stipulated that Plaintiff could file an amended complaint, removing the claims against Finex and adding Navarro and Alvarez as named Plaintiffs. Docket Nos. 40, 42, 56.  This Court granted the stipulation on September 16, 2011, dismissing the claims against Finex.  Docket No. 44.  Plaintiffs filed their first amended complaint, omitting the claims against Finex and adding Navarro and Alvarez as named Plaintiffs, on October 5, 2011.  Docket No. 59.

   On December 1, 2011, Plaintiffs filed their motion for class certification.  To prosecute their single claim for statutory damages for Experian's willful violation of the FCRA, Plaintiffs sought certification of a class consisting of "all consumers whose consumer reports were furnished by Experian to Finex in connection with Finex's efforts to collect on a towing deficiency claim from

United States District Court
For the Northern District of California

January 1, 2008 to the present." Mot. at 12.  The Court granted

Plaintiffs' motion to certify a class including:

> all consumers whose consumer reports were furnished by
> Experian to Finex from January 12, 2009 to the present
> in connection with Finex's efforts to collect on a
> towing deficiency claim that was not reduced to a
> judgment and was not the result of a transaction that
> the consumer initiated.

Docket Nos. 138, 146.

LEGAL STANDARD

I.   Summary Judgment

    Summary judgment is properly granted when no genuine and

disputed issues of material fact remain, and when, viewing the

evidence most favorably to the non-moving party, the movant is

clearly entitled to prevail as a matter of law.  Fed. R. Civ. P.

56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986);

Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir.

1987).

    The moving party bears the burden of showing that there is no

material factual dispute.  Therefore, the court must regard as

true the opposing party's evidence, if supported by affidavits or

other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg,

815 F.2d at 1289.  The court must draw all reasonable inferences

in favor of the party against whom summary judgment is sought.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952

F.2d 1551, 1558 (9th Cir. 1991).

    Material facts which would preclude entry of summary judgment

are those which, under applicable substantive law, may affect the

outcome of the case.  The substantive law will identify which

facts are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

II.  Motion to Decertify the Class

Under Federal Rule of Civil Procedure 23(c)(1)(C), an order granting class certification may be altered or amended at any time before judgment.  Furthermore, the court may decertify a class if the requirements for class certification under Rule 23 are not met.  <u>Gonzales v. Arrow Financial Services LLC</u>, 489 F. Supp. 2d 1140, 1153 (S.D. Cal. 2007).  The party seeking decertification of a class bears the burden of demonstrating that the elements of Rule 23 have not been established.  <u>Slaven v. BP America, Inc.</u>, 190 F.R.D. 649, 651 (C.D. Cal. 2000); <u>accord, e.g.</u>, <u>Otsuka v. Polo Ralph Lauren Corp.</u>, 2010 WL 366653, at *4 (N.D. Cal.); <u>Arrow Financial Services</u>, 489 F. Supp at 1153.

DISCUSSION

I.  Motion for Summary Judgment

A.  <u>Pintos</u>

Defendant first argues that summary judgment is warranted in its favor because the prohibition on the furnishing of credit reports to debt collectors seeking to collect debts related to non-consumer-initiated towing was not "clearly established" before June 1, 2010 when the Ninth Circuit issued the mandate in <u>Pintos</u>. As Defendant acknowledges, the Court rejected this argument when it denied Defendant's motion to dismiss.  <u>See</u> Docket No. 32. However, Defendant argues that the subsequent Supreme Court decision regarding qualified immunity in <u>Ashcroft v. al-Kidd</u>, 131 S. Ct. 2074 (2011), "warrants" summary judgment on the claims of

**United States District Court**
For the Northern District of California

all class members whose claims arose before June 1, 2010.  Def.'s
Mot. at 2.

As discussed in the Court's order denying Defendant's motion
to dismiss, the FCRA limits the purposes for which consumer
reporting agencies may disclose credit reports.  15 U.S.C.
§ 1681b.  For willful violations of the statute, prevailing
consumers may recover actual or statutory damages, punitive
damages and reasonable attorneys' fees.  15 U.S.C. § 1681n(a).  In
Safeco Insurance Company of America v. Burr, 551 U.S. 47, 57
(2007), the Supreme Court held that a consumer must show that the
defendant violated the FCRA either knowingly or recklessly to
prove a willful violation.  However, the Safeco Court made clear
that a defendant's action is considered reckless if it "is not
only a violation under a reasonable reading of the statute's
terms, but shows that the company ran a risk of violating the law
substantially greater than the risk associated with a reading that
was merely careless."  Id. at 69.

