1  Andrew J. Ogilvie   (SBN  57932)
   Mark F. Anderson   (SBN  44787)
2  Carol M. Brewer    (SBN 214035)
   Anderson, Ogilvie & Brewer LLP
3  235 Montgomery Street, Suite 914
   San Francisco, California 94104
4  Telephone:   (415) 651-1952
5        andy@aoblawyers.com
         mark@aoblawyers.com
6        carol@aoblawyers.com
7
   Balám O. Letona    (SBN 229642)
8  Law Office of Balám O. Letona, Inc.
9  55 River Street, Ste. 220
   Santa Cruz, CA 95060
10       Telephone:   (831) 421-0200
         letonalaw@gmail.com
11
12 Attorneys for Plaintiffs Roane Holman, Narcisco Navarro Hernandez
   and Miguel A. Alvarez
13
                  UNITED STATES DISTRICT COURT
14
                NORTHERN DISTRICT OF CALIFORNIA
15

| | |
|---|---|
| 16  ROANE HOLMAN, NARCISCO NAVARRO HERNANDEZ and MIGUEL A. ALVAREZ on behalf of all others similarly situated, | Case No. 11- cv-0180-CW (DMR) |
| 17 | PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| 18 | |
| 19                 Plaintiff, | |
| 20            v. | |
| 21  EXPERIAN INFORMATION SOLUTIONS, INC. | Date:    June 5, 2014 |
| 22 | Time:    2:00 pm  Oakland Federal Court Bldg.  Courtroom 2, 4th Floor |
| 23                 Defendant. | Judge:   Hon. Claudia Wilken |
| 24 | |

25

28

**NOTICE OF MOTION**

To defendant, Experian Information Solutions, Inc., and its counsel of record:

Please take notice that on June 5, 2014 at 2:00 p.m. before Judge Claudia Wilken of the above-entitled court, at 1301 Clay Street, 4th Fl., Courtroom 2, Oakland, California 94612, class representatives Roane Holman, Narcisco Navarro Hernandez and Miguel Alvarez will move for preliminary approval of the proposed settlement in this case, subject to a hearing on the final approval of the settlement. This motion is based on this notice of motion and motion, the accompanying memorandum, and the declaration of Andrew J. Ogilvie and exhibits thereto.

**I.    INTRODUCTION**

Plaintiffs sued Experian for willfully violating the Fair Credit Reporting Act by furnishing consumer reports to Finex, a collection agency, when Finex lacked a permissible purpose to obtain the reports. The certified class is comprised of persons whose consumer reports Experian sold to Finex between January 12, 2009 and the present, whose towing transactions were nonconsensual, whose obligations were not reduced to judgment and who have not filed bankruptcy.

If the jury were to find that Experian willfully violated the FCRA, it could award each class member $100 to $1,000 in statutory damages.  15 U.S.C. § 1681n. Under the settlement, each class member who submits a valid claim will likely receive $375. Because Experian insisted upon a cap of $8 million for its total exposure, theoretically there could be so many claims that a pro-rata reduction could be required, but plaintiffs believe that is highly unlikely. Judging from the percentage of potential class members who have submitted claims in similar cases, it is likely that each claimant will receive the full $375 and there will be enough money to pay the settlement administrator and whatever the Court awards in incentives, attorneys' fees

1   and expenses, without exceeding the $8 million cap.

2        Each claimant must attest to their entitlement to be paid.  Plaintiffs spent many

3   hours analyzing Finex's documents trying to avoid the need for individual testimony,

4   but Finex's documents did not solve that problem. Plaintiffs argued that the FCRA

5   makes Experian liable to each person on Finex's list, but they lost that argument.  If

6   the case were tried, each person might have to testify in person in order to receive any

7   payment. This settlement avoids that considerable burden on the class and the Court.

8        **A.     Factual Background**

9        This case arises from Experian's response (or non-response) to the Ninth

10   Circuit's decision in *Pintos v. Pacific Credit Ass'n,* 504 F.3d 792 (9th Cir. 2007) and

11   its progeny.  The Court is familiar with the facts.  See Documents 32, 138 & 226.

12       **B.     Procedural History**

13       The factual record has been fully developed through three years of contentious

14   litigation. The electronic filing system reflects nearly 250 entries.

