UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROANE HOLMAN, NARCISCO NAVARRO HERNANDEZ and MIGUEL A. ALVAREZ on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>          v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.<br><br>          Defendant. | Case No. 11-cv-0180 CW (DMR)<br><br><br>AMENDED ORDER GIVING FINAL APPROVAL TO CLASS ACTION SETTLEMENT, AND AWARDING ATTORNEYS' FEES, COSTS AND INCENTIVE AWARDS |

      The named plaintiffs, Roane Holman, Miguel Alvarez and Narcisco Navarro Hernandez, have moved for (1) final approval of a class action settlement; (2) an award of attorneys' fees and costs to Class Counsel; and (3) service awards to the named plaintiffs. Defendant Experian has not opposed plaintiffs' motion. For the following reasons, the Court grants the motion for final approval of the class action settlement, award of fees and costs to Class Counsel, and the request for service awards to the three named plaintiffs, Roane Holman, Narcisco Navarro Hernandez and Miguel A. Alvarez.

I.      **BACKGROUND AND PROCEDURAL HISTORY OF THE LITIGATION**

      Plaintiffs asserted class action claims for Experian's violations of the Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq.* Roane Holman filed suit in January 2011 alleging that Experian violated the FCRA by selling credit information to Finex, a debt collector, for its use in collecting towing debts similar to the one in

1    *Pintos v. Pac. Creditors Ass'n*, 504 F.3d 792, 796 (9th Cir. 2007), *opinion withdrawn*

2    *and superseded,* 565 F.3d 1106 (9th Cir. 2009), *opinion amended and superseded on*

3    *denial of reh'g,* 605 F.3d 665 (9th Cir. 2010).  Miguel Alvarez and Narciso Navarro

4    Hernandez were subsequently added as named plaintiffs in an amended complaint.

5    Plaintiffs alleged that because Experian knew that Finex's intended use was

6    impermissible, its violation was willful.

7         The parties reached a settlement just before trial.  Each side litigated

8    vigorously.  The Court denied Experian's motion to dismiss (Docket No. 32) and

9    granted plaintiffs' motion for class certification (Docket No. 138). The Court

10   subsequently denied Experian's motions to decertify the class and for summary

11   judgment (Docket No. 226). The class definition is:

12            All consumers whose consumer reports were furnished by Experian to Finex
13            from January 12, 2009 to the present, in connection with Finex's efforts to
              collect on a towing deficiency claim that was not reduced to judgment and
14            was not the result of a transaction that the consumer initiated. Individuals who
              subsequently filed for bankruptcy are excluded from the class.
15

16            Each side propounded extensive written discovery to the other side and each
17   side conducted numerous depositions.  There were numerous discovery motions. The

18   parties completed expert discovery.  Plaintiffs retained two experts and Experian

19   retained three experts. The parties exchanged expert reports and took lengthy

20   depositions of all five experts.  The parties conducted five sessions of face-to-face

21   settlement negotiations.

22            On April 29, 2014, the Court granted plaintiffs' motion for preliminary

23   approval of the proposed class action settlement and the forms for the Notice and

24   Claim Form (Docket No. 257). The Court scheduled a hearing for final approval of

25

26   *Holman v. Experian,* Case No. 11-cv-0180 CW (DMR)
     Amended Order Giving Final Approval to Class Action Settlement, etc.          2

27

28

the proposed settlement and set dates for class members to submit Claims, to opt-out or to object to the proposed settlement. Pursuant to the parties' agreement, Kurtzman Carson Consultants LLP (KCC) was appointed to serve as Settlement Administrator that would mail the Notices to the putative class members and process the Claim forms. Each Class Member who submitted a valid Claim Form would be eligible to receive up to $375. Experian agreed to fund the settlement, including payment of claims, costs, attorneys' fees and service awards, up to a cap of $8 million. In exchange for their awards, each Class Member will release Experian from all claims arising out of or in connection with the claims asserted in this action or which reasonably could have been asserted. However, each of the three named plaintiffs have given a broader release to Experian, which also includes any claim which could be made based upon inaccuracies in their credit reports.