Defendant argues that the Supreme Court "borrows its
standard" for recklessness from the analysis of whether a legal
rule is "clearly established" for purposes of qualified immunity.
Def.'s Mot. at 1.  However, Defendant overstates the Safeco
Court's reliance on qualified immunity analysis.  Indeed, the
Safeco Court only mentions qualified immunity once, in a
parenthetical to a citation introduced by "Cf."  See Safeco, 551
U.S. at 70 (citing Saucier v. Katz, 633 U.S. 194 (2001)).  "Cf."
is used to introduce a citation when the "[c]ited authority
supports a proposition different from the main proposition but
sufficiently analogous to lend support.  Literally, 'cf.' means

1 'compare.'"   The Bluebook: A Uniform System of Citation (Columbia
2 Law Review Ass'n et al. eds., 19th ed. 2010) at 55.

3        Accordingly, this Court need not revisit its earlier decision
4 based on an intervening case regarding qualified immunity.
5 Moreover, the Supreme Court's decision in al-Kidd simply restated
6 the existing rules with respect to qualified immunity and applied
7 them to a specific constitutional question.   al-Kidd 131 S. Ct. at
8 2083.   The Court DENIES Defendant's motion for summary judgment
9 with respect to the claims of all class members whose claims arose
10 before June 1, 2010.

11        B.   Plaintiff Holman's Claim

12        Defendant next argues that Plaintiff Holman's individual
13 claim fails because his decision to drive while intoxicated and to
14 run from the police when he was pulled over "initiated" the
15 towing.   However, Defendant raised this argument in its opposition
16 to Plaintiffs' motion to certify the class.   The Court has already
17 addressed and rejected this argument.   Defendant does not cite any
18 intervening legal authority.   Accordingly, the Court DENIES
19 Defendant's motion for summary judgment with respect to Plaintiff
20 Holman's individual claim.

21 II.   Motion to Decertify the Class

22        Defendant next moves for an order decertifying the class.
23 Defendant argues that since the Court granted Plaintiffs' motion
24 for class certification, "the class's unmanageability has come
25 into sharper focus."   Def.'s Mot. at 16.   This claim of
26 unmanageability is based on Defendant's position that the only way
27 to protect its rights under the Seventh Amendment would be to have
28 each of the class members provide live testimony, subject to

cross-examination, regarding their towing debts.  Defendant
asserts that such testimony is necessary to ensure that
individuals with consumer-initiated tows are not included in the
class.  Therefore, Defendant argues, the class is not
ascertainable, common issues do not predominate and a class action
is not a superior method for resolving class members' claims.
Even assuming that such testimony is required, the Court finds
that Defendant has not met its burden of demonstrating that the
requirements of Rule 23(b) have not been established. [2]

A.   Ascertainability

Defendant asserts as a matter of law that "when individuals
. . . will need to testify in court to prove not only their class
membership but also an element of liability, the class is not
ascertainable."  Def.'s Mot. at 18.  However, each of the cases
Defendant cites in support of its argument is factually
distinguishable from this case.

For example, in Marcus v. BMW of N. Am., LLC, 687 F.3d 583
(3d. Cir. 2012), the district court certified a class of current
and former owners and lessees of used or new BMWs equipped with
certain tires, "whose tires have gone flat and been replaced," in
a case alleging that those tires and the cars equipped with them
were defective.  Id. at 592.  The Third Circuit reversed, holding,
"Among other problems" the class claims did "not satisfy the
numerosity and predominance requirements."  Id. at 588.  When

_____

[2] In their opposition to Defendant's motion to decertify,
Plaintiffs argue that they need not prove that each class member's
debt was "not the result of a transaction that the consumer
initiated."  However, as discussed below, the limitation is a
necessary part of the class definition.

addressing ascertainability, the Third Circuit noted that the defendants' records would not identify which purchasers or lessees' cars had the specific type of tires.  Further, the Marcus court noted problems with the need to attain information about "whether and why" each potential class members' tires might "have gone flat and been replaced."  Id. at 594.  For example, the lead plaintiff in that case had suffered four flat tires, two of which his expert agreed would have occurred with any tire.  In contrast, Defendant's records in this case provide the possible universe of class members, and objective information can establish whether individuals should be excluded because their tows were consumer-initiated or they had judicially-established debts.

Two of the other cases cited by Defendant also involve situations in which the defendants did not have records even to identify the universe of potential class members.  See Mann v. TD Bank, N.A., 2010 WL 4226526 (D.N.J.) (proposed class composed of individuals who incurred dormancy fees on gift cards where bank records only indicated who purchased gift cards and not who held the gift card at the time any fee was assessed); Cumming v. S.C. Lottery Comm'n, 2008 WL 906705 (D.S.C.) (proposed class of individuals who purchased scratch-off lottery tickets at certain times).