15       After the Court denied Experian's motion to dismiss, Holman obtained

16   informal discovery from Finex and learned the details of its communications with

17   Experian concerning *Pintos* and its intended use of the reports.  Holman obtained a

18   class list and many thousands of pages of Finex documents relating to the underlying

19   towing claims. Alvarez and Navarro Hernandez joined Holman as plaintiffs and they

20   served written discovery and deposed numerous Experian employees.  Experian

21   deposed all three named plaintiffs, Holman's mother, and the owners of Finex.  Both

22   sides deposed the other sides' experts.

23       Experian vigorously opposed plaintiffs' class certification motion, arguing

24   that the Finex list was over-inclusive and that the class could not be ascertained.

25   Experian argued that each putative class member would have to testify, which would

26   *Holman v. Experian,* Case No. 11-cv-0180 CW (DMR)
    Plaintiff's Memo in Support of Motion for Preliminary Approval of Settlement          3

27

28

1   require years of trial.  Experian challenged plaintiffs' adequacy and made legal

2   arguments regarding willfulness.  The Court rejected Experian's arguments and

3   certified the class. Document 136. Later, it denied Experian's request for

4   reconsideration but amended the class definition slightly. Documents 144 & 146.

5       There have been scores of disputes over discovery and claims of

6   confidentiality of documents. See Documents 46-50, 53, 65, 75-80, 83, 84, 93, 103,

7   100, 104,108, 117-118, 121, 119-120, 122, 123-124, 128, 135, 137, 152-157, 160 &

8   161, 171, 173-175, 177, 179, 180, 181, 183-185.

9       Experian moved for summary judgment and to decertify the class. It again

10  argued that its violations were not willful and that the class is unascertainable and

11  unmanageable. Document 186. The Court denied its motions, but also rejected

12  plaintiffs' argument on the class definition, holding that liability must be determined

13  "on a consumer-by-consumer basis." Document 226, p. 22.  Magistrate Judge Ryu

14  renewed the settlement discussions and was able to broker a settlement.

15      **C.      Chronology of Settlement Discussions**

16      The parties attended an early mediation at JAMS that accomplished little.  The

17  case was referred to Magistrate Judge Ryu for a settlement conference that was held

18  on March 1, 2013. The parties reached agreement on some issues, but not all. The

19  impasse remained after the next settlement conference and after numerous phone

20  conversations between Magistrate Judge Ryu and the parties. Documents 198-205.

21      The parties completed the briefing of Experian's motions, which the Court

22  denied on September 12, 2013. Magistrate Judge Ryu then renewed settlement

23  discussions. Document 234. At the December 19, 2013 settlement conference the

24  parties reached an agreement in principle but had to use JAMS Judge James Warren

25  in late February 2014 to reach agreement on the settlement documents. The parties

26  *Holman v. Experian,* Case No. 11-cv-0180 CW (DMR)

27

28

1    have now signed the settlement agreement.

2    **II.      SUMMARY OF THE PROPOSED SETTLEMENT**

3           The proposed settlement (Exhibit 1 to Ogilvie declaration) will provide cash

4    payments to everyone who meets the class definition and who submits a valid claim.

5    The class definition is:

6           All consumers whose consumer reports were furnished by Experian to Finex
             from January 12, 2009 to the present, in connection with Finex's efforts to
7           collect on a towing deficiency claim that was not reduced to judgment and
             was not the result of a transaction that the consumer initiated. Individuals who
8           subsequently filed for bankruptcy are excluded from the class.

9           Experian will pay up to $375 to each class member who timely submits a

10   properly completed and verified claim form. The claim form (Exhibit 3 to Ogilvie

11   declaration) requires each claimant to establish that they are a member of the class.

12   Each claimant must indicate that they owned a vehicle that was towed, that they did

13   not initiate the towing transaction, and that the debt was not reduced to judgment. To

14   prevent fraudulent claims, Experian demanded a procedure to verify that the person

15   submitting the claim is the person whose report was furnished to Finex.  Thus the

16   form requires each claimant to provide either (i) the month and year of their birth or

17   (ii) the last four digits of their social security number.

18          Kurtzman Carson Consultants, LLC (KCC), an independent settlement

19   administrator, will administer the settlement. KCC is authorized to follow up with

20   class members who do not provide all the required information or who forget to sign.