The Claim Form (Docket No. 257-2) required each claimant to establish class membership. Each claimant had to indicate that they owned a vehicle that was towed, that they did not initiate the towing transaction, and that the debt was not reduced to judgment. Each person had to verify that the person submitting the claim was the person whose report was furnished to Finex. Thus the form required each claimant to provide either (i) the month and year of their birth or (ii) the last four digits of their social security number.

After the claim period expired, Class Counsel disputed KCC's rejection of approximately 800 claims that had been submitted. They submitted these disputed claims to the Ombudsman, who approved 112 of the disputed Claims. Because the number of approved claims is relatively low, there is more than enough money under the $8 million cap to pay all approved claims at the rate of $375 and have more than enough money left to pay all of the unopposed amounts for incentive awards and

1    attorneys' fees and costs.

2    **II.     RULE 23 AND CLASS ACTION SETTLEMENT**

3            **A.     The Settlement is Fair, Adequate and Reasonable**

4            At the final approval hearing the Court determines whether the proposed

5    settlement is "fundamentally fair, adequate, and reasonable." *Staton v. Boeing Co*.,

6    327 F.3d 938, 959 (9th Cir.2003).  The decision to approve or reject a settlement is

7    committed to the Court's sound discretion. *Hanlon v. Chrysler Corp*., 150 F.3d 1011,

8    1026 (9th Cir. 1998). To decide whether a settlement is fair, adequate and reasonable,

9    the Court must evaluate several factors, including (1) the strength of plaintiffs' case,

10   (2) the risk, expense, complexity, and likely duration of further litigation, (3) the risk

11   of maintaining class action status throughout the trial, (4) the amount offered in

12   settlement, (5) the extent of discovery completed, and the stage of the proceedings,

13   (6) the experience and views of counsel, (7) the presence of a governmental

14   participant, and (8) the reaction of the class members to the proposed settlement. *Id*.

15   In addition, the Court must assure itself that the settlement is not collusive. *In re*

16   *Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir.2000); *Class Plaintiffs v. City*

17   *of Seattle*, 955 F.2d 1268, 1290 (9th Cir.1992).

18           **1.  The Strength of Plaintiffs' Case**

19           Plaintiffs' case on liability is reasonably strong. According to *Pintos*, Finex's

20   use of consumer reports furnished by Experian to collect on towing claims was

21   impermissible. The Court has rejected Experian's legal argument that it was allowed

22   to ignore *Pintos* until the decision became final.

23           The value of the class' damage claim is debatable, as the FCRA sets a range of

24   $100 to $1,000 per Class Member.  Considering that range, as well as Experian's

25   argument that Class Members did not experience pecuniary losses, credit denials, or

26   *Holman v. Experian,* Case No. 11-cv-0180 CW (DMR)
     Amended Order Giving Final Approval to Class Action Settlement, etc.                        4

27

28

damage to credit score or reputation, the settlement amount of $375 per Class Member is reasonable.

### 2.   The Risk, Expense, Complexity and Likely Duration of Further Litigation

A trial would have been lengthy and complex.  If plaintiffs had obtained a favorable ruling Experian might have appealed, which would have delayed payment for years and would have entailed a risk of reversal.

### 3.   The Amount Offered In Settlement

The settlement is well within the range of potential statutory damages. Although a small percentage of Class Members returned valid Claim Forms proving that they did not ask to have the vehicle towed and that there was no judgment for the towing debt, the settlement avoids the need for live testimony and brings relief to a larger number of Class Members than could have been obtained by going to trial.

The use of Claim Forms was unavoidable. The alternative would have been Class Members' individual testimony. Finally, $375 per claimant is substantially higher than the $225 per claimant that Class Counsel had previously demanded in settlement.  Ogilvie dec. ¶ 37 and Exhibit 6.

### 4.   The Extent of Discovery Completed and the Stage of the Proceedings

The parties completed exhaustive discovery before they reached this settlement.

### 5.   The Experience and Views of Counsel

Class Counsel have extensive experience in FCRA litigation and class actions.

### 6.   No Governmental Agency Has Objected or Expressed Concern

No governmental entity is a party to this action, but the Attorneys General for all 50 states and the U.S. Attorney General were notified of the settlement pursuant to

1    the notice provision of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.