B.   Predominance

Defendant next argues that the need for individual testimony to determine whether individuals had consumer-initiated tows

United States District Court
For the Northern District of California

overrides any common legal issues. [3]   Accordingly, Defendant argues that the class does not meet Rule 23(b)(3)'s predominance requirement.   Again the cases Defendant cites are distinguishable.

For example, in Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180 (9th Cir. 2001), the Ninth Circuit affirmed the denial of a motion for class certification in a products liability case concerning a medical device.   The Zinser court acknowledged that there might be common issues in the case, "such as those relating to liability to the extent that any alleged defect . . . may have been caused by [the defendant's] alleged negligence" but held that "to determine causation and damages . . ., it is inescapable that many triable individualized issues may be presented."   Id. at 1189.   Examples of such issues included whether the alleged defect was caused by "negligent manufacture . . . negligent shipping or handling . . . [or] improper handling [] by physicians or medical staff."   Id.

In contrast to this multi-faceted, fact-intensive inquiry, the only individual inquiry in this case is whether the debt collected was reduced to a judgment or based on a consumer-initiated tow.   The fact that the class is large and the process could be lengthy does not take away from the limited and discrete

---

[3] Defendant argues for the first time in its reply brief that damages are not a common question, suggesting that the Court will need to make individual inquiries into the actual damages suffered by each class member to determine the proper amount of statutory damages to award.   The Court is not convinced that such inquiries will predominate.   Moreover, the Court notes that one of the stated purposes of the FCRA is to insure "a respect for the consumer's right to privacy."   15 U.S.C. § 1681.   Any improper disclosure, no matter the damages suffered, is a violation of the consumer's right to privacy.

United States District Court
For the Northern District of California

nature of the inquiry.  The other cases Defendant cites are similarly distinguishable.  See, e.g., Villa v. United Site Servs. of Cal., Inc., 2012 WL 5503550 (N.D. Cal.) (denying certification of class for state meal and rest claims where defendant had no uniform policy with respect to meal breaks); In re Phenylpropanolamine (PPA) Prods. Liability, 214 F.R.D. 614 (W.D. Wash. 2003) (denying certification of a class where individuals would need to demonstrate that they had purchased and possessed as of a certain date one of a large number of over-the-counter medications).

C.   Superiority

Defendant's final argument in support of decertification of the class is that where, as here, trying the class's claims would require testimony from many witnesses, a class action is not a superior method for resolving those claims.[4]  However, like the cases Defendant cites in support of its arguments regarding ascertainability and predominance, the cases it cites regarding superiority are distinguishable.

For example, in Weigle v. FedEx Ground Package Sys., Inc., 267 F.R.D. 614 (S.D. Cal. 2010), the district court granted a motion to decertify four classes of employees who alleged they were improperly classified as exempt under California law and denied overtime and meal and rest breaks.  The district court relied on Ninth Circuit case law that held that "'the fact that an

---

[4] To the extent Defendant's argument is based on its assertion that over 36,000 individuals will have to testify, the Court notes that the number will likely be much smaller because only those class members who file a claim will be subject to cross examination.

**United States District Court**
For the Northern District of California

employer classifies all or most of a particular class of employees as exempt does not eliminate the need to make a factual determination as to whether class members are actually performing similar duties.'" Id. at 620 (quoting In re Wells Fargo Home Mortgage Overtime Pay Litig, 571 F.3d 953, 959 (9th Cir. 2009)). The Weigle court noted evidence that suggested that the amount of time that employees with the same job title spent on a given non-exempt task varied from ten percent to seventy-six percent. Id. at 622. Accordingly, the jury would need to hear testimony regarding whether each employee "was or was not exempt and determine to what extent that witness was not provided with mandated overtime, meal, and rest breaks." Id. at 624-25. This type of factual inquiry is much more complicated than the objective inquiry required in this case.

Moreover, none of the cases cited by Defendant share the concern raised in this case that the majority of class members in this case do not know and are unlikely otherwise to discover that Defendant sold their information to Finex.[5]

Accordingly, the Court DENIES Defendant's motion to decertify the class.

III. Defendant's Request to Modify the Class Definition

Finally, Defendant argues that, even if the Court denies its motion to decertify the class, the Court should amend the class definition to exclude class members who have declared bankruptcy

---

[5] In its reply brief, Defendant states that "consumers can easily see when Experian provides their information to a debt collector like Finex." Def.'s Reply at 14. However, Defendant does not cite any evidence or provide any explanation in support of this claim.

or who have died.  Plaintiffs agree that those individuals who have filed for bankruptcy should be excluded from the class, but disputes Defendant's argument about class members who have died.