21   Claims that are rejected will go to an Ombudsman for final decision unless class

22   counsel concludes that there are no grounds to contest KCC's denial of the claims.

23   The parties agreed to Judge Warren as Ombudsman, who agreed to that role.

24          The $8 million cap covers the payment of the class members' claims, the

25   settlement administrator's charges, incentive awards of up to $10,000 to each named

26   *Holman v. Experian,* Case No. 11-cv-0180 CW (DMR)
     Plaintiff's Memo in Support of Motion for Preliminary Approval of Settlement                    5

27

28

1   plaintiff, and class counsel's fees and expenses of up to $2,250,000.

2   The Settlement Agreement contains two different releases of claims. The

3   class members' release is narrow. In exchange for the cash payments, each class

4   member releases their claims that arise from Experian's furnishing of consumer

5   reports to Finex. The class representatives will give Experian a broad release of all

6   claims, whether or not those claims relate to the reports Experian sold to Finex.

7
**III.   THE COURT SHOULD ENTER AN ORDER GIVING PRELIMINARY
8         APPROVAL TO THE PROPOSED SETTLEMENT.**

9       **A.   There is no concern about the suitability of class treatment because
10           the Court has already certified the class**

11  Settlement approval that takes place before a class is certified requires a

12  higher standard of fairness. See *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th

13  Cir. 1998). That is not a concern here because the Court has already analyzed the

14  suitability of the case for class treatment and has certified the class.

15      **B.   The proposed settlement is fair, adequate and reasonable.**

16  Rule 23(e) requires the Court to determine whether a proposed settlement is

17  "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co.*, 327 F.3d 938,

18  959 (9th Cir.2003). To make this determination, the Court must consider a number

19  of factors, including: (1) the strength of plaintiffs' case; (2) "the risk, expense,

20  complexity, and likely duration of further litigation;" (3) "the risk of maintaining

21  class action status throughout the trial;" (4) the amount offered in settlement; (5) the

22  extent of discovery completed, and the stage of the proceedings; (6) the experience

23  and views of counsel; (7) the presence of a governmental participant; and (8) the

24  reaction of the class members to the proposed settlement. See *id*. (citations omitted).

25  In addition, the settlement may not be the product of collusion among the negotiating

26

27

28

1   parties. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir.2000). Courts

2   must give "proper deference to the private consensual decision of the parties," since

3   "the court's intrusion upon what is otherwise a private consensual agreement

4   negotiated between the parties to a lawsuit must be limited to the extent necessary to

5   reach a reasoned judgment that the agreement is not the product of fraud or

6   overreaching by, or collusion between, the negotiating parties, and that the

7   settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

8   *Hanlon,* 150 F.3d at 1011.

9          The Court will not be able to fully assess some of these factors until the

10  Fairness Hearing, so "a full fairness analysis is unnecessary at [the preliminary

11  approval] stage." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D.Cal.2008). Rather,

12  at the preliminary approval stage, the Court need only review the parties' proposed

13  settlement to determine whether it is within the permissible "range of possible

14  judicial approval" and thus, whether the notice to the class and the scheduling of the

15  formal fairness hearing is appropriate. See 4 William B. Rubenstein et al., *Newberg

16  on Class Actions* § 11:25 (4th ed.2002). Preliminary approval is appropriate: "[i]f (1)

17  the proposed settlement appears to be the product of serious, informed, noncollusive

18  negotiations, (2) has no obvious deficiencies, (3) does not improperly grant

19  preferential treatment to class representatives or segments of the class, and (4) falls

20  with the range of possible approval." *Vasquez v. Coast Valley Roofing, Inc.*, 2009

21  WL 3857428, at *7 (E.D.Cal. 2009).

22         Here, the proposed settlement is fair, adequate and reasonable. The parties

23  engaged in protracted arm's length settlement negotiations over the course of many

24  months.  Ogilvie dec., ¶6. The proposed settlement was reached only after the parties

25  had competed discovery and were on the verge of trial.  Plaintiffs knew what the

26  *Holman v. Experian,* Case No. 11-cv-0180 CW (DMR)
    Plaintiff's Memo in Support of Motion for Preliminary Approval of Settlement                    7

27

28

1  evidence would show and had conducted focus groups to determine how a jury might

2  react to the case. Ogilvie dec., ¶ 6.  This settlement is the result of informed thought

3  and deliberation by both sides.