2    "Although CAFA does not create an affirmative duty for either state or federal

3    officials to take any action in response to a class action settlement, CAFA presumes

4    that, once put on notice, state or federal officials will raise any concerns that they

5    may have during the normal course of the class action settlement procedures."

6    *Garner v. State Farm Mut. Auto. Ins. Co.*, CV 08 1365 CW EMC, 2010 WL 1687832

7    (N.D. Cal. Apr. 22, 2010) at *14. No state or federal official has raised any objection

8    or concern regarding the settlement.

9            **7.  The Class Members' Response**

10           KCC mailed 35,606 Claim packets; 8,985 were returned as undeliverable.

11   KCC re-mailed 3,936 of those, including 92 for which a forwarding address was

12   provided.   KCC approved 1,205 claims.  Another 112 claims were approved as a

13   result of Class Counsel's use of the Ombudsman dispute procedures.  Only one

14   person, Bobbie Bell Aguliar, has opted out of the settlement and only one person has

15   objected to it.

16           Class Counsel report that none of the Class Members they spoke to have

17   expressed any dissatisfaction with the settlement.  Ogilvie dec., ¶ 41; Letona dec.,

18   ¶ 24; Anderson dec. ¶ 7.  Class Counsel also report that several Class Members said

19   they were pleased with the proposed settlement.  Ogilvie dec. ¶ 41.

20           **B.      The Settlement is Not Collusive**

21           The case was litigated vigorously by both sides.  Each side completed

22   discovery of the factual witnesses and of the experts.  During the course of the

23   litigation there were five in-person settlement conferences, both with JAMS and with

24   Magistrate Judge Ryu.  The case did not settle until the Court denied its motion for

25   summary judgment and decertification. This has been a hard fought case with no

26   *Holman v. Experian,* Case No. 11-cv-0180 CW (DMR)
     Amended Order Giving Final Approval to Class Action Settlement, etc.              6

27

28

1   collusion.

2      **C.**  **Class Counsel's Applications for Fees and Costs**

3        **1.** **The FCRA is a Fee-Shifting Statute**

4      The FCRA's fee provision, 15 U.S.C. § 1681n(a)(3), is a fee-shifting statute. It

5   is virtually identical to the fee provisions in the Truth in Lending Act and the Fair

6   Debt Collection Practices Act, which the Supreme Court and various Circuits have

7   held to be mandatory. *See Christiansburg Garment Co. v. Equal Employment*

8   *Opportunity Commission,* 434 U.S. 412, 415, n. 5 (1978) (TILA); *DeJesus v. Banco*

9   *Popular de Puerto Rico*; 918 F.2d 232, 233 (1st Cir. 1990) (TILA); *Tolentino v.*

10  *Friedman*, 46 F.3d 645, 651 (7th Cir. 1995) (FDCPA); *Zagorski v. Friedman*, 128

11  F.3d 1164, 1166 (7th Cir. 1997) (FDCPA).

12     A fee-shifting provision's purpose is to encourage private litigants to enforce

13  the laws that protect the public in areas like civil rights, consumer protection and the

14  environment. *City of Riverside v. Rivera*, 477 US 561, 574-575 (1986). "We have

15  no doubt that Congress intended in authorizing attorney's fees in lawsuits under the

16  FCRA, 15 U.S.C. §§ 1681n, 1681o, to make use of the private attorney general

17  concept." *Bryant v. TRW, Inc.,* 689 F.2d 72, 80 (6th Cir. 1982). "Congress provided

18  fee shifting to enhance enforcement of important civil rights, consumer-protection,

19  and environmental policies. By providing competitive rates we assure that attorneys

20  will take such cases, and hence increase the likelihood that the congressional policy

21  of redressing public interest claims will be vindicated." *Tolentino, supra* at 652-3.

22     In fixing the fee award, courts in the Ninth Circuit typically examine the

23  "lodestar." *Jordan v Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). The

24  lodestar is calculated by multiplying the number of hours reasonably spent on the

25  litigation by the reasonable hourly rate. There is a strong presumption that the

26  *Holman v. Experian,* Case No. 11-cv-0180 CW (DMR)
    Amended Order Giving Final Approval to Class Action Settlement, etc.     7

27

28

1    lodestar figure represents a reasonable fee.  *Hensley v. Eckerhart*, 461 U.S. 424, 434

2    n. 9 (1983); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478

3    U.S. 546, 565 (1986) supplemented, 483 U.S. 711 (1987); *Grove v. Wells Fargo Fin.*

4    *California, Inc.,* 606 F.3d 577, 582 (9th Cir. 2010); *Staton, supra*, at 965.

5                **2.   Summary of Class Counsel's Lodestar**

6         Collectively, Class Counsel have spent more than 3,208 hours on the case.

7    Their total lodestar exceeds $2,235,000 and they have incurred out-of-pocket

8    expenses of $138,704.  They agreed to cap their fees and costs at $2,250,000.  Thus,

9    plaintiffs are asking the Court to award Class Counsel costs of $138,704 and

10   $2,111,296 in fees, totaling $2,250,000.

11        The following table reflects their hours to date, their rates and their lodestars.

| Attorney | Rate | Hours | Lodestar | Costs |
|---|---|---|---|---|
| Andrew Ogilvie | $750 | 1,678 | $1,258,500 | $128,623 |
| Carol Brewer | $690 | 520 | $358,938 | 0 |
| Mark Anderson | $675 | 760 | $513,000 | $10,081 |
| Balám Letona | $450 | 225 | $101,250 | 0 |
| Isái Ambrosio (Letona's paralegal) | $150 | 25 | $3,750 | 0 |
| Totals | | 3,208 | $2,235,438 | $138,704 |

Each attorney has filed a declaration explaining his or her role in the case in detail.

               **3.   Class Counsel's Hourly Rates Are Reasonable**

          The Court finds that Class Counsel's hourly rates are reasonable. In

determining the reasonable hourly rate, the Court looks to rates that are charged by

lawyers in the district where the case is pending.  *Prison Legal News v.*

*Schwarzenegger,* 608 F.3d 446, 454-55 (9th Cir. 2010); *Camacho v. Bridgeport Fin.,*

1   *Inc.,* 523 F.3d 973, 979 (9th Cir. 2008).  The Court compares Class Counsel's rates

2   with the rates charged by comparable attorneys in the Bay Area who are engaged in

3   "equally complex Federal litigation." *Id*. This comparison is not restricted to just

4   FCRA cases.  *Camacho, supra* at 981.

5          "The FCRA, particularly in the class action context, is a complex and

6   challenging area of law." *White v. Experian Info. Solutions*, 2014 WL 1716154 (C.D.

7   Cal. May 1, 2014).  Class Counsel in this case have expertise in FCRA litigation and

8   class action litigation.  Ogilvie dec. ¶¶ 13-14, Brewer dec. ¶¶ 21-26, Anderson dec.

9   ¶¶ 4-5, Letona dec. ¶¶ 3-8.  Anderson, Ogilvie & Brewer (AOB) concentrates on

10  FCRA litigation. All Class Counsel have extensive class action experience and

11  significant legal experience in other areas of complex federal litigation.  Ogilvie dec.

12  ¶ 16; Brewer dec. ¶¶ 22-25, Anderson dec. ¶¶ 4-5; Letona dec. ¶¶ 8-9.

13         To prove the reasonableness of their rates, Class Counsel may rely upon their

14  own declarations, fee awards in other cases and declarations of other attorneys.

15  *United Steelworkers of Am. v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir.

16  1990); *United Steelworkers of Am. v. Ret. Income Plan For Hourly-Rated Employees*

17  *of ASARCO, Inc.,* 512 F.3d 555, 564 (9th Cir. 2008).  Here, each of plaintiffs'

18  attorneys has submitted a declaration that sets out that attorney's current rate,

19  education and legal experience. Their declarations show that these rates are supported

20  by the rates they have been awarded in recent cases.

21         Ogilvie attached to his declaration some excerpts from the deposition of Mr.

22  Joseph Lynyak, a Pillsbury partner who was Experian's expert in this case.  Mr.

23  Lynyak testified that his 2012 hourly rate was $850. He has fewer years of legal

24  experience than Ogilvie or Anderson.  Ogilvie also attached to his declaration two fee

25  applications that Jones Day filed in recent bankruptcy proceedings. Those Jones Day

26  *Holman v. Experian,* Case No. 11-cv-0180 CW (DMR)
    Amended Order Giving Final Approval to Class Action Settlement, etc.                    9

27

28

fee applications show that Jones Day's rates for lawyers who have similar

background and experience as Class Counsel are higher than the rates requested here.

Class Counsel also submitted the declaration of Richard Pearl, who is an

expert on attorney fee awards in California.  His treatise, *California Attorney Fees*

*Award Practice* (Cal CEB), has been the authoritative source on this topic for

decades. He has particular insight for this case because he worked with Ogilvie,

Anderson and Brewer as their co-counsel in *Graham v. DaimlerChrysler Corp.*, 34

Cal.4th 553 (2004).  Pearl dec. ¶ 8.   Because of these circumstances, Pearl is

competent to compare their work with other Bay Area lawyers doing equally

complex Federal litigation.  Pearl supports class counsel's requested rates.  *Id.* ¶ 9.

### 4.  Class Counsel's Hours Are Reasonable

The Court finds that the hours that Class Counsel spent on this case were

reasonable. Class Counsel's declarations demonstrate that they have handled the case

efficiently and appropriately. The case was hard-fought.  Experian defended

vigorously.

### D.      The Named Plaintiffs' Application for Service Awards

Experian has agreed to pay incentive awards of up to $10,000 to each named

plaintiff. These amounts are reasonable to compensate the named plaintiffs (i) for

their services to the class and (ii) for the release of their individual claims against

Experian.

The class representatives' service to the class is one component of the

requested incentive awards. See 4 William B. Rubenstein et al., *Newberg on Class*

*Actions* § 11:38 (4th ed.2008). This component compensates the class representatives

for the work they have done for the class, for the financial or reputational risk they

have undertaken in bringing the action, and for their willingness to act as a private

*Holman v. Experian,* Case No. 11-cv-0180 CW (DMR)
Amended Order Giving Final Approval to Class Action Settlement, etc.                    10

1  attorney general. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir.2000);

2  *Rodriguez v. West Publishing Corp*. 563 F.3d 948, 958-959 (9th Cir. 2009). This

3  component is often valued using a five-factor test: (1) the risk to the class

4  representative in commencing a class action, both financial and otherwise; (2) the

5  notoriety and personal difficulties encountered by the class representative; (3) the

6  amount of time and effort spent by the class representative; (4) the duration of the

7  litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class

8  representative as a result of the litigation. *Van Vranken v. Atlantic Richfield Co*., 901

9  F.Supp. 294, 299 (N.D.Cal.1995); s*ee also Martin v. AmeriPride Servs., Inc*., 2011

10  WL 2313604, at *9 (S.D. Cal. June 9, 2011).

11      Here, these factors weigh in favor of a substantial award.  Each class

12  representative found and retained a lawyer, met with their lawyer many times,

13  answered written discovery, produced documents, gave a full day of deposition

14  testimony, and personally participated in the settlement discussions.  Holman dec. ¶

15  7-14; Alvarez dec. ¶ 7-20; Navarro Hernandez dec. 6, 12-19.  Each of them spent a

16  considerable amount of time on the case and encountered personal difficulties as a

17  result of their decision to serve as class representatives.  *Id*.  They receive no personal

18  benefit from the settlement beyond the $375 that each claimant will be paid.

19      The second component of the requested incentive awards is to compensate

20  them for their release of all claims against Experian.  Experian demanded their broad

21  release of individual claims, whether or not related to the sale of their information to

22  Finex.  The class representatives are giving Experian a much broader release than the

23  release that is given by the unnamed Class Members. Ogilvie dec. ¶ 10.

24      The requested amount – $10,000 for each named plaintiff – is fair and

25  reasonable.

26  *Holman v. Experian,* Case No. 11-cv-0180 CW (DMR)
Amended Order Giving Final Approval to Class Action Settlement, etc.                11

27

28

1    Having considered the motion for final approval and the papers submitted in

2    support of the motion, the arguments of counsel and the pleadings and records on file

3    in this action, the Court now FINDS, CONCLUDES and ORDERS as follows:

4       1.    This Final Approval Order incorporates by reference the definitions in

5    the Settlement Agreement (Agreement) and all terms used herein shall have the same

6    meaning as set forth in the Agreement.

7       2.    The Court has jurisdiction over the subject matter and personal

8    jurisdiction over all the Parties, including all Class Members.

9       3.    Pursuant to Federal Rule of Civil Procedure 23, and consistent with due

10   process, the Court hereby approves the Agreement and finds that the consideration to

11   be paid pursuant to the Agreement is fair and that the Settlement is, in all respects,

12   fair, reasonable and adequate to the Class Members, and the Parties are hereby

13   directed to perform its terms.

14      4.    The Court finds that the Notice provided to Class Members was the

15   best notice practicable and fully satisfied the requirements of the Federal Rules of

16   Civil Procedure, due process, and any other applicable laws;

17      5.    There was one objection to the Settlement, which the Court overrruled.

18   Only one person, Bobbie Bell Aguliar, opted out.

19      6.    The Court finds that the class representatives are entitled to incentive

20   awards. The Court awards $10,000 to each Named Plaintiff for his service to the

21   class and for his broad release of all claims, known or unknown, against Experian.

22      7.    The Court finds that Class Counsel's hourly rates are reasonable and

23   appropriate and that the hours they spent on the case were reasonable and necessary.

24   The Court also finds that the out-of-pocket expenses they incurred in the prosecution

25   of this case were reasonable and appropriate.  The Court awards Class Counsel

26   *Holman v. Experian,* Case No. 11-cv-0180 CW (DMR)

1   reimbursable expenses in the sum of $138,704 and attorneys' fees in the sum of
2   $2,111,296, for a total award of $2,250,000.

3        8.     In accordance with the terms of the Agreement, Experian and the
4   Settlement Administrator shall provide the following relief to the Class Members,
5   Class Counsel and the Named Plaintiffs:

6        a.     Within ten (10) days after the Effective Date, Experian will pay
7   the Settlement Administrator sufficient funds to pay $375 for each approved
8   Claim.  The Settlement Administrator shall use these funds to pay the
9   approved Claims.

10        b.     No later than twenty (20) days after the Effective Date, the
11   Settlement Administrator shall mail checks in the amount of $375 each to all
12   eligible Class Members. The checks will be mailed with instructions that the
13   checks must be cashed within one hundred and eighty (180) days of mailing.

14        c.     No later than one hundred fifty (150) days following the mailing
15   of the checks to eligible Class Members, the Settlement Administrator will
16   attempt to contact Class Members who have not yet cashed their payment
17   checks to remind them to do so.

18        d.     One hundred and eighty (180) days following the mailing of the
19   payments to the Class Members, the Settlement Administrator will provide to
20   the parties and file with the Court a list of those Class Members who have not
21   cashed their checks. All uncashed payments will escheat to the State of
22   California.

23        e.     Experian will wire $2,250,000 for Attorneys' Fees and Costs to
24   Attorney Andrew J. Ogilvie no later than ten (10) days after the Effective
25   Date.

26   *Holman v. Experian,* Case No. 11-cv-0180 CW (DMR)
    Amended Order Giving Final Approval to Class Action Settlement, etc.         13
27

28

1        f.      Within ten (10) days after the Effective Date, Experian will

2    forward to Attorney Ogilvie checks made out to the three class representatives

3    in the amount of $10,000 less any required withholding.

4        9.     The Court hereby dismisses with prejudice on the merits and without

5    costs or attorneys' fees (except as otherwise provided herein) the above-captioned

6    action.

7        10.    The Released Parties include Experian and its present, former and

8    future officers, directors, partners, employees, agents, attorneys, servants, heirs,

9    administrators, executors, members, member entities, shareholders, predecessors,

10   successors, affiliates, subsidiaries, parents, representatives, trustees, principals,

11   insurers, vendors and assigns, individually, jointly and severally.

12       11.    Plaintiffs and each Class Member, their respective heirs, executors,

13   administrators, representatives, agents, attorneys, partners, successors and assigns are

14   deemed to have fully released and forever discharged all Released Parties from any

15   and all Released Claims.

16       12.    The Released Claims includes any duties, obligations, claims, causes of

17   action, damages, rights or liabilities, whether arising under local, state or federal

18   statutory or common law (including, but not limited to, the FCRA and FCRA State

19   Equivalents), whether known or unknown, and whether disclosed or hidden, arising

20   out of or relating in any way to Experian's furnishing of Class Members' consumer

21   reports to Finex during the Class Period. This Release includes any claims which

22   have been or could have been asserted in the Litigation against Experian, including

23   but not limited to claims based upon Experian's furnishing of consumer reports to

24   Finex, any claimed inaccuracies on Experian consumer reports resulting from the

25   furnishing of consumer reports to Finex, or any failures to conduct reinvestigations in

26   *Holman v. Experian,* Case No. 11-cv-0180 CW (DMR)

27

28

response to disputes of inquiries relating to the furnishing of consumer reports to Finex. The Release binds the Class Members as well as anyone purporting to act on their behalf, including their heirs, spouse, executors, administrators, successors, assigns, or agents. The Released Claims described above include all claimed or unclaimed compensatory, statutory, consequential or punitive damages, as well as all claims for equitable, declaratory or injunctive relief. Released Claims also include all interest, costs and attorneys' fees.

13.     Without limiting the foregoing, the Released Claims specifically extend to claims that Class Members do not know or suspect to exist in their favor at the time that the Settlement, and the releases contained therein, becomes effective. The Named Plaintiffs and the Class Members are deemed to have waived any and all rights and benefits afforded by California Civil Code Section 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

The Named Plaintiffs and Class Counsel understand and acknowledge the significance of this waiver of California Civil Code Section 1542 and/or of any other applicable federal or state law.

14.     In addition to the Released Claims given by the Class Members, the Named Plaintiffs state that all information contained in their Experian credit files is true and accurate. Upon the Effective Date, each Named Plaintiff and his or her respective spouse, heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors and assigns and all those acting or purporting to

act on their behalf acknowledge full satisfaction of, and shall be conclusively deemed to have fully, finally and forever settled, released and discharged the Released Parties of and from all claims relating to any and all duties, obligations, demands, claims, actions, causes of action, suits, damages, rights or liabilities of any nature and description whatsoever, whether arising under local, state or federal law, whether by Constitution, statute (including, but not limited to, the FCRA and FCRA State Equivalents), tort, contract, common law or equity or otherwise, whether known or unknown, concealed or hidden, suspected or unsuspected, anticipated or unanticipated, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, fixed or contingent, that have been or could have been asserted against Experian by the Named Plaintiffs on or any time prior to the Effective Date, including but not limited to claims based upon Experian's furnishing of consumer reports, any claimed inaccuracies on their Experian files, or any failures to conduct reinvestigations in response to disputes regarding the accuracy or completeness of information on their Experian files. These additional Claims released by Named Plaintiffs include, but are not limited to, all claimed or unclaimed compensatory damages, damages for emotional distress, statutory damages, consequential damages, incidental damages, treble damages, punitive and exemplary damages, as well as all claims for equitable, declaratory or injunctive relief under any federal or state statute or common law or other theory that was alleged or could have been alleged based on the facts forming the basis for the Litigation, including but not limited to any and all claims under the FCRA, the State Equivalents, deceptive or unfair practices statutes, or any other statute, regulation, or judicial interpretation. Released Claims further include interest, costs and attorneys' fees arising out of any of the claims asserted or that could have been asserted.

1        15.    The Court shall retain jurisdiction over the effectuation and

2  implementation of the Agreement and the settlement following Final Approval. The

3  Parties and their attorneys submit to the jurisdiction of the Court regarding these

4  matters.

5  IT IS SO ORDERED.

6  Dated:  December 29, 2014

                                    Hon. Claudia Wilken

                                    United States District Judge