"Any person who willfully fails to comply" with the FCRA "with respect to any consumer is liable to that consumer."  15 U.S.C. § 1681n.  Defendant notes that "consumer" is defined as "an individual" and "person" is defined as an "individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity."  15 U.S.C. § 1681a.  Because the definition of "person" lists both "individual" and "estate," Defendant asserts that a consumer can only be a living person and not the estate of a deceased person.

The Court finds this statutory argument unavailing.  As Defendant points out, a "person" is an entity that can be held liable under the FCRA, while a "consumer" is one who may have a cause of action under the statute.  15 U.S.C. §§ 1681a(b)-(c).  "Consumer reporting agency" is defined as "any person . . .  which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."  15 U.S.C. § 1681a(f).[6]

Given the FCRA's broad statutory purpose of "insur[ing] that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," it is not surprising that Congress would

_____

[6] "Person" is also used to refer to the entities that request consumer reports from consumer reporting agencies.  See, e.g., 15 U.S.C. § 1681b(3).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  include a relatively lengthy, non-exclusive list of examples of

2  entities that can be defined as consumer reporting agencies and

3  accordingly governed by the statute.  15 U.S.C. § 1681(a)(4).

4  However, the Court finds that the inclusion of the term "estate"

5  in that list of entities that can be considered "consumer

6  reporting agencies" and the exclusion of "estate" from the

7  definition of those who may bring claims under the FCRA is not

8  sufficient to override the federal common-law rule that statutory

9  claims for compensatory damages survive the death of the

10  plaintiff.  See United States v. Oberlin, 718 F.2d 894, 896 (9th

11  Cir. 1983); In re Schreiber, 110 U.S. 76, 80 (1884).

12      The Court GRANTS Defendant's request to modify the class

13  definition to exclude those individuals who have declared

14  bankruptcy and DENIES Defendant's request to modify the class to

15  exclude those individuals who have died.

16  IV.  Plaintiffs' Request to Modify the Class Definition

17      Plaintiffs argue that the class definition should be modified

18  because they need not prove that each class member's debt was "not

19  the result of a transaction that the consumer initiated."

20  Plaintiffs note that the FCRA provides that Defendant must have

21  "reason to believe" that its customers are using credit reports

22  for permissible purposes before furnishing such reports.  See 15

23  U.S.C. § 1681b(a)(3).  Similarly, the FCRA requires consumer

24  reporting agencies to "maintain reasonable procedures designed

25  . . . to limit the furnishing of consumer reports to the purposes

26  listed under § 1681b."  15 U.S.C. § 1681e(a).

27      Plaintiffs argue that Defendant did not have reason to

28  believe that Finex was using the credit reports for permissible

purposes and that Defendant failed to maintain the reasonable procedures required.  Accordingly, Plaintiffs assert that Defendant should be held liable--for its willful failure to comply with these sections--to every consumer whose report was sold to Finex, regardless of whether Finex had a proper purpose with respect to a given consumer.  Plaintiffs assert that limiting Defendant's liability to those consumers for whom Finex actually lacked a proper purpose "read[s] into the FCRA a limitation that Congress did not provide."  Opposition at 16.

However, § 1681n(a) provides that "any person who willfully fails to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer."  This suggests that the inquiry of whether Defendant failed to comply with the FCRA must be determined on a consumer-by-consumer basis.  Moreover, under Plaintiffs' reading of the statute, even consumers who have not suffered any injury would be able to bring claims under the FCRA.  Plaintiffs' own complaint alleges, "Experian's violations of the FCRA caused injury-in-fact to the named plaintiffs and the other class members by exposing their personal and confidential information to use and abuse by persons who have no legal right to obtain or use that information."  1AC ¶ 30.  Plaintiffs have not and cannot argue that Finex lacked a permissible purpose with respect to those individuals who had consumer-initiated tows or whose debts had been reduced to judgment.

CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's motion for summary judgment and to decertify the class.  Docket No. 186.  The Court AMENDS the class definition to include:

> all consumers whose consumer reports were furnished by Experian to Finex from January 12, 2009 to the present in connection Finex's efforts to collect on a towing deficiency claim that was not reduced to a judgment and was not the result of a transaction that the consumer initiated.  Individuals who subsequently filed for bankruptcy are excluded from the class.

IT IS SO ORDERED.


Dated: 9/12/2013

CLAUDIA WILKEN
United States District Judge