4          There has been no collusion.  Counsel for the opposing parties have clashed

5  about virtually everything from the start. Ogilvie dec., ¶¶ 2-3.

6          The proposed settlement does not improperly grant preferential treatment to

7  the class representatives. The class representatives worked unusually hard in this case

8  and made significant personal sacrifices for the benefit of the class. Ogilvie dec., ¶ 7.

9  The proposed incentive awards are to compensate them for those contributions to the

10  class and for their release of all claims they may have against Experian. *Id.* The Court

11  has discretion to determine the appropriate amount of any incentive awards and the

12  amounts awarded for class counsel's fees and costs.

13          **C.     Preliminary Approval Will Trigger Notice to the Certified Class**

14          The settlement provides that KCC will send written notice to all class

15  members who can be located. The agreed upon form of Notice is Exhibit 2 to the

16  Ogilvie declaration. The Notices, in English and Spanish, will be sent by first-class

17  mail to the most current addresses available. KCC will use reasonable efforts to

18  locate putative class members who have moved or been lost.

19          **D.     The proposed notice satisfies Rule 23's content requirements.**

20          Rule 23(c)(2)(B) requires the Notice to state clearly and concisely in plain,

21  easily understood language (i) the nature of the action, (ii) the definition of the class

22  certified, (iii) the class claims, issues, or defenses, (iv) that a class member may enter

23  an appearance through an attorney if the member so desires, (v) that the court will

24  exclude from the class any member who requests exclusion, (vi) the time and manner

25  for requesting exclusion, and (viii) the binding effect of a class judgment on members

26  *Holman v. Experian,* Case No. 11-cv-0180 CW (DMR)
   Plaintiff's Memo in Support of Motion for Preliminary Approval of Settlement                8

27

28

under Rule 23(c)(3). *Mullane v. Cent. Hanover Bank.,* 339 U.S. 306, 314 (1950).

The Notice that the parties have agreed upon satisfies these requirements.  It is written in plain English and covers all the points that must be covered to comply with the Rule's requirements.  It is long because there is a great deal of information that must be conveyed to the putative class.

### E.     Mailed notice is the best notice practicable

Notice by mail is the best and most practicable way to notify the class about this case and the settlement.  Finex kept a list of every person whose report it obtained during the class period.  Using that list as the starting point, Experian will use its database to update the putative class members' addresses and will provide that updated address list to KCC.  KCC will mail the notice to the addresses on that list and, for all notices that are returned, it will make reasonable efforts obtain better, more current addresses.  KCC will mail the notices via first-class mail.

### F.     The time for objections does not end until after all claims have been received and the class members can learn how much each person will receive.

The settlement is structured so the claims period ends well before the Final Approval hearing.  When the claims period has closed, KCC will tell the parties and the Court how many valid claims have been submitted.  By multiplying the number of valid claims by $375, one can determine whether the $8 million cap is enough pay all claimants at the rate of $375 and still have enough money left to pay the settlement administration costs, plus the full amounts requested for incentive awards, attorneys' fees and expenses.  This information will be posted on KCC's website for this case and class members will have an opportunity to object if they wish to do so.  Class counsel, having investigated the percentage of claims submitted in other cases,

1 | believes that it is highly unlikely that the cap will be exceeded.

2 | **IV.      CONCLUSION**

3 |       For the foregoing reasons, plaintiffs and class representatives Holman,

4 | Alvarez, and Navarro Hernandez, through class counsel, respectfully request the

5 | Court to enter its order of preliminary approval of the settlement, subject to a hearing

6 | on the final approval.

7 |       Respectfully submitted this 27th day of March, 2014.

8 |            ANDERSON, OGILVIE & BREWER LLP
                    and

9 |            LAW OFFICE OF BALÁM O. LETONA, INC.

10 |

11 |            By: */s/ Andrew J. Ogilvie*

12 |               Andrew J. Ogilvie

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 | *Holman v. Experian,* Case No. 11-cv-0180 CW (DMR)
Plaintiff's Memo in Support of Motion for Preliminary Approval of Settlement        10

27 |

28